**BROWN & CONNERY, LLP**
Michael J. Miles, Esquire
Arlette Leyba, Esquire
360 Haddon Avenue
Westmont, New Jersey 08108
(856) 854-8900
mmiles@brownconnery.com
aleyba@brownconnery.com
Attorneys for Defendant Chief Phil Olivo

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| CHRISTIAN BENTON, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, and CHIEF PHIL OLIVO, in his official capacity as the Police Chief of Pennsauken Township, <br><br> Defendants. | Civil Action No. 1:24-cv-07098-KMW-MJS <br><br><br><br> Motion Date:  October 7, 2024 |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CHIEF PHIL OLIVO'S MOTION TO DISMISS

---

7PN810502

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 7

BACKGROUND ........................................................................................................... 7

LEGAL ARGUMENT.................................................................................................. 10

I.      STANDARD OF REVIEW. ............................................................................10

      A.      Rule 12(b)(1)........................................................................................10

      B.      Rule 12(b)(6)........................................................................................12

II.     PLAINTIFFS' CLAIMS AGAINST OLIVO ARE MOOT. ............................14

III.    PLAINITFFS' LACK STANDING AS TO OLIVO.........................................17

IV.   PLAINTIFFS' CLAIMS AGAINST OLIVO ARE NOT RIPE. .....................22

V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE SECOND AMENDMENT AS TO OLIVO...............................................................................26

VI.   PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT CLAIM AGAINST OLIVO..............................................................................................................28

CONCLUSION..............................................................................................................30

## Table of Authorities

*Abbott Labs.*,
  387 U.S. 136 at ................................................................ 23

*Adler v. Livak*,
  308 N.J. Super 219 (App. Div. 1998) .................................... 20, 27, 28

*Accord, ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994) ................................................ 14

*Almeida v. Conforti, No. 16-3411*
  (KM) (JBC), 2017 U.S. Dist. LEXIS 21817 (D.N.J. Feb. 14, 2017) .......... 10, 11

*Arizonans for Official English v. Arizona*,
  520 U.S. 43, (1997) ........................................................ 14, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................ 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................ 12

*Binderup v. Att'y Gen.*,
  836 F.3d 336 (3d Cir. 2016) ................................................ 26

*Blanciak v. Allegheny Ludlum Corp.*,
  77 F.3d 690 (3d Cir. 1996) ................................................ 15, 16

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) ................................................ 18-19

*Burton v. Sills*,
  53 N.J. 86 (1968) .......................................................... 6

*Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*,
  721 F.2d 68 (3d Cir. 1983) ................................................ 10

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ........................................................ 15

*Const. Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ................................................ 17

*Cowles v. City of Elizabeth, No. 13-3222*

(WJM), 2014 U.S. Dist LEXIS 48943 (D.N.J. Apr. 9, 2014) .................... 28, 29

*Creelgroup, Inc. v. NGS Am., Inc.*,
    518 F. App' x 343 (6th Cir. 2013) ..................................................... 14

*Daniels v. Williams*, 474 U.S. 327,
    474 U.S. 327, 331 (1986)), *aff'd*, 612 Fed. Appx. 70, 72 (3d Cir. 2015). ........ 29

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ............................................................ 11

*Drummond v. Robinson Twp.*,
    9 F.4th 217 (3d Cir. 2021) ............................................................... 26

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
    11 F.4th 200 (3d Cir. 2021) ............................................................. 19

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ............................................................ 13

*Gavornik v. LPL Fin. LLC*,
    No. 14-955, 2014 WL 3844828 (D.N.J. Aug. 5, 2014) .................................. 14

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ........................................................................ 15

*Goldenberg v. Indel, Inc.*,
    741 F. Supp. 2d 618 (D.N.J. 2010) ..................................................... 14

*Gould Elecs. Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) ............................................................ 10

*Hemy v. Perdue Farms, Inc., No. 11-888 FLW*,
    2011 WL 6002463 (D.N.J. Nov. 30, 2011) ............................................. 13

*In re Application of Boyadjian*,
    362 N.J. Super. 463 (N.J. Super. Ct. App. Div. 2003) ................................... 6

*In re M.U.'s Application for a Handgun Purchase Permit*,
    475 N.J. Super. 148 (App. Div. 2023) ................................................... 6

*Iwanowa v. Ford Motor Co.*,
    67 F. Supp. 2d 424 (D.N.J. 1999) ...................................................... 10

*Jumara v. State Farm Ins. Co.*,

55 F.3d 873 (3d Cir. 1995) ................................................................. 23

*Kendrick v. Bruck*,
586 F. Supp. 3d 300 (D.N.J. 2022) ........................... 2, 3, 5, 6, 19, 21

*Khodara*,
376 F.3d at 196 ........................................................................ 23-24

*Knox v. SEIU, Local 1000*,
567 U.S. 298 (2012) ...................................................................... 15

*Koons v. Platkin*,
673 F. Supp. 3d 515 (D.N.J. 2023) .................... 2, 3, 4, 5, 6, 19, 20, 21, 24, 25

*Libertarian Party of Erie Cnty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) ........................................................... 21

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015) ............................................................. 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, (1992) ..................................................................... 18

*Mazo v. Way*,
551 F. Supp. 3d 478 (D.N.J. 2021) .................................................. 25

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ...................................................................... 26

*Mollett v. Leicth*,
511 F. App'x 172 (3d Cir. 2013) ..................................................... 16

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 (1972) ...................................................................... 19

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir.1977) ...................................................... 10, 11

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1, 142 S. Ct. 2111 (2022) ..................................... 20, 26, 27, 28

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ...................................................................... 23

*NE Hub Partners, L.P., CNG Transmission Corp.*,

239 F. 3d ................................................................................................ 24

*New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, Civ. A. No. 09-683
(KSG), 2010 WL 2674565 (D.N.J. June 30, 2010) .......................................... 13

*Pittsburgh v. W. Penn Power Co.*,
147 F.3d 256 (3d Cir.1998) .............................................................. 13

*Plains All Am. Pipeline L.P. v. Cook*,
866 F.3d 534 ............................................................................ 24, 25

*Rachlin v. Baumann*,
2022 U.S. Dist. LEXIS 174215 (D.N.J.  Feb. 22, 2024) .................................. 20

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997) .............................................................. 13

*Siemens*,
17 F.4th at 412 n.25 .................................................................... 24, 25

*Simon v. United States*,
341 F.3d 193 (3d Cir. 2003) .............................................................. 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................... 18, 19-20

*Taliaferro v. Darby Twp. Zoning Bd.*,
458 F.3d 181 (3d Cir. 2006) .............................................................. 18

*Teixeira v. Cty. of Almeida*,
873 F.3d 670 (9th Cir. 2017) ............................................................. 26

*Texas v. United States*,
523 U.S. 296, (1998) ..................................................................... 24

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ........................................................... 23

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ................................................................. 17, 18

*Weston v. State*,
60 N.J. 36 (N.J. 1972) .................................................................... 6

*Zebrowski v. Wells Fargo Bank, N.A.*,
   657 F. Supp. 2d 511 (D.N.J. 2009) ................................................................. 12

## **<u>Statutes</u>**

42 U.S.C. 1983 ................................................................................................ 6, 7

554 U.S. 570 (2008) ........................................................................................ 26

N.J.A.C.13:54-1.9 ...................................................................................... 3, 4, 7

N.J.A.C.13:54-1.4 ..............................................................................................5

N.J.S.A. 2C:58-3 ................................................... 2, 3, 4, 5, 6, 7, 8, 9, 21, 22, 28

Fed. R. Civ. P.10 ............................................................................................ 13

Fed. R. Civ. P.12 .................................................................2, 8, 10, 12, 13,10

U.S. Const. amend. II ...................................................................................... 26


Article III of the Constitution  ....................................................................... 14

Article III of the United States Constitution  ................................................. 17

## PRELIMINARY STATEMENT

This case uses alleged delays in the processing of three applications for permits to purchase handguns as a springboard to attack New Jersey's laws governing the purchase of firearms. The applications were filed by Plaintiff Christian Benton ("Benton"), who is a resident of Pennsauken Township, and came before Defendant Chief Phil Olivo ("Olivo") in his official capacity as the Police Chief of Pennsauken Township. At the time the Complaint was filed by Benton, along with Plaintiffs Coalition of New Jersey Firearm Owners ("CNJFO"), Gun Owners Of America, Inc. ("GOA"), and Gun Owners Foundation ("GOF") (collectively, "Plaintiffs"), those applications remained pending. Since that time, however, all three applications were approved by Olivo.

Plaintiffs assert that their rights under the Second and Fourteenth Amendment are violated by the alleged delays in processing the three applications by Olivo and, more broadly, by New Jersey's laws governing the purchase of firearms. The claims with respect to the applications appear directed at Olivo, while the broader challenge to New Jersey law appears directed against Defendant Matthew Platkin, in his official capacity as the Attorney General for the Statement of New Jersey.

Since the three applications have been approved, Olivo, respectfully submits that the claims against him are now moot. And that Plaintiffs lack standing to assert any claims against him as to possible future delays, which would not yet be ripe.

Dismissal of the Complaint as to Olivo is thus appropriate under Rule 12(b)(1). Further, even if this was not the case, Plaintiffs' cannot state a case for violation of the Second and Fourteenths Amendments against Olivo as a matter of law, which also warrants dismissal of the Complaint as to Olivo under Rule 12(b)(6). Olivo this respectfully moves to dismiss the Complaint as to him.

## **BACKGROUND**[1]

### I.    **New Jersey Firearm Purchase Law.**

In *Koons v. Platkin*, 673 F. Supp. 3d 515, 552-554 (D.N.J. 2023) and *Kendrick v. Bruck*, 586 F. Supp. 3d 300, 304-05 (D.N.J. 2022), Judges Bumb and Kugler, respectively, provided detailed summaries of the laws governing the purchase of firearms in New Jersey.  Relevant excerpts from those summaries follow:[2]

Generally, to buy a firearm in New Jersey, an individual first needs a Firearms Purchaser Identification Card ("FID"). N.J.S.A. 2C:58-3(b)(1); *see generally Kendrick*, 586 F. Supp. 3d at 304-05 (D.N.J. 2022). This process requires an applicant to, among other things, complete an online application, provide fingerprints, identify character references, and undergo a criminal background

---

[1] For purposes of this Motion, Olivo assumes the allegations of the Complaint to be true, where not contradicted by subsequent events, while reserving his right to contest all allegations in future proceedings.

[2] Minor edits to these excerpts have been made to update statutory fees and adjust defined terms for consistency.

check. *Kendrick*, 586 F. Supp. 3d at 304-05 (extensively detailing the requirements to obtain an FID and a permit to purchase a handgun). The permitting scheme contains age restrictions and many disqualifiers barring individuals from obtaining an FID, such as a felony conviction, a disorderly persons or misdemeanor conviction involving an act of domestic violence, an applicant's history of alcohol or controlled substance abuse problems, an applicant's physical defect or disease that would make it unsafe for the applicant to handle a firearm, and an applicant's present or prior confinement for a mental disorder. N.J.S.A. 2C:58-3(c) (listing 15 statutory disqualifiers). *See generally Koons*, 673 F. Supp. 3d at 552.

FID holders can purchase a rifle or shotgun. N.J.S.A. 2C:58-3(b)(1). An individual seeking an FID must pay a $50 application fee. N.J.S.A. 2C:58-3(f). An FID holder can obtain an unlimited number of rifles or shotguns so long as the holder certifies to the firearms dealer, for each transaction, that he or she is not statutorily disqualified from obtaining an FID. N.J.S.A. 2C:58-3(i); *see also* N.J.A.C.13:54-1.9(b). *See generally Koons*, 673 F. Supp. 3d at 552.

To obtain a handgun in New Jersey, an individual needs a permit to purchase a handgun ("Purchase Permit") and an FID. N.J.S.A. 2C:58-3(a)(1); *see generally Kendrick*, 586 F. Supp. 3d at 304-05; *Koons*, 673 F. Supp. 3d at 552-53. With additional restrictions, the requirements to obtain a Purchase Permit and the statutory disqualifiers are the same for an FID. N.J.S.A. 2C:58-3(c); *see also Kendrick*, 586

F. Supp. 3d at 306. Besides law enforcement officers and licensed firearms dealers, a Purchase Permit allows the holder to obtain only one handgun per permit. N.J.S.A. 2C:58-3(i); *see also* N.J.A.C.13:54-1.9(a). With some limited exceptions, a Purchase Permit holder cannot obtain more than one handgun within any 30-day period. *Id.* An individual seeking a Purchase Permit must pay a $25 application fee. N.J.S.A. 2C:58-3(f). An individual seeking either an FID or Purchase Permit must complete an instruction course approved by the State Police's Superintendent on "the lawful and safe handling and storage of firearms." N.J.S.A. 2C:58-3(c)*. See generally Koons*, 673 F. Supp. 3d at 552-53.

To carry a handgun in public for self-defense in New Jersey, an individual must first obtain a permit to carry a handgun ("Carry Permit"). N.J.S.A. 2C:58-4(a). Unless exempt from obtaining a Carry Permit, an individual caught possessing a handgun in public without a Carry Permit is guilty of a second-degree crime, *see id.* 2C:39-5(e), and faces up to 10 years in prison, *see id.* 2C:43-6(a)(2).  Like an FID and a Purchase Permit, an individual seeking a Carry Permit must complete an application, provide character references, submit to fingerprinting, and undergo a criminal background check. *Id.* 2C:58-4(a) to (b). The same statutory disqualifiers that bar individuals from obtaining FIDs and Purchase Permits likewise bar individuals from obtaining Carry Permits. *Id.* 2C:58-4(c). In addition, an individual must be "thoroughly familiar with the safe handling and use of handguns," *see id.*,

4

which may be shown by, among other things, completing a firearms training course "substantially equivalent to the firearms training approved by the Police Training Commission." N.J.A.C.13:54-2.4(b)(1); *see also* N.J.S.A. 2C:39-6(j). *See generally Koons*, 673 F. Supp. 3d at 553.

FID, Purchase Permit, and Carry Permit applications are made to the chief law enforcement officer of the municipality in which the applicant resides, or in certain cases, the New Jersey State Police's superintendent. N.J.S.A. 2C:58-3(d), -4(c). If the applicant satisfies all applicable requirements and is not statutorily disqualified from obtaining a permit, the chief law enforcement or superintendent "shall" issue the requested permit. N.J.S.A. 2C:58-3(d), (f), -4(d). But if the chief law enforcement or superintendent denies an application, the officer must provide an applicant "with a written statement of the reasons for denial." N.J.S.A. 2C:58-3(d), (f), -4(e). *See generally Kendrick*, 586 F. Supp. 3d at 305.

Upon receipt, the licensing authority "shall investigate" the application, *id.*, including through a background check in which the applicant's fingerprints are "compared with any fingerprints maintained by the State Bureau of Identification and the Federal Bureau of Investigation." N.J.A.C. 13:54-1.4(f); *see also* N.J.S.A. 2C:58-3(e). Absent "good cause" for denial, the licensing authority "shall grant" an FID card "within 30 days from the date of receipt of the application for residents of

this State and within 45 days for nonresident applicants." N.J.S.A. 2C:58-3(f). *See generally Kendrick*, 586 F. Supp. 3d at 305.

The applicant may appeal the denial of his or her application in the Superior Court of New Jersey, Law Division, and is entitled to a hearing on the appeal. *Id.* The state court judge reviews de novo the law enforcement officer's decision to deny a permit. *See generally In re M.U.'s Application for a Handgun Purchase Permit*, 475 N.J. Super. 148, 171 (App. Div. 2023); *accord In re Application of Boyadjian*, 362 N.J. Super. 463, 475 (N.J. Super. Ct. App. Div. 2003). At the hearing, the law enforcement officer must show, by the preponderance of evidence that "good cause" existed to deny the requested permit. *In re M.U.'s Application for a Handgun Purchase Permit*, 475 N.J. Super. at 171. New Jersey state courts must engage in "a fact-sensitive analysis," and when appropriate, accept "relevant testimonial and documentary evidence, including from the [applicant] and the police." *Id.; see generally Weston v. State*, 60 N.J. 36, 39 (N.J. 1972). The Legislature allows for appeals "[t]o guard against arbitrary official action" by law enforcement officers. *Burton v. Sills*, 53 N.J. 86, 91 (1968). *See generally Koons*, 673 F. Supp. 3d at 554.

## II.    Procedural History.

On or around June 18, 2024, Plaintiffs filed a Complaint asserting a single count for violation of the Second Amendment and Fourteenth Amendment, pursuant to 42 U.S.C. 1983, against New Jersey Attorney General Matthew Platkin and Olivo.

(*See* Doc. No. 2, Complaint.) The Complaint seeks declaratory and injunctive relief, as well as nominal damages and attorneys' fees.  (*Id.* at 34, Prayer for Relief.) Specifically, Plaintiffs seek an order declaring that the challenged sections of N.J.S.A. 2C:58-3, including the SBI-212A fee and New Jersey's "one gun a month" law (N.J.S.A. 2C:58-3(i) and N.J.A.C. 13:54-1.9), are unconstitutional, and enjoining Defendants from enforcing all laws requiring permits to purchase handguns, or limiting handgun purchases to one per month. (*Id.*)  Plaintiffs also seek an order enjoining Defendants from unlawfully delaying the exercise of one's Second Amendment right to keep and bear arms.  (*Id.*)

After obtaining two extensions of time to respond to Plaintiffs' Complaint, (*See* Doc. No. 12, Application for Clerk's Order to extend time to answer; Doc. No. 14, Application/Petition for Extension of Time to File Answer or Otherwise Respond to Plaintiffs' Complaint), Olivo now moves to dismiss Plaintiffs' Complaint in its entirety with prejudice and without costs.

## III.   Factual Background.

Philip P. Olivo, III ("Olivo") is Chief of the Pennsauken Township Police Department (the "Department"). (*See* Certification of Phillip P. Olivo III [hereinafter, "Olivo Cert."] at ¶ 1.)  As such, Olivo is responsible for the issuance of FIDs, Purchase Permits, and Carry Permit supon applications from qualified residents of Pennsauken Township. (*See* Olivo Cert. at ¶ 2.) (*See* Doc. No. 2,

Complaint at ¶ 105.) *See* N.J.S.A. 2C:58-3(d). He is also responsible for investigating and determining whether applicants are qualified in accordance with applicable law. (*See* Olivo Cert. at ¶ 3.) Olivo may delegate some or all of these responsibilities to subordinate officers or employees of the Department, N.J.S.A. 2C:58-3(p), and has elected to do so. (*Id.* at ¶ 4.)

Upon the receipt of FID, Purchase Permit, and Carry Permit applications, designated civilian employees of the Department track the applications. (*Id.* at ¶ 5.) After receipt of the requisite fees associated with the applications, the designated civilian employees conduct the necessary investigation. (*Id.* at ¶ 6.) That investigation includes, when applicable, the following: Fingerprint Results, NJ Criminal Name Check, NCIC III Criminal Master Name Index Check, Mental Health Check, Reference Feedback, Residence Verification, Identification Check, Municipal Court System (ACS/ATS) Check, Prosecutor and Superior Court Check (Promis Gavel), Juvenile Central Registry Check, Domestic Violence Central Registry Check, Immigration Alien Check, Local Police Database Check, LEO Verification, Suspicious Activity Reports Check, Multiple Handgun Exemption, and Photograph Check. (*Id.* at ¶ 7.) The designated civilian employees then make a recommendation to Olivo for his consideration and a final determination. (*Id.* at ¶ 8.)

On February 27, 2024, Benton applied for two Purchase Permits (the "February Applications"). (*Id.* at ¶ 10; Doc. No. 2, Complaint at ¶¶ 101, 102.)  On March 5, 2024, Benton paid the required fees for the February Applications.  (*See* Olivo Cert. at ¶ 11.)  The investigation of the February Applications was completed on June 4, 2024, at which time the designated civilian employee submitted the completed application to Olivo with a recommendation for approval.  (*Id.* Olivo Cert. at ¶ 12.)

On June 10, 2024, Benton applied for a third Purchase Permit (the "June Application"). (*Id*. at ¶ 13.)  (*See* Doc. No. 2, Complaint at ¶ 104.)  The following day, on June 11, 2024, Benton paid the required fees for the June Application.  (*See* Olivo Cert. at ¶ 14.)  The investigation of the June Application was completed on July 1, 2024, at which time the designated civilian employee submitted the completed application to Olivo with a recommendation for approval.  (*Id.* at ¶ 15.)

At the time the Complaint was filed, on June 18, 2024, Benton had not yet received a response to the February Applications or the June Application, which had only been pending for one week at the time. (*See* Doc. No. 2, Complaint at ¶ 103.) Thereafter, on July 9, 2024, all three of Benton's applications—the February Applications and the June Application—were approved by Olivo. (*See* Olivo Cert. at ¶ 16.)  There are no currently outstanding applications for Purchase Permits filed by Benton. (*Id.* at ¶ 17.)

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW.

#### A.   Rule 12(b)(1).

The Court's subject matter jurisdiction is considered pursuant to Fed. R. Civ. P. 12(b)(1).  *See Almeida v. Conforti*, No. 16-3411 (KM) (JBC), 2017 U.S. Dist. LEXIS 21817, at *10-12 (D.N.J. Feb. 14, 2017).  Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

A factual challenge, however, attacks subject matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen*, 549 F.2d at 891. The factual nature of the attack permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus a factual jurisdictional

challenge may not go forward unless and until the plaintiff's allegations have been controverted. *Mortensen*, 549 F.2d at 891 n.17.

> [I]n reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction."

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted)).

Here, Olivo's jurisdictional arguments are factual attacks because they assert that the Complaint's allegations impacting subject matter jurisdiction are incomplete and rely on materials extrinsic to the Complaint. Although the Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits," *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016), there is no risk of that transformation here because the jurisdictional challenge does not "attack[] facts at the core of the merits." *See id.* Instead, Olivo provides extrinsic facts that supplement, rather than contradict, the facts alleged in the Complaint. *See Almeida*, 2017 U.S. Dist. LEXIS 21817, at *12. It is those facts that preclude this Court's exercise of subject matter jurisdiction.

**B.      Rule 12(b)(6).**

A motion to dismiss made pursuant to Rule 12(b)(6) allows the Court to dispose of a claim for relief, before the parties are required to devote time and resources to it, where it is clear on the face of the complaint that the plaintiff's asserted cause of action cannot succeed.  In order to avoid dismissal for failure to state a claim, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a court ruling on a motion to dismiss is required to accept all well-pleaded factual allegations as true, it is *not* required to accept mere unsupported conclusory allegations, nor is it bound by a "legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 556; *Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 516 (D.N.J. 2009).  Indeed, the court should first eliminate all conclusory allegations, which "are not entitled to the assumption of truth," and only then evaluate the plausibility of the non-conclusory allegations.  *Iqbal*, 556 U.S. at 680-81.  The court also is not required to accept "unwarranted inferences."

12

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997); *see also New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, Civ. A. No. 09-683 (KSG), 2010 WL 2674565, at *16 (D.N.J. June 30, 2010) ("This Court is not obliged to accept as fact a complaint's conclusory legal assertions where specific factual allegations do not rise above the speculative level.") "Ultimately, 'a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.'" *Hemy v. Perdue Farms, Inc.*, No. 11-888 FLW, 2011 WL 6002463, at *5 (D.N.J. Nov. 30, 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).

In reviewing a motion to dismiss under Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* 1357 (2d ed.1990)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")  Similarly, "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("[A] court may consider an

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The applications for permits to purchase a handgun referred to in the Complaint are integral to and explicitly referenced in the Complaint and may be considered for purposes of this motion without converting it to a motion for summary judgment.[3]  "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App' x 343, 347 (6th Cir. 2013).  *Accord*, *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 (3d Cir. 1994); *Goldenberg v. Indel, Inc*., 741 F. Supp. 2d 618, 624 (D.N.J. 2010); *Gavornik v. LPL Fin. LLC*, No. 14-955, 2014 WL 3844828, at *5 (D.N.J. Aug. 5, 2014).

## II.   PLAINTIFFS' CLAIMS AGAINST OLIVO ARE MOOT.

It is axiomatic that Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies," requiring that "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, (1997). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,'

---

[3] In the alternative, Defendant Olivo requests this court view this motion, as a motion for summary judgment as there is no additional discovery to be conducted that will establish a need for relief.

at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)). In order for a claim to be moot, however, it must be "impossible for a court to grant any effectual relief." *Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012); *see also Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-699 (3d Cir. 1996) ("If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). Where a party maintains "a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165 (2013).

"But a plaintiff cannot avoid mootness merely by alleging that Defendants wronged him." *Almeida v. Conforti*, 2017 U.S. Dist. LEXIS, at *14. "Rather, the proper inquiry is whether it is possible any longer for 'a court to grant any effectual relief' for those alleged wrongs." *Id.*; *see Knox*, 132 S. Ct. at 2287; *Blanciak*, 77 F.3d at 698-699. In *Almeida*, in the context of a claimed denial of applications for Carry Permits, the Court found that "[t]he[] requested remedies are useless now that [the plaintiff] has his permit." 2017 U.S. Dist. LEXIS, at *15. It reasoned, "this Court cannot fashion any effective injunctive relief because Chief Danielson has already approved Almeida's handgun permit application," and that "no injunction

can provide to Almeida any meaningful relief because he has already obtained the permit he desired." *Id.* Such is the case here.

At the time the Complaint was filed, the February Applications and June Application remained pending. At that time, the Court could conceivably have fashioned injunctive relief against Olivo. However, since that time, all three of Benton's applications have been approved. As such, there is no longer any effective relief that could be granted with respect to Olivo. As to Olivo, there is no longer an actual controversy.

Further, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Mollett v. Leicth*, 511 F. App'x 172, 174 (3d Cir. 2013) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)). This is "because [the purpose of] a declaratory judgment is to declare the rights of litigants" going forward. *Sherard v. Berks Cty.*, 576 F. App'x 66, 69-70 (3d Cir. 2014) (quoting *CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013)). "[I]t is by definition 'prospective in nature.' It does not serve a purpose where the complained-of situation has changed." *Id.* In this instance, Benton's "situation has changed"—his permits were approved on July 9, 2024. Thus, a declaratory judgment that the earlier denial was unconstitutional or that Benton is currently entitled to a Purchase

16

Permit would serve no meaningful purpose.  *See Almeida*, 2017 U.S. Dist. LEXIS, at *15.

Plaintiffs' claims as to Olivo were predicated upon alleged delays in the processing of the February Applications and an anticipated delay in the processing of the June Application.  Now that all three applications have been approved, there is no live controversy as to Olivo, and the claims against him must be dismissed as moot.

## III.   PLAINITFFS' LACK STANDING AS TO OLIVO.

In determining whether a complaint is sufficient to confer standing, the Court must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A plaintiff's complaint must contain factual allegations that plausibly support the existence of standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("A plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation.") (citation and quotation marks omitted).

As noted above, a plaintiff must establish his standing to sue under Article III of the United States Constitution, which limits the jurisdiction of federal courts to "cases" and "controversies." *Arizonans for Official English*, 520 U.S. at 67.  "Absent Article III standing, a federal court does not have subject matter jurisdiction to

address a plaintiffs claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). This "constitutional standing" has three essential elements, which are: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent', not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court'"; and (3) the injury would likely be redressed by judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561, (1992) (internal citations omitted); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, general factual allegations will suffice to discharge the plaintiff's burden. *Lujan*, 504 U.S. at 561.

Concrete injuries can be tangible or intangible. *See TransUnion LLC*, 141 S. Ct. at 2204. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including, . . . reputational harm." *Id.* at 2200 (quoting *Spokeo*, 578 U.S. at 340-41). An injury is sufficiently particularized if "it affects the plaintiff in a personal and individual way." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278

18

(3d Cir. 2014) (internal citations omitted). A harm is actual or imminent "where it is presently or actually occurring, or is sufficiently imminent." *Id.*

"For an individual to have standing to challenge a firearm permitting scheme . . . , he or she must have applied for (and not been granted) a permit, made a 'substantial showing' that doing so would have been futile, *Kendrick,* 586 F. Supp. at 308, or have shown that he or she was 'able and ready' to apply for the sought-out permit, *Ellison v. Am. Bd. of Orthopaedic Surgery,* 11 F.4th 200, 206 (3d Cir. 2021)." *Koons,* 673 F. Supp. at 556; *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67 (1972) (holding plaintiff lacked standing to challenge a discriminatory membership policy because plaintiff never applied to become a member).

With Benton's applications having been approved, rendering any claim against Olivo related to any alleged delay as to those applications moot, Plaintiffs are not able to establish standing to advance any other theories as to Olivo.

### A.    Injury in Fact.

Beyond the February Applications and June Application, Plaintiffs allege that future delays in processing Purchase Permits will limit Benton's ability to continuously buy one gun per month. (*See* Doc. No. 2, Complaint, at ¶ 113.) However, these allegations do not present an injury that is "concrete and particularized," or one that is "actual or imminent." *Spokeo, Inc.*, 578 U.S. at

19

338.   The hypothetical possibility of future waiting due to potential delays in processing Purchase Permit applications is insufficient to establish an injury in fact.

As discussed more fully in Section V below, waiting during nominal delays is not a concrete and particularized injury in fact.  *See Rachlin v. Baumann*, 2022 U.S. Dist. LEXIS 174215, at *56 (D.N.J.  Feb. 22, 2024) (holding that delays in processing an FPIC application did not violate the Second Amendment under the circumstances of that case); *Adler v. Livak*, 308 N.J. Super 219, 223-25 (App. Div. 1998) (holding the exceeding the 30-day consideration period did not amount to a statutory violation when necessary to obtain information to investigate application); *accord N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9, 142 S. Ct. 2111 (2022) (noting in *dicta* that "lengthy" wait times "put toward abusive ends" could implicate the right to carry).

Plaintiffs' Complaint also fails to establish that the alleged injury of "waiting" is imminent. Benton does not have any currently pending applications. Plaintiffs' Complaint alleges that there will be continued processing delays that will further infringe on his Second Amendment rights. However, this hypothetical assumption is an inadequate representation of an injury in fact.  *See Koons*, 673 F. Supp. at 559-60 (finding that three plaintiffs lacked standing to challenge permit process for FIDs and Purchase Permits where two declared only that they "intend to apply" for more Purchase Permits, and a third only that she "qualif[ies] for and imminently intend[s]

to apply for a[n] FID and one or more Purchase Permits"); *Bruck*, 586 F. Supp. 3d at 308 (finding plaintiffs lack standing to challenge FID and Purchase Permit laws because plaintiffs never applied for permits); *accord Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 121-22 (2d Cir. 2020) (affirming dismissal of plaintiffs' claims challenging state's firearm permit laws for lack of standing because plaintiffs never applied for permits), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111.

The remaining alleged harm here is not actual or imminent, because it is not presently or actually occurring. Benton's applications have been approved.  The only allegation left as to Olivo is that because he has suffered processing delays in the past, he will continue to experience processing delays in the future that will prohibit him from buying one gun each month. However, this hypothetical and "generalized grievance" is "an inadequate basis on which to grant standing." *Kendrick*, 586 F. Supp. 3d at 309 (quoting *Md. Shall Issue. Inc, v. Hogan*, 971 F.3d 199, 219-20 (4th Cir. 2020)).

B.     **Causal connection**

Even if this Court were to find that there is an injury in fact, Plaintiffs' Complaint has failed to show a causal connection between such alleged injuries and any conduct by Olivo. As discussed more fully in Section V below, the February Applications were approved only 35 days after the requisite investigation was completed, while the June Application was approved only 8 days after completion

of the required investigation. (*See* Olivo Cert. at ¶ 16.)  N.J.S.A. 2C:58-3 requires the completion of certain procedural tasks such as background checks and fingerprints to be completed before Olivo can even consider an application.  The factual allegations of the Complaint are thus insufficient to show a causal connection between any alleged "waiting" injury suffered by Plaintiffs and any conduct by Olivo.

### C.    Redress.

Finally, there is no remedy the Court could fashion to address any alleged "waiting" injury caused by Olivo.  The February Applications and June Application have already been granted, there are no currently pending application by Benton, and State law already dictates the process and timeline governing Olivo's response to Purchase Permit applications.  Any broader claim to invalidate N.J.S.A. 2C:58-3 does not involve Olivo and can be pursued without him as a party to this case.

With Benton's applications having been approved, Plaintiffs' Complaint is devoid of any facts or allegations that create standing with respect to any ongoing allegations against Olivo.   Plaintiffs' claims against Olivo must therefore be dismissed in their entirety.

## IV.    PLAINTIFFS' CLAIMS AGAINST OLIVO ARE NOT RIPE.

Ripeness is a "justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967)).

"Under the ripeness doctrine, federal courts 'will not decide a case where the claim involves contingent future events that may not occur as anticipated, or indeed may not occur at all." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). This doctrine derives "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Id.* at 880. When the plaintiff, as here, seeks prospective relief, "the constitutional component of the ripeness inquiry" may "coincide[] squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000); *see also Almeida*, 2017 U.S. Dist. LEXIS, at *17-19.

To determine whether a case is ripe for judicial review, courts must consider: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. 136 at 149. When a plaintiff seeks declaratory relief, like the Plaintiffs here, Third Circuit courts employ a "somewhat refined test" by examining: "(1) the adversity of the parties' interests,

23

(2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Khodara Env't, Inc. v. Blakey. United States Ct. of Appeals*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996)); *see also Koons*, 673 F. Supp. 3d at 583.

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Plains*, 866 F.3d at 541 (quoting *Travelers Ins. Co v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995)). When the plaintiff's claim involves a threatened government action, a plaintiff does not need to "expose himself to liability before bringing suit to challenge the basis for the threat." *Id.* (quoting *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)). If such a claim presents "a real and substantial threat of harm," the claim is ripe for review. *Siemens*, 17 F.4th at 412 n.25 (quoting *NE Hub Partners, L.P., CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001)). But if the claim rests on "contingent future events that may not occur as anticipated, or indeed may not occur all," then the claim is not ripe for judicial review. *Texas v. United States*, 523 U.S. 296, 300, (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)); *see also Koons*, 673 F. Supp. 3d at 583.

The conclusiveness-of-the-judgment factor examines whether "a declaratory judgment definitively would decide the parties' rights." *NE Hub Partners*, 239 F. 3d at 344. Accordingly, the parties' dispute "must be based on a real and substantial

24

controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Plains*, 866 F.3d at 542-43 (quoting *Florio*, 40 F.3d at 1463). To determine conclusiveness, courts must consider whether: (1) "the legal status of the parties would be changed or clarified," and (2) "further factual development . . . would facilitate decision, so as to avoid issuing advisory opinions, or the question presented is predominantly legal." *Mazo v. Way*, 551 F. Supp. 3d 478, 496 (D.N.J. 2021) (omission in original) (quoting *Travelers Ins. Co., v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995) and *NE Hub Partners*, 239 F.3d at 344), *aff'd sub nom. Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022); *see also Siemens*, 17 F.4th at 412 n.25 (observing purely legal issues are likely ripe for judicial review); *Koons*, 673 F. Supp. 3d at 584.

With Benton's applications for Purchase Permits having been approved, the allegations of the Complaint directed towards Olivo amount to nothing more that speculation about future contingent events. Plaintiffs will suffer no immediate harm in the absence of any immediate relief with respect to Olivo, and the Court could offer nothing more than an advisory opinion as to his conduct. Simply stated, now that the February Applications and the June Application have been approved, any claims by Plaintiffs against Olivo are unripe and must be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE SECOND AMENDMENT AS TO OLIVO.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment guarantees "an individual right to keep and bear arms," 554 U.S. 570, 595 (2008), and this right is "fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). "[A]t the 'core' of the Second Amendment is the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Binderup v. Att'y Gen.*, 836 F.3d 336, 343 (3d Cir. 2016) (quoting *Heller*, 554 U.S. at 634-35).  Interpreting *Heller*, several courts have also recognized a corresponding right to acquire firearms that are otherwise protected under the Second Amendment. *See Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021); *Teixeira v. Cty. of Almeida*, 873 F.3d 670, 677-78 (9th Cir. 2017).

However, the right to keep and bear arms "is 'not unlimited.'" *Binderup*, 836 F.3d at 343 (quoting *Heller*, 554 U.S. at 626).  In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court suggested that "shall-issue" licensing regimes, which New Jersey employs, are likely to pass constitutional must, "[b]ecause these licensing regimes do not require applicants to show an atypical need for armed self-defense," but "[r]ather, . . . are designed to ensure only that those bearing arms in

26

the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"  597 U.S. 1, 38 n.9 (2022) (quoting *Heller*, 554 U.S. at 635).  At the same time, the Court noted that "because any permitting scheme can be put towards abusive ends, we do not rule out constitutional challenges to shall-issue regimes," while suggesting by way of example in *dicta* that "lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."  *Id.*

Four months before *Bruen*, the plaintiff in *Rachlin* alleged that his Second Amendment rights were violated by delays in processing his FID application.  2022 U.S. Dist. LEXIS, at 55.  The police chief defendant was experiencing delays in completing the requirements associated with processing the application due to "unprecedented" volume received during the COVID-19 pandemic.  *Id.*  Ultimately, the plaintiff there waited approximately five months for a final decision on his FID application.  *See id.* at 5, 15.  The Court found that the plaintiff failed to "cite to any authority holding that delays beyond a statutorily required processing period—or, more generally, that the amount of time taken to process Plaintiff's application— violate the Second Amendment."  *Id.* at 56.

Similarly, as noted in <u>Rachlin</u>, the Superior Court of New Jersey, Appellate Division, has held that no statutory violation occurs when an issuing authority takes longer than 30 days to process an application due to delays in completing application requirements, as the delays provide "good cause" for withholding a permit until the

investigation is complete. *See Adler,* 308 N.J. Super. at 223-25 (App. Div. 1998) (no statutory violation where FPIC processing period exceeds 30 days due to delays in receiving fingerprint reports from State Bureau of Investigation and FBI).

In this case, Benton's February Applications were approved approximately four months after he submitted the required payment, and only 35 days after the requisite investigation was completed. (*See* Olivo Cert. at ¶ 16.)   The June Application was approved 28 days after payment, and only 8 days after completion of the required investigation. *Id.*   Once Olivo receives a completed application, the statutory waiting period of thirty-days begins running. N.J.S.A. 2C:58-3(f) ("shall grant the permit or identification card. . . within 30 days from the date of receipt of the *completed* application) (emphasis added).   To the extent Benton experienced any delay in receiving approval for his Purchase Permits, it does not rise to the type of "lengthy" delay that *Bruen* speculated may deny ordinary citizens of their right to public carry.   597 U.S. at 38 n.9.   As such, Plaintiffs' fail to state a viable cause of action with respect to Olivo and their Complaint must be dismissed with respect to him.

## VI.   PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT CLAIM AGAINST OLIVO.

"The Supreme Court has held that an individual's liberty and property rights under the Fourteenth Amendment are not violated by 'mere' negligence of a public employee." *Cowles v. City of Elizabeth*, No. 13-3222 (WJM), 2014 U.S. Dist LEXIS

28

48943, at *8 (D.N.J. Apr. 9, 2014) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)), *aff'd*, 612 Fed. Appx. 70, 72 (3d Cir. 2015).   In *Crowles*, a gun permit application was denied as incomplete when responses from the plaintiff's references were not received.   2014 U.S. Dist. LEXIS 48943, at *2-3.   Plaintiff disputed whether the police department employee designated to investigate the applications ever sent notice to the references.   *Id.*   At most, the court reasoned, the alleged conduct would amount to negligence, which is insufficient to state a claim under the Fourteenth Amendment.   *Id.* at *8.

The same analysis is applicable here.   At most, any delay in the processing of Benton's February Applications would amount to simple negligence, which does not violate the Fourteenth Amendment.   *See Daniels*, 474 U.S. at 331; *Cowles*, 612 Fed. Appx. at 72.

## <u>CONCLUSION</u>

Based on the foregoing, Olivo respectfully requests that the Court dismiss the

Complaint in its entirety and with prejudice as to him.

Respectfully submitted,

<u>s/ **Michael J. Miles**</u>
Michael J. Miles, Esq.
Arlette Leyba, Esq.
Attorneys for Defendant Chief Phil Olivo


Dated:        August 26, 2024