## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTIAN BENTON, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION, <br><br> Plaintiffs, <br><br> vs. <br><br> MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, and CHIEF PHIL OLIVO, in his official capacity as the Police Chief of Pennsauken Township, <br><br> Defendants. | Hon. Karen M. Williams, U.S.D.J. <br> Hon. Matthew J. Skahill, U.S.M.J. <br><br><br> DOCKET NO. 1:24-cv-7098 <br><br><br> <u>Civil Action</u> <br> (Electronically Filed) <br><br><br> Motion Date: October 7, 2024 |

## BRIEF IN SUPPORT OF DEFENDANT ATTORNEY GENERAL OF NEW JERSEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN PART PURSUANT TO FED. R. CIV. P. 12(b)(1)

Angela Cai
*Deputy Solicitor General*

Daniel M. Vannella
*Assistant Attorney General*

Liza B. Fleming
Justine M. Longa
Giancarlo Piccinini
*Deputy Attorneys General*

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendant Attorney General of New Jersey*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................4

    A.  New Jersey's Permit To Purchase Law.....................................4

    B.  The Instant Challenge.................................................................6

STANDARD OF REVIEW ..................................................................9

ARGUMENT ....................................................................................10

I.   BENTON LACKS STANDING TO CHALLENGE THE PPH
    STATUTE OR PERMIT ISSUANCE DELAYS. ........................................11

    A.  Benton Lacks An Article III Injury To Challenge The PPH Statute........12

    B.  Benton's Alleged Injuries From The Township's Delay In Issuing His
        PPHs And From The Fingerprinting Fee Is Not Traceable To,
        Or Redressable By, The Attorney General.................................20

II.  ASSOCIATION PLAINTIFFS ALSO LACK STANDING
    TO CHALLENGE THE PPH STATUTE OR PERMIT
    ISSUANCE DELAYS.......................................................................24

    A.  The Association Plaintiffs Lack An Article III Injury To Challenge
        The PPH Statute.........................................................................25

    B.  Any Claims By Association Plaintiffs Based On Permit Issuance
        Delays Or The Fingerprinting Fee Also Fail For Lack Of Traceability
        And Redressability. ...................................................................28

CONCLUSION ................................................................................30

i

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*,
713 F.3d 1187 (9th Cir. 2013) ..................................................................28

*California v. Texas*,
593 U.S. 659 (2021) ........................................................................ 20, 21

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..................................................................................19

*CNA v. United States*,
535 F.3d 132 (3d Cir. 2008) ....................................................................10

*Const. Party v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ..................................................................9, 10

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ................................................................................20

*Dearth v. Holder*,
641 F.3d 499 (D.C. Cir. 2011) ........................................................ 13, 17

*Diamond S.J. Enter., Inc. v. City of San Jose*,
100 F.4th 1059 (9th Cir. 2024) ............................................... 14, 15, 27

*Do No Harm v. Pfizer Inc.*,
96 F.4th 106 (2d Cir. 2024) ....................................................................27

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2016) ......................................................................27

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) ....................................................................10

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*,
974 F.3d 408 (3d Cir. 2020) ..................................................... 24, 25, 28

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ............................................................................25

*Hightower v. City of Boston*,
   693 F.3d 61 (1st Cir. 2012) ................................................................13

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) ..................................................................9

*Kendrick v. Bruck*,
   586 F. Supp. 3d 300 (D.N.J. 2022) ...................................................14

*Kwong v. Bloomberg*,
   876 F. Supp. 2d 246 (S.D.N.Y. 2012) ...............................................24

*Lane v. Holder*,
   703 F.3d 668 (4th Cir. 2012) .............................................................17

*Libertarian Party of Erie Cnty. v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020)................................................. 13, 14, 15, 22

*Libertarian Party of Erie Cnty. v. Cuomo*,
   300 F. Supp. 3d 424 (W.D.N.Y. 2018)...............................................18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................. 11, 13, 21

*Lutter v. JNESO*,
   86 F.4th 111 (3d Cir. 2023) ........................................................ 19, 24

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977)...............................................................10

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024)............................................................... 19, 27

*N.J. Physicians, Inc. v. President of U.S.*,
   653 F.3d 234 (3d Cir. 2011).............................................................25

*O'Shea v. Littleton*,
 414 U.S. 488 (1974) ...............................................................................19

*Parker v. District of Columbia*,
 478 F.3d 370 (D.C. Cir. 2007) ...............................................................13

*Pen Am. Ctr., Inc. v. Trump*,
 448 F. Supp. 3d 309 (S.D.N.Y. 2020) .....................................................28

*Pennhurst State Sch. & Hosp. v. Halderman*,
 465 U.S. 89 (1984) ..................................................................................23

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
 998 F.2d 1192 (3d Cir. 1993) ..................................................................10

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014) ....................................................................16

*Simon v. E. Ky. Welfare Rts. Org.*,
 426 U.S. 26 (1976) ..................................................................................11

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) ................................................................................17

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ................................................................. 16, 25, 29

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) ................................................................................19

*TransUnion LLC* v. *Ramirez*,
 594 U.S. 413 (2021) ................................................................................11

*United States v. Decastro*,
 682 F.3d 160 (2d Cir. 2012) ....................................................................13

*United States v. Richardson*,
 418 U.S. 166 (1974) ................................................................................13

iv

*United States v. Texas*,
  599 U.S. 670 (2023) ......................................................................... 12, 20

*Westfall v. Miller*,
  77 F.3d 868 (5th Cir. 1996) ........................................................... 14, 15

## Statutes

N.J. Admin. Code § 13:59-1.3 ...............................................................19

N.J. Admin. Code §§ 13:54-1.1 *et seq* ..................................................4, 6

N.J. Stat. Ann. § 2C:58-3 ............................................................ passim

N.J. Stat. Ann. § 2C:58-4 ...................................................................16

## Court Rules

Federal Rule of Civil Procedure 12 ........................................................9

## Other Authorities

*Announcements*, N.J. Bd. of Bar Exam'rs,
  https://tinyurl.com/3eyhp4ns ...........................................................23

*Interstate Background Checks*, N.J. Dep't of Health & Human Servs.,
  https://tinyurl.com/pbnxse46 ...........................................................24

*Live Scan: Electronic Fingerprinting Process*, N.J. Dep't of Banking & Ins.,
  https://tinyurl.com/54b9mt9n.............................................................23

*New Jersey Permit to Carry Data*, N.J. Off. of Att'y Gen.,
  https://tinyurl.com/538fdwrr............................................................16

*NJ Criminal History Records Information*, N.J. State Police,
  https://tinyurl.com/ydmnv7jz.............................................................23

## **PRELIMINARY STATEMENT**

Like many other states and the federal government, New Jersey has enacted measures to ensure that people who are prohibited by law from possessing handguns—such as minors, criminals, domestic abusers, and those with mental illness—are not able to do so. To reduce the risk that such individuals purchase deadly weapons, New Jerseyans who want to buy a handgun must first obtain a Permit to Purchase a Handgun ("PPH"). And to prevent straw purchasers from buying multiple handguns with the intention of transferring them to persons who cannot not legally obtain handguns, New Jersey limits the purchase of handguns to one purchase every 30 days—known as the "one gun a month" law.

To obtain a PPH, an applicant must complete an application that allows law enforcement to do a criminal and mental health investigation and confirm that the applicant is not statutorily disqualified from owning a firearm. The reviewing law enforcement agency also must obtain fingerprints from first-time applicants, which are compared against state and federal databases. Once a PPH application is submitted with a $25 fee, the reviewing law enforcement agency is required to "investigate" the application and, if the requirements are met, must grant the PPH within 30 days of receipt of the application. Once a PPH is obtained, a person may purchase a handgun from a licensed seller.

Plaintiff Christian Benton and three associations—Coalition of New Jersey Firearm Owners ("CNJFO"), Gun Owners of America, Inc. ("GOA"), and Gun Owners Foundation ("GOF")—assert that New Jersey's PPH law and one-gun-a-month law violate the Second Amendment on their face. Benton also alleges that he experienced delays in receiving his PPHs beyond the 30-day statutory period and that the delays violate the Second Amendment. But as this motion explains, Plaintiffs lack standing to bring most of their challenges.

First, Benton lacks Article III standing to challenge New Jersey's requirement of obtaining a PPH to possess a handgun because he has not actually been denied a PPH. In fact, the three PPH applications identified in his Complaint have since been granted. He thus lacks a cognizable injury, and his request for prospective relief is moot in any event. And besides, any injury he alleges—including the fees he paid—sounds only in past harm, which cannot form the basis of a claim for prospective relief.

Moreover, while Benton claims he suffered harm from the delay exceeding the 30-day statutory period in his PPHs being approved, any such injury was not caused by the Attorney General or would be redressed by an injunction against him. Rather, the chief police officer of the municipality in which Benton resides issues the PPH and thus any alleged delay would be traceable only to him. Nor is any alleged injury Benton suffered from paying a fingerprinting fee traceable to the

Attorney General. Such fee is charged by the third-party processing the fingerprints, is not imposed by statute, and thus is not traceable to the Attorney General.

The Association Plaintiffs—CNJFO, GOA, and GOF—fare no better. They allege only that they have associational standing based on that of their members. Initially, CNJFO and GOA cannot establish associational standing to challenge the PPH requirement for the same reason that their identified member, Benton, lacks standing. And while the Association Plaintiffs claim that other members are harmed by the PPH requirement, they have not identified members who have been denied a PPH. Nor do the Association Plaintiffs identify any members who plan to imminently apply for a PPH; they thus lack standing to seek prospective relief against the statute. Finally, like Benton, the Association Plaintiffs cannot establish that any alleged injury suffered by their members from the delay in issuing their PPHs or from the fingerprinting fee is traceable to the Attorney General, or would be redressable by an order enjoining the Attorney General from enforcing the statute.

For these reasons, Plaintiffs' challenges to the PPH statute and any delay beyond the 30-day statutory period that they allegedly experienced in receiving their PPHs should be dismissed for lack of standing, leaving only Plaintiffs' challenge to the "one gun a month" provision of the PPH statute remaining.

3

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

### A.    New Jersey's Permit To Purchase Law

In New Jersey, a person who wishes to purchase a handgun must obtain a PPH, subject to exceptions not relevant here. N.J. Stat. Ann. § 2C:58-3(a)(1). The procedures for obtaining a PPH are governed by statute and regulation. *See* N.J. Stat. Ann. § 2C:58-3; N.J. Admin. Code §§ 13:54-1.1 *et seq*.

Under New Jersey law, to obtain a PPH a person must submit an application, in the form prescribed by the Superintendent of the New Jersey State Police, to the "chief police officer of an organized full-time police department of the municipality where the applicant resides," or with the Superintendent if the applicant is an out-of-state resident or resides in a municipality where the State Police has patrol responsibility. N.J. Stat. Ann. § 2C:58-3(d). A person must "not be denied" a PPH "unless the person is known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others," or is "subject to" one or more statutory disqualifiers. *Id.* § 2C:58-3(c). These disqualifiers include, among other things, prior domestic-violence convictions, *id.* § (c)(1), prior confinement for a mental disorder, *id.* § (c)(3), and presence on the Terrorist Watchlist, *id.* § (c)(9). Applicants must also demonstrate that they have

---

[1] Combined for the Court's convenience.

"satisfactorily completed a course of instruction approved by the superintendent in the lawful and safe handling and storage of firearms." *Id.* § 2C:58-3(c). An applicant need only demonstrate that requirement "only once prior to obtaining" the applicant's first PPH, "within four years prior to the date of the application." *Id.*

Applications for PPHs must contain certain personal identifying information—such as the applicant's name, residence, and date of birth—and questions designed to determine if the applicant is subject to one or more of the statutory disqualifiers. *Id.* § 2C:58-3(e). The application form must be signed by the applicant and list the names and addresses of "two reputable citizens personally acquainted with the applicant" as references. *Id.* The applicant must also certify whether they are purchasing the handgun on their own behalf or, if not, "that the purchase is being made on behalf of a third party to whom the applicant may lawfully transfer the handgun." *Id.* The reviewing law enforcement agency is required to obtain fingerprints from first-time applicants, which are compared against "any and all records of fingerprints in the municipality and county in which the applicant resides and also the records of the State Bureau of Investigation and the Federal Bureau of Investigation." *Id.*

Once a PPH application is completed and submitted with a fee of $25, the reviewing law enforcement agency is required to "investigate" the application and, "provided the requirements of this section are met, shall grant the permit ... within

5

30 days from the date of receipt of the application for residents of this State and within 45 days for nonresident applicants." *Id.* § 2C:58-3(f). When an application is granted, the PPH is issued to the applicant electronically. *Id.* § 2C:58-3(h)(1). It is valid for 90 days from the date of issuance and can be extended for another 90 days for "good cause." *Id.* § 2C:58-3(f). If an application is denied, the applicant may seek judicial review within 30 days of the denial by requesting a hearing "in the Superior Court of the county in which he or she resides" or, if they are a nonresident, "the county in which the [] application was filed." *Id.* § 2C:58-3(d).

Generally, anyone who is not a law enforcement officer or a licensed dealer may acquire "[o]nly one handgun" with a given PPH and, with some exceptions, may not purchase "more than one handgun" in the State "within any 30-day period." *Id.* § 2C:58-3(i); N.J. Admin. Code § 13:54-1.9. Licensed retail dealers must complete a National Instant Criminal Background Check of the person seeking to purchase the handgun prior to the transaction and are permitted to "charge a fee" for same. N.J. Stat. Ann. § 2C:58-3(a)(3). An applicant must also produce an "acknowledgement" of their PPH prior to receipt of the handgun from a licensed retail dealer. *Id.* § 2C:58-3(h)(1).

## B. The Instant Challenge

On June 18, 2024, Plaintiffs filed a one-count complaint against the New Jersey Attorney General and the Pennsauken Township Police Chief, alleging that

6

New Jersey's PPH requirement, including the "one gun a month" provision, violates their right to keep and bear arms protected by the Second and Fourteenth Amendments to the United States Constitution. ECF 1 ("Compl.") ¶¶ 127-41, 147.

Benton alleges that he is "a law-abiding person, eligible to possess firearms under state and federal law," and is a member of CNJFO and GOA. ECF 1-3, Decl. of Christian Benton ("Benton Decl.") ¶ 2. He submitted two PPH applications on February 27, 2024, and one PPH application on June 10, 2024, to the Pennsauken Township Police Chief. *Id.* ¶¶ 4-5. Benton alleges that the Pennsauken Township Police had not granted his applications as of June 18, 2024. *Id.* ¶ 7. Accordingly, Benton claims he has "been entirely prohibited from acquiring handguns" since February 27, 2024. Compl. ¶ 112. He also alleges that New Jersey's "one gun a month" limitation infringes upon the Second Amendment because, "in a best-case scenario, one person is allowed to purchase up to 12 handguns per year." *Id.* ¶ 108. Benton claims he "would buy additional handguns without first seeking a 'permit,' and he would buy more than one handgun a month" but for the permitting requirement and the "one gun a month" limitation. *Id.* ¶ 115. As such, he alleges that the laws violate the Second Amendment because he "can neither 'keep' nor 'bear' arms." *Id.* ¶ 117. Nonetheless, Benton acknowledges that he has "applied for and received" PPHs in the past. *Id.* ¶¶ 106-07; Benton Decl. ¶¶ 2, 8. On July 9, 2024, the Pennsauken Township Police approved all three of Benton's PPH applications. *See*

ECF 19-2, Certification of Chief Philip P. Olivo of the Pennsauken Township Police Department ("Olivo Cert.") ¶ 16.

The Association Plaintiffs—CNJFO, a New Jersey nonprofit organization; GOA, a California nonprofit membership organization; and GOF, a Virginia nonprofit legal defense and educational foundation—allege that their members in New Jersey are "irreparably harmed" by the State's handgun permitting laws. Compl. ¶¶ 14-15; ECF 1-1, Decl. of John C. Pyle, CNJFO Vice President & Treasurer ("Pyle Decl.") ¶ 6; ECF 1-2, Decl. of Erich M. Pratt, GOA and GOF Senior Vice President ("Pratt Decl.") ¶¶ 4-5, 14-15.

While the Complaint criticizes the statutory framework governing the requirements to obtain both firearms purchaser identification cards and PPHs, *see* Compl. ¶¶ 64-74, 88-100, Plaintiffs seek declaratory and injunctive relief only as to those provisions of N.J. Stat. Ann. § 2C:58-3 governing the requirements for obtaining PPHs, including the "one gun a month" provision, *see* Compl. at 34-35.[2] The Attorney General now moves to dismiss Plaintiffs' challenge to the PPH requirement, the fees associated with it, and the alleged delays in issuing PPHs for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

_____

[2] Plaintiffs' counsel have confirmed that the Complaint seeks relief regarding N.J. Stat. Ann. § 2C:58-3 only as to PPHs. *See* Fleming Cert., Ex. A.

## <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) .

Rule 12(b)(1) motions can be facial or factual attacks. A facial Rule 12(b)(1) attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Const. Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A facial attack follows "the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)," where "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citations omitted). In assessing facial attacks, courts may "consider the allegations of the complaint and documents referenced therein," *Schering*, 678 F.3d at 243, as well as any matters of public record, including any "published reports of administrative bodies," *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). But courts may "eliminate from consideration any allegations that, 'because they are no more than conclusions, are not entitled to the presumption of truth.'"

9

*Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (quoting *Schering*, 678 F.3d at 243). In sum, "a plaintiff 'must allege facts that affirmatively and plausibly suggest that it has standing to sue.'" *Id.* (citation omitted). "Speculative or conjectural assertions are not sufficient." *Id.*

A Rule 12(b)(1) "factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case … do not support the asserted jurisdiction." *Const. Party*, 757 F.3d at 358. "So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking." *Id.* For factual attacks, "the District Court may look beyond the pleadings to ascertain the facts." *Id.* "The District Court [is] permitted to make factual findings, beyond the pleadings, that were decisive to determining jurisdiction." *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## ARGUMENT

To establish Article III standing, Plaintiffs "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'"

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Plaintiffs also must demonstrate "a causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action of the defendant." *Id.* (cleaned up). And "it must be 'likely,' as opposed to merely 'speculative,' that the [plaintiff's] injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press," "for each form of relief that they seek," and for each defendant against whom they seek it. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Because the Complaint fails to plausibly allege that Plaintiffs satisfy these threshold constitutional requirements for their challenges to the PPH statute and the delay they allegedly experienced in the approval of their PPH applications, those claims must be dismissed.

## I.    BENTON LACKS STANDING TO CHALLENGE THE PPH STATUTE OR PERMIT ISSUANCE DELAYS.

This Court should dismiss Benton's facial challenges to the PPH requirement and his as-applied challenge based on the delay he allegedly experienced in receiving his PPHs because he lacks standing. Benton "must show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023). But he cannot do so for two reasons. First, he has not alleged any

11

cognizable injury based on the existence of the PPH requirement set by statute—and any injury would be moot, since Benton has now received his PPHs. Second, even if Benton had a cognizable injury from the delay he allegedly experienced in receiving his PPHs (or from the fee associated with fingerprinting), those injuries are not fairly traceable to the Attorney General or redressable by any order against the Attorney General.

### A. Benton Lacks An Article III Injury To Challenge The PPH Statute.

Because Benton has not alleged an injury that would confer standing for his facial challenges to the PPH requirement, this Court should dismiss those claims for lack of jurisdiction.

1. Although Benton seeks an injunction from this Court invalidating the PPH requirement on the theory that the requirement infringes upon his Second Amendment right to keep and bear a handgun, he has not alleged that he has been or will be denied a PPH. Moreover, each of his three PPH applications have been granted. Benton's claim of injury therefore rests "upon an impermissible 'generalized grievance'" that is "inconsistent with 'the framework of Article III.'" *Lujan*, 504 U.S. at 575 (quoting *United States v. Richardson*, 418 U.S. 166, 171, 176-77 (1974)).

When an individual challenges a firearm-permitting statute, the "permit denial … [is the] Article III injury" that must be alleged. *Parker v. District of*

*Columbia*, 478 F.3d 370, 376 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008); *accord Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012) ("[R]evocation of Hightower's license constitutes an injury that suffices to satisfy the minimum requirements of Article III standing, regardless of whether Hightower can apply for another license."); *Dearth v. Holder*, 641 F.3d 499, 502 (D.C. Cir. 2011) (holding plaintiff had standing to challenge statute prohibiting persons who live outside the U.S. from purchasing a firearm because the government had "denied him the ability to purchase a firearm and he thereby suffers an ongoing injury"). Thus, to challenge a firearm permitting law, "a person must either have applied for *and been denied* a license or make a 'substantial showing' that his or her application 'would have been futile.'" *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020) (emphasis added) (quoting *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012)), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *see also, e.g.*, *Kendrick v. Bruck*, 586 F. Supp. 3d 300, 308-10 (D.N.J. 2022) (holding plaintiffs lacked standing to challenge firearm permitting requirements where they had not applied for or been denied a permit or pleaded that doing so would be futile). Anything short of this standard means the challenger has not demonstrated a cognizable injury.

Here, Benton has applied for and been *granted* his desired PPHs; he thus lacks standing to challenge the permitting requirement. *See, e.g.*, *Diamond S.J. Enter., Inc.*

13

*v. City of San Jose*, 100 F.4th 1059, 1065 (9th Cir. 2024) (holding plaintiff lacked standing to challenge licensing provision because it "obtained a public entertainment license before this lawsuit, so it cannot satisfy the injury-in-fact requirement unless it plans to apply for another license in the future"); *Libertarian Party*, 970 F.3d at 122 (holding district court properly dismissed for lack of injury in fact claims of plaintiff who had received a license).

The Fifth Circuit's decision in *Westfall v. Miller*, 77 F.3d 868 (5th Cir. 1996), is instructive. There, Westfall brought a federal constitutional challenge to a federal law requiring a certification from local law enforcement officials before transferring a machine gun. *Id.* at 869-73. The court held that Westfall lacked standing to challenge the certification requirement because he had not yet completed the certification process and had not been denied a certification. *Id.* at 872. The court "acknowledge[d] that this process may prove to be cumbersome, frustrating, and inconvenient for Westfall" but found "the completion of the statutory procedure necessary to establish Westfall's injury," since he "will not have an injury of which to complain if the chief of the Texas Department of Public Safety or a judge in his area provides the requested certification." *Id.*

These principles foreclose Benton's claim against the PPH requirement. Benton demands that this Court enjoin the PPH requirement because he "can neither 'keep' nor 'bear' arms that New Jersey prohibits him even from acquiring." Compl.

14

¶ 117. But the PPH requirement has not prevented him from acquiring any firearms. Rather, Benton "applied … for two [PPHs] on or about February 27, 2024," Benton Decl. ¶ 4, and "for a third [PPH] on June 10, 2024," *id.* ¶ 5. As of the date Benton filed his Complaint, he "ha[d] not had [his] permits issued," *id.* ¶ 7, and his permits have since been granted, *see* Olivo Cert. ¶ 16. Thus, any Article III injury— "nonexistent at the start of this action—ha[s] become moot" in any event. *Libertarian Party*, 970 F.3d at 122.

Benton also cannot "make a 'substantial showing' that his … application would have been futile.'" *Id.* at 116. He has not alleged that he will submit additional PPH applications in the future—or that any such applications would likely be denied. *See, e.g.*, *Diamond S.J. Enter., Inc.*, 100 F.4th at 1065 (noting that even a "vague allegation that [plaintiff] intends to apply for permits in the future" is insufficient to demonstrate injury in fact). In fact, Benton's declaration establishes that any future PPH applications would likely be approved, since he avers that before submitting the three applications, he had "applied for and received other [PPHs]." Benton Decl. ¶ 8. And since then, his three pending applications have been approved. *See* Olivo Cert. ¶ 16. Thus, Benton has not established that he has or likely will be unable to acquire firearms because he will not be granted approval to do so.[3]

---

[3] Judicially-noticeable data shed light on just how unlikely it is that Benton would be denied a permit in the future. Only 0.6% of Permits to Carry are denied in New Jersey following the Supreme Court's decision in *Bruen*. *See New Jersey Permit to*

Nor can Benton contend that the mere burden of the application *process* is sufficient for Article III injury. For one, he has alleged no facts to establish how this application process has caused him constitutionally-cognizable harm. Instead, he merely alleges that the PPH statute imposes process-based burdens on him that he should not have to bear in order to obtain a handgun. But courts have held that process-based requirements are insufficient to establish an Article III injury. *See, e.g., Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation— a procedural right *in vacuo*—is insufficient to create Article III standing."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("[Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation.").

Those precedents apply squarely to this case, where Benton wishes to be spared of the PPH process. But courts evaluating similar claims have rejected them on standing grounds. For example, in *Lane v. Holder*, 703 F.3d 668, 672-73 (4th Cir. 2012), the Fourth Circuit held that consumers challenging a federal statute requiring

---

*Carry Data*, N.J. Off. of Att'y Gen., https://tinyurl.com/538fdwrr (last visited Aug. 26, 2024) (reflecting 263 denials and 43,260 approvals post-*Bruen* through July 31, 2024). While this public data is for Permits to Carry rather than PPHs, the Permit to Carry incorporates the same disqualifiers that apply to PPHs, and in fact, has additional prerequisites. *Compare* N.J. Stat. Ann. § 2C:58-4(c), *with* N.J. Stat. Ann. § 2C:58-3(c). This Court may take judicial notice of this data because it is a matter of public record. *See, e.g., Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (instructing court may take judicial notice of "matters of public record" in deciding motion to dismiss).

16

a specific process for interstate firearm transfers lacked an Article III injury because the burden of "additional costs and logistical hurdles" did "not prevent[] [them] from obtaining the handguns they desire." Although the consumer plaintiffs argued that "the various transactions they must undertake to acquire a handgun" were "burdensome and expensive," the court held that was insufficient because they were "not prevented from obtaining the handguns they desire." *Id.* at 671-73. Rather, they were "burdened by additional costs and logistical hurdles," which the court viewed as "minor inconveniences … distinct from an absolute deprivation." *Id.* at 673. "To obtain a handgun from another state, the plaintiffs must pay a transfer fee and visit multiple FFLs, but the laws do not prevent them from exercising their Second Amendment right to bear arms." *Id.* That distinguished *Lane* from the courts that had "found standing for plaintiffs prevented outright from obtaining or possessing firearms." *Id.* (distinguishing case from *Dearth*).

And similarly, in *Libertarian Party of Erie Cnty. v. Cuomo*, 300 F. Supp. 3d 424, 434 (W.D.N.Y. 2018), *aff'd in part, appeal dismissed in part on other grounds*, 970 F.3d 106 (2d Cir. 2020), the district court rejected a plaintiff's claimed Article III injury based on the "cumbersome" process to add firearms to license, reasoning that "while the process of adding firearms onto [that plaintiff]'s license may be cumbersome, mere inconvenience does not establish standing." In sum, general allegations about the administrative burden of a permitting process cannot establish

17

a constitutional injury when those burdens do not *prevent* the plaintiff from exercising the constitutional right on which their claim is based.

The same is true here. While Benton makes a passing complaint about the "countless hours of time" required "simply to be ready to purchase multiple handguns per year," Benton Decl. ¶ 10, he has failed to allege how the PPH requirement *prevents* him from purchasing handguns and therefore deprives him of his Second Amendment right to keep and bear arms. Accordingly, Benton suffers no Article III injury.

2. Benton's challenge against the PPH requirement fails for a second reason: even if he could plead a cognizable injury, any injury would be *past* injury, which is insufficient to confer standing to seek prospective relief. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" when "unaccompanied by any continuing, present adverse effects." *Lutter v. JNESO*, 86 F.4th 111, 129 (3d Cir. 2023) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Instead, to seek prospective, or "forward-looking," relief, a plaintiff "must face 'a real and immediate threat of repeated injury.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *O'Shea*, 414 U.S. at 496); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if

the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" (citation omitted)).

Benton has failed to plausibly allege that he faces a "real and immediate threat of repeated injury" from any aspect of the PPH application process. *Murthy*, 144 S. Ct. at 1986. Benton merely alleges that he applied for three PPHs. But now that he has acquired those PPHs, he fails to allege that he faces a threat of harm from the statute going forward. *See supra* at 15-16. The same goes for Benton's allegation that he was required to "pay a fee for each permit." Benton Decl. ¶ 6; *see* N.J. Stat. Ann. § 2C:58-3(f) (requiring payment of $25 fee with each PPH application).[4] To the extent Benton challenges the fee requirement independently of his general challenge against the PPH statute, that is purely a backwards-looking injury insufficient to confer standing for the forward-looking relief that the Complaint seeks. Benton fails to allege that his past payment of such a fee continues to cause him harm or that he will imminently apply for additional PPHs in the future such that he faces a threat of harm.

Because Benton lacks any "real and immediate threat of repeated injury," that is another reason that his claims against the PPH statute—which seek only prospective relief—are barred by Article III.

---

[4] *See also* N.J. Admin. Code § 13:59-1.3(b) (requiring payment of $18 fee for the processing of all criminal history identification checks, including those unrelated to firearms).

19

**B. Benton's Alleged Injuries From The Township's Delay In Issuing His PPHs And From The Fingerprinting Fee Is Not Traceable To, Or Redressable By, The Attorney General.**

To the extent that Benton could seek any prospective relief for any delay in the Pennsauken Township Police Department's processing of his PPHs or for the fingerprinting fee set by a non-state entity, he lacks standing to bring any such claims against the Attorney General. In addition to showing a cognizable injury, plaintiffs must also establish that the cited injury was "caused by the defendant" and is "redressable by a court order" against that defendant. *United States v. Texas*, 599 U.S. at 676. That former requirement, known as traceability, requires the plaintiff to show "that the injury they will suffer or have suffered is 'fairly traceable' to the 'allegedly unlawful conduct' of which they complain." *California v. Texas*, 593 U.S. 659, 669 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). The latter, known as redressability, requires courts to evaluate "the relationship between 'the judicial relief requested' and the 'injury' suffered"—*i.e.*, if the former will remedy the latter. *Id.* at 671; *see also Lujan*, 504 U.S. at 561 (noting "it must be 'likely,' as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision"). Because the Attorney General did not process Benton's PPH applications and does not set the fingerprinting fee, Benton lacks standing to bring any such claims against the Attorney General.

1. Benton alleges that he applied for two PPHs on February 27, 2024. Benton Decl. ¶ 4. As of the date of his declaration, June 18, 2024, those PPH still had not been "issued by Chief Olivo, the person responsible for issuing [PPHs]," *id.* ¶ 7, but on July 9, 2024, they were approved, *see* Olivo Cert. ¶ 16. But even assuming Benton has been injured by this alleged delay and that he could seek any prospective relief for it, any injury is not traceable to the Attorney General or redressable by an order enjoining the Attorney General from delaying Benton's PPHs.

Benton alleges that "[a]s the Police Chief, *Chief Olivo* is the individual tasked with implementing, reviewing, and issuing the permits at issue here." Compl. ¶ 19 (emphasis added); *see also* N.J. Stat. Ann. § 2C:58-3(d), (h) (specifying that chief police officer of the municipality where the applicant resides processes PPH applications, unless the municipality has no chief police officer, in which case the Superintendent of State Police processes applications). Benton alleges that he submitted his PPH applications to Chief Olivo and, although the "law clearly requires the issuance of those permits within 30 days, [he] has yet to receive either permit." Compl. ¶ 13 (referencing N.J. Stat. Ann. § 2C:58-3(f) (requiring that after application is complete, in-state applicants receive a response within 30 days)). Benton alleges that "Chief Olivo's actions continue to depart from the statutory requirement of 30 days." *Id.* ¶ 107.

In Plaintiffs' own telling, the only defendant to whom Benton's alleged injuries are fairly traceable is Chief Olivo—not the Attorney General. An order against the Attorney General enjoining this delay would not redress any injury to Benton. *See Libertarian Party*, 970 F.3d at 122 (holding district court properly dismissed claims against State defendants where "the only defendants to whom their alleged injuries were fairly traceable were the judges who denied their respective applications," and "[n]one of the other defendants was alleged to have had any role in the licensing process or in the consideration of the applications"). Thus, Benton lacks standing to assert claims against the Attorney General based on any alleged delay in processing his PPH applications.

2. To the extent Benton alludes to a potential challenge to the $45.73 fee associated with fingerprinting required to obtain a PPH, Compl. ¶¶ 69, 92, 127, any alleged injury from this fee also is not traceable to the Attorney General, because neither the Attorney General nor the PPH statute sets the level of fee for fingerprinting.[5]

The PPH statute requires that "[t]he chief police officer or the superintendent shall obtain the fingerprints of the applicant." N.J. Stat. Ann. § 2C:58-3(e). It does set any given fee for such fingerprinting. Instead, "live scan fingerprinting services

---

[5] And, as Benton acknowledges, "subsequent applications need not resupply fingerprints if already available. N.J.S.A. § 2C:58-3(e)." Compl. ¶ 66 n.15.

[are] provided by IDEMIA, a private company under contract with the State of New Jersey." *See NJ Criminal History Records Information*, N.J. State Police, https://tinyurl.com/ydmnv7jz (last visited Aug. 26, 2024) (cited at Compl. ¶ 69 n.18). IDEMIA charges $45.73 for fingerprinting. *Id.* Nor does the Complaint allege that the Attorney General plays any role in determining state contractors.[6]

Accordingly, any injury from the amount of the fingerprinting fee is not traceable to the PPH statute or the Attorney General and would not be redressed by an order enjoining the Attorney General. *Compare Lutter*, 86 F.4th at 128 (holding that plaintiff's injury was not traceable to the New Jersey officials because she had failed to "identify any action taken by these state officials to enforce that statute"

---

[6] Nor can Plaintiffs demand that the Court order relief that would require the State to alter its contracts. That is because "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest,'" and that is so "regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). As a "general rule," even if a suit is nominally brought against a state official under *Ex Parte Young*, a state is the real party in interest if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 101 n.11. A demand that the State alter its contracts—especially since the third-party entity provides fingerprinting services for other state agencies—would be a suit against the State, as it would "compel [the Government] to act" and "interfere with the public administration." *Id.*; *see also, e.g.*, *Live Scan: Electronic Fingerprinting Process*, N.J. Dep't of Banking & Ins., https://tinyurl.com/54b9mt9n (last visited Aug. 26, 2024); *Announcements*, N.J. Bd. of Bar Exam'rs, https://tinyurl.com/3eyhp4ns (last visited Aug. 26, 2024); *Interstate Background Checks*, N.J. Dep't of Health & Human Servs., https://tinyurl.com/pbnxse46 (last visited Aug. 26, 2024).

and had "allege[d] that only Essex County and JNESO were responsible for the dues deductions"), *with Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 251 (S.D.N.Y. 2012) (holding $340 application fee imposed by the city was traceable to the state statute because the state statute specifically allowed the city to set the fee at the higher $340 rate of which the plaintiffs complain), *aff'd*, 723 F.3d 160 (2d Cir. 2013). Given that neither the PPH statute nor the Attorney General sets the fee charged by a third-party fingerprint provider, any claims based on the fingerprint fee must be dismissed for lack of jurisdiction.

## II. ASSOCIATION PLAINTIFFS ALSO LACK STANDING TO CHALLENGE THE PPH STATUTE OR PERMIT ISSUANCE DELAYS.

An association may have standing "as a representative of its members."[7] *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 974 F.3d 408, 421 (3d Cir. 2020) (citation omitted). "Associational standing requires an association to show that (1) its 'members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* (citation omitted).

---

[7] An organization "may have standing 'to sue on their own behalf for injuries they have sustained.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). But the Association Plaintiffs do not bring this suit on their own behalf; their claims are only on behalf of their "members and supporters." Compl. ¶ 119.

24

To satisfy the first requirement, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers*, 555 U.S. at 498. The organization must "name the individuals who were harmed by the challenged" regulation. *Id.*; *see FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 235 (1990) (finding association lacked standing where affidavit noted that "two licenses were revoked" but "fail[ed] to identify the licensees"); *N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (holding association lacked standing because association failed to identify a member who had standing).

The Association Plaintiffs lack standing to challenge the PPH statute or any delays in processing PPH applications because they have not plausibly alleged that any of their members have standing for such challenges in their own right.

### A. The Association Plaintiffs Lack An Article III Injury To Challenge The PPH Statute.

The Association Plaintiffs cannot establish that at least one of their members has suffered an injury in fact to confer associational standing to challenge the PPH statute. As a preliminary matter, CNJFO and GOA cannot rely on Benton to establish standing. The Association Plaintiffs allege that Benton is a member of CNJFO and GOA. *See, e.g.*, Compl. ¶ 13 (alleging that Benton "is a member of Gun Owners of America and the Coalition of New Jersey Firearm Owners"). But, as already explained, Benton lacks Article III standing to challenge the PPH statute. *See supra*

Section I.A. Thus, CNJFO and GOA cannot derive their associational standing from Benton.

The Association Plaintiffs do not allege that any identified members have standing in their own right. While the Association Plaintiffs allege that they have "members and supporters in New Jersey whose rights to keep and bear arms are infringed by New Jersey's requirement that, in order to even purchase a handgun, they must apply for, and pay for, a permit to purchase," Pratt Decl. ¶ 15; Pyle Decl. ¶ 13, they do not identify members who have been denied a PPH as a result of New Jersey's PPH statute. Nor do the Association Plaintiffs identify any members who plan to imminently apply for a PPH and therefore will be subject to the permit fees to confer standing to seek prospective relief against that aspect of the statute. Rather GOA and GOF allege only that they have "heard from members and supporters in New Jersey" who claim that "in order to even purchase a handgun, they must apply for, and pay for, a permit to purchase." Pratt Decl. ¶ 15. And CNJFO alleges only that many of its members "continuously apply for and acquire [PPHs], in order to be able to purchase handguns on an ongoing basis." Pyle Decl. ¶ 5. As discussed *supra* at 18-20, such general allegations fail to establish that the Association Plaintiffs' members "face 'a real and immediate threat of repeated injury'" to seek prospective relief. *Murthy*, 144 S. Ct. at 1986. These "vague allegation[s] that" its members

"intend[] to apply for permits in the future" are "too speculative to meet the standing requirements." *Diamond S.J. Enter., Inc.*, 100 F.4th at 1066.

Moreover, the Association Plaintiffs fail to establish associational standing for another reason: aside from Benton, none of their affidavits identify any alleged members by name or include allegations sufficient to identify who those members are. Courts have held that an association's affidavit is insufficient to establish associational standing unless it identifies an injured member by name. *See, e.g.*, *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 115 (2d Cir. 2024) ("*Summers*, and the precedent upon which it relies, support the view that an association cannot just describe the characteristics of specific members with cognizable injuries; it must identify at least one by name."); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J., sitting by designation) (holding advocacy group lacked standing to challenge handgun-purveyor regulation on behalf of its members where affidavit did not identify any members by name, reasoning that "an affidavit provided by an association to establish standing is insufficient unless it names an injured individual"); *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194-95 (9th Cir. 2013) (finding association lacked standing because it "does not identify any affected members by name nor has it submitted declarations by any of its members attesting to harm they have suffered or will suffer under [the challenged] program"); *Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320-21

(S.D.N.Y. 2020) ("Plaintiff is required to identify at least one affected member by name.").

The Association Plaintiffs have not identified at least one member by name who has or would suffer harm. The only CNJFO or GOA member identified by name in the Complaint is Benton, and for the reasons stated above, the Complaint fails to establish that Benton suffered any injury in fact. Because the Association Plaintiffs have failed to make any allegation that any identifiable member has suffered a cognizable injury, they cannot satisfy the requirements of associational standing.

### B. Any Claims By Association Plaintiffs Based On Permit Issuance Delays Or The Fingerprinting Fee Also Fail For Lack Of Traceability And Redressability.

The requirement that an association asserting standing on behalf of its members must establish that "its 'members would otherwise have standing to sue in their own right,'" *Free Speech Coal., Inc.*, 974 F.3d at 421, necessarily requires that any harm its members allegedly suffered is "fairly traceable to the challenged action of the defendant" and that it is "likely that a favorable judicial decision will prevent or redress the injury," *Summers*, 555 U.S. at 493. For the same reasons that Benton's claims based on alleged delays in issuing PPHs and the amount of fees for fingerprinting lack Article III standing, the same failure dooms the Association Plaintiffs' claims.

1. Regarding delays in issuing PPHs, none of the Association Plaintiffs has alleged any facts to establish that the delays experienced by their members were caused by the Attorney General or would be redressable by an order enjoining the Attorney General from delaying these PPHs. CNJFO alleges that "a number of CNJFO members" in New Jersey "have applied for [PPHs] and have not received them within the statutory thirty (30) days." Pyle Decl. ¶ 14. CNJFO further claims that one member had "been waiting over 42 days"; that another member "had waited at least 45 days"; that "other members have been waiting over *six months*"; and that another member "applied for three [PPHs] on or about April 21, 2024, but at the time of filing this Complaint, [that] member still has not received their approved [PPHs] yet." *Id.* ¶¶ 15-16 (emphasis in original). GOA and GOF allege that they have "heard from [their] members and supporters that several localities around New Jersey do not issue these permits in a timely fashion." Pratt Decl. ¶ 15. GOA further alleges that one of its members that "applied for two [PPHs] in February 2024 … has been waiting over four months, simply to purchase a handgun," *id.* ¶ 17, and that another of its members had to wait "over two (2) months" before one PPH was issued and "approximately six (6) months" before another PPH was issued, *id.* ¶ 19.

But none of the Association Plaintiffs has alleged that the Attorney General caused any such delays in the issuance of their members' PPHs. Thus, like Benton's claims, the Association Plaintiffs' claims against the Attorney General lack Article

III standing because they have failed to plead that their injuries are traceable to the Attorney General or redressable by any court order against the Attorney General.

2. None of the Association Plaintiffs make any specific allegations regarding any injury any of their members suffered as a result of the fee associated with obtaining fingerprinting for their PPHs. But even if they had, the Association Plaintiffs would lack a traceable or redressable injury to confer standing for such a challenge for the same reason that Benton lacks standing—any alleged injury from the $45.73 fee associated with fingerprinting required to obtain a PPH is not traceable to the Attorney General because the PPH statute does not set any fee for fingerprinting nor does the Attorney General enforce any fingerprinting fee. *See supra* at 22-24.

## CONCLUSION

This Court should dismiss Plaintiffs' challenges to the PPH requirement, the permitting and fingerprinting fees, and the delays in processing of their PPHs for lack of Article III standing.

Respectfully Submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    /s/ Liza B. Fleming
Liza B. Fleming
Deputy Attorney General

Date: August 26, 2024