Harfenist Kraut & Perlstein, LLP
Steven J. Harfenist, Esq. (Atty Id. No. 045671989)
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
*Attorney for Plaintiffs*

Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------X

CHRISTIAN BENTON, COALITION OF NEW JERSEY
FIREARM OWNERS, GUN OWNERS OF AMERICA, INC.,
and GUN OWNERS FOUNDATION,

|  |  |
|---|---|
| Plaintiffs, | **Civil Action No.:**<br>**24-CV-07098(CPO)(MJS)** |
| -against- | |
| MATTHEW PLATKIN, in his official capacity as<br>the Attorney General of New Jersey, and<br>CHIEF PHIL OLIVO, in his official capacity as<br>the Police Chief of Pennsauken Township, | Motion Date: October 7, 2024 |
| Defendants. | |

-------------------------------------------------------------X

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHIEF PHIL OLIVO'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT ................................................................................................................1

ARGUMENT .................................................................................................................2

     I.     Standard of Review.................................................................................2

     II.    Plaintiffs' Claims Are Not Moot.............................................................4

     III.   Plaintiffs Have Standing .......................................................................11

           A.    Plaintiffs Have Suffered an Injury-in-Fact ................................12
           B.    Plaintiffs' Injury Is Traceable to Olivo .....................................15
           C.    This Court Can Redress Plaintiffs' Injuries ...............................17

     IV.   Plaintiffs' Claims Are Ripe ...................................................................18

     V.    Plaintiffs Have Plainly Alleged a Second and Fourteenth Amendment Claim ....................................................................................................19

CONCLUSION.............................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**

*Aetna, Inc. v. Open MRI & Imaging of Rochelle Park, P.A.*
  2022 U.S. Dist. LEXIS 212398 (D.N.J. Nov. 23, 2022) ...................................... 20
*Almeida v. Conforti*
  2017 U.S. Dist. LEXIS 21817 (D.N.J. Feb. 14, 2017) ................................ *passim*
*Alpha Painting & Constr. Co. v. Del. River Port Auth.*
  822 Fed. App'x 61 (3d Cir. 2020) ........................................................................... 5
*Antonyuk v. Chiumento*
  89 F.4th 271(2d Cir. 2023) ............................................................................ 14, 15
*Antonyuk v. James*
  144 S. Ct. 2709 (2024) ......................................................................................... 14
*Burns v. Pa. Dep't of Corr.*
  544 F.3d 279 (3d Cir. 2008) .................................................................................. 5
*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013) .............................................................................................. 13
*Constitution Party v. Aichele*
  757 F.3d 347 (3d Cir. 2014) .............................................................................. 2, 3
*Cowles v. City of Elizabeth*
  2014 U.S. Dist. LEXIS 48943 (D.N.J. Apr. 9, 2014) ..................................... 21, 23
*CSX Transp., Inc. v. Norfolk S. Ry. Co.*
  2019 U.S. Dist. LEXIS 161339 (E.D. Va. Sept. 9, 2019) .................................... 20
*Daniels v. Williams*
  474 U.S. 327 (1986) ............................................................................................. 22
*Davis v. Magna Int'l of Am., Inc.*
  2021 U.S. Dist. LEXIS 62106 (E.D. Mich. Mar. 31, 2021) ................................ 20
*Del. Dep't of Nat. Res. & Env't Control v. EPA*
  746 Fed. App'x 131 (3d Cir. 2018) ........................................................................ 8
*District of Columbia v. Heller*
  554 U.S. 570 (2008) ............................................................................................. 17
*Doe v. Delie*
  257 F.3d 309 (3d Cir. 2001) .................................................................................. 5
*Ex Parte Young*
  209 U.S. 123 (1908) ............................................................................................. 17
*Finberg v. Sullivan*
  634 F.2d 50 (3d Cir. 1980) ............................................................................. 11, 17
*Gotha v. United States*
  115 F.3d 176 (3d Cir. 1997) .................................................................................. 7
*Gumbs v. International Harvester, Inc.*
  718 F.2d 88 (3d Cir. 1983) .................................................................................... 7
*Hartig Drug Co. v. Senju Pharm. Co.*
  836 F.3d 261 (3d Cir. 2016) .................................................................................. 7
*Hawley v. Salamon*
  2024 U.S. Dist. LEXIS 116772 (M.D. Pa. June 26, 2024) ..................................... 4

*Heinzl v. Cracker Barrel Old Country Stores, Inc.*
2016 U.S. Dist. LEXIS 58153 (W.D. Pa. Jan. 27, 2016)..........................13
*Jordan v. Fox, Rothschild, O'Brien & Frankel*
20 F.3d 1250 (3d Cir. 1994)...................................................................4
*Koons v. Platkin*
673 F. Supp. 3d 515 (D.N.J. 2023) ................................................13, 14
*Lara v. Comm'r Pa. State Police*
91 F.4th 122 (3d Cir. 2024) ....................................................................9
*Libertarian Party of Erie Cnty. v. Cuomo*
970 F.3d 106 (2d Cir. 2020)..................................................................14
*Manigault v. Astrue*
2012 U.S. Dist. LEXIS 194708 (N.D. Ga. June 15, 2012) ...................20
*McDonald v. City of Chicago*
561 U.S. 742 (2010)...............................................................................22
*Mortensen v. First Fed. Sav. & Loan Ass'n*
549 F.2d 884 (3d Cir. 1977)....................................................................3
*N.Y. State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022)............................................................................14, 17
*OpenPittsburgh.Org v. Voye*
563 F. Supp. 3d 399 (W.D. Pa. 2021) ...............................................17, 18
*Pennhurst State School and Hospital v. Halderman*
465 U.S. 89 (1984)................................................................................19
*Phillips v. County of Allegheny*
515 F.3d 224 .........................................................................................20
*Plains All Am. Pipeline L.P. v. Cook*
866 F.3d 534 ........................................................................................18
*Purpura v. Christie*
687 F. App'x 208 ..................................................................................13
*Rigby v. Jennings*
630 F. Supp. 3d 602 ...............................................................................4
*S.A. v. Davis*
2015 U.S. Dist. LEXIS 162629 (D.N.J. Dec. 4, 2015) ...........................6
*Shuttlesworth v. City of Birmingham*
394 U.S. 147 (1969)..............................................................................15
*Standard Furniture Mfg. Co. v. LF Prods. Pte. Ltd.*
2017 U.S. Dist. LEXIS 174293 (C.D. Cal. June 13, 2017) ..................20
*Staub* v. *Baxley*
355 U.S. 313 (1958)..............................................................................15
*Stepien v. Governor of N.J.*
2023 U.S. App. LEXIS 8197 (3d Cir. Apr. 6, 2023) .............................8
*United States v. Decastro*
682 F.3d 160 (2d Cir. 2012)............................................................14, 15
*United States v. Texas*
599 U.S. 670 (2023)..............................................................................11

**Statutes**

42 U.S.C. § 1983 ........................................................................................................ 5, 22

N.J.S.A. § 2C:58-3 ...................................................................................................... *passim*

**Rules**

Rule 12(b) ................................................................................................................... *passim*

**Constitutional Provisions**

Fourteenth Amendment ............................................................................................... *passim*

Second Amendment ..................................................................................................... *passim*

**Regulations**

N.J.A.C. § 13:54-1.9 ...................................................................................................... 1

## STATEMENT

This case involves a challenge to New Jersey's onerous, unconstitutional, and ahistorical Permit to Purchase a Handgun ("Purchase Permit")[1] scheme, along with the state's so-called "one gun a month" law which rations exercise of a constitutional right. The Purchase Permit regime, N.J.S.A. 2C:58-3a, requires, among other things, character references, a background check, payment of a $23 fee, payment of a $25 permit fee, payment of a fingerprinting fee, a N.J.S.A. 2C:58-3f statutory waiting period of up to 30 days to issue the permit, another required 2C:58-2a(5) statutory 7-day waiting period, followed by another NICS check (which often is not instant) at the point of sale and payment of another $16 fee.[2] New Jersey's "one gun a month" law arbitrarily limits would-be gun owners to acquisition of a single handgun per month. *See* N.J.S.A. § 2C:58-3(i) and N.J.A.C. § 13:54-1.9. Both of these schemes violate the Second Amendment, as does forcing Plaintiffs' to wait upwards of six months to obtain an unconstitutional Purchase Permit.

Plaintiffs initially filed their Complaint for Declaratory and Injunctive Relief on June 18, 2024. ECF #1. After seeking two extensions of time to respond to Plaintiffs' Complaint (ECF ##12, 14), Defendant Chief Phil Olivo ("Olivo") filed a

---

[1] For consistency, Plaintiffs adopt the usage of the term "Purchase Permits," as Chief Olivo uses that nomenclature in his Motion. *See* Olivo MTD at 4.

[2] The New Jersey Governor's 2025 budget proposes to double the PPH application fee from $25 to $50, and proposes to double the fee for a permit to carry from $200 to $400. *See* https://www.njspotlightnews.org/2024/05/nj-legal-gun-ownership-may-be-about-to-become-more-expensive.

Motion to Dismiss on August 26, 2024. ECF #19. Placing virtually all his eggs in one basket, Chief Olivo asserts that, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), all claims against him must be dismissed merely because he – subsequent to being sued for infringing Second Amendment rights – granted three long-delayed Purchase Permits to Plaintiff Benton. Memorandum of Law in Support of Defendant Chief Olivo's Motion to Dismiss ("Olivo MTD") at 7, 9, 14-17 (mootness), 17-22 (standing), 22-25 (ripeness), ECF #19-1. Olivo also challenges the sufficiency of Plaintiffs' allegations on Second Amendment (*id.* at 26-28) and Fourteenth Amendment (*id.* at 28-29) grounds. For the reasons below, none of these arguments holds water.[3]

## ARGUMENT

## I.    Standard of Review

In this Circuit, "[a] motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter. *Constitution Party v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citation omitted). However, a court must "first determine ... whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction

---

[3] Plaintiffs generally accept Olivo's recitation of facts in his section labeled "Background" except to add that, in addition to the 30-day issuance window for a Firearm Identification Card (Olivo MTD at 5), officials also have 30 days to issue a Permit to Purchase a Handgun. N.J.S.A. § 2C:58-3(f). Additionally, a Permit to Purchase a Handgun expires "90 days from the date of issuance" unless it is renewed "for good cause for an additional 90 days." *Id.*

determines how the pleading must be reviewed." *Id.* at 357-58 (citation omitted). Olivo claims to levy a "factual attack" on Plaintiffs' Complaint (Olivo MTD at 11), which "is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction." *Id.* at 358.

Yet it is entirely unclear whether Olivo has correctly identified his challenge as factual because, as the Third Circuit explains, "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted," and thus a "12(b)(1) factual evaluation may occur ... from the time the answer has been served until after the trial has been completed." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 & n.17 (3d Cir. 1977). Here, because Olivo "filed the attack before [he] filed any answer to the Complaint or otherwise presented competing facts," his "motion [is] therefore, by definition, a facial attack." *Constitution Party* at 358. Moreover, in considering a facial attack, a "court must consider the allegations of the complaint as true." *Mortensen* at 891. Indeed, "Olivo assumes the allegations of the Complaint to be true," and merely claims they are "incomplete" and require "supplement[ation]" regarding his subsequent actions. Olivo MTD at 2 n.1, 11. Since Olivo agrees that this Court should accept Plaintiffs' factual allegations as true (Olivo MTD at 10), it is not clear that his challenge is a "factual" one at all.

Next, "[u]nder Rule 12(b)(6) the court may dismiss a complaint if the complaint fails to state a claim upon which relief can be granted." *Hawley v. Salamon*, 2024 U.S. Dist. LEXIS 116772, at *2 (M.D. Pa. June 26, 2024). And "in considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), … the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted). In performing this analysis, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.* at 1261 (citations omitted). Finally, "[d]ismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Rigby v. Jennings*, 630 F. Supp. 3d 602, 611 (D. Del. 2022) (citations omitted).

## II.    Plaintiffs' Claims Are Not Moot

The fact that Chief Olivo belatedly has decided to grant Plaintiff Benton's three Purchase Permit applications after suit was filed does not mean that "the claims against him are now moot." *See* Olivo MTD at 7. To the contrary, Olivo's voluntary

decision to halt his unconstitutional and unlawful conduct has literally no bearing on the resolution of this case, for several reasons.

First, *even if* every one of their claims was remedied by Olivo's subsequent actions (and for the reasons below, none is), Plaintiffs' case is not moot against Olivo because Plaintiffs seek nominal damages (*see* Compl., Prayer for Relief ¶5; Olivo MTD at 7, admitting as much) based on a declaratory finding that their rights were violated.   It is black-letter law that a party's subsequent actions to halt its infringements do not moot the need for (or ability of the court to grant) such relief. *See Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001) ("where a plaintiff has requested several forms of relief and some of the requests become moot, the court must still consider the viability of the remaining requests," and "'[t]he availability of damages or other monetary relief almost always avoids mootness.' ... Therefore, we must review [the plaintiff's] nominal ... damages claim[]."); *Alpha Painting & Constr. Co. v. Del. River Port Auth.*, 822 Fed. App'x 61, 68 (3d Cir. 2020) ("In an action under § 1983, nominal damages serve to vindicate past violations of a plaintiff's rights," citing Fifth and Ninth Circuit cases which explained that "'[a] live claim for nominal damages will prevent dismissal for mootness,'" and "'[t]his court and others have consistently held that a claim for nominal damages avoids mootness.'"); *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 284 (3d Cir. 2008) ("On that basis alone, [defendant's] suggestion of mootness fails.  A completed [due process] violation, if

5

proven, would entitle Burns to at least an award of nominal damages."); *S.A. v. Davis*, 2015 U.S. Dist. LEXIS 162629, at \*19-20 (D.N.J. Dec. 4, 2015) ("at least one court in this circuit and several courts of appeals in other circuits have held that nominal damages alone are sufficient to prevent a case from becoming moot.").  As Olivo himself acknowledges, mootness requires that "it must be 'impossible for a court to grant any effectual relief'" (Olivo MTD at 15), and it is axiomatic that an award of nominal damages is such a form of relief.[4]

Second, Olivo's motion entirely fails to recognize that the Plaintiffs in this case include not only Benton, but also three nonprofit organizations which "represent the interests of thousands of their members and supporters who are being irreparably harmed by Defendants' laws, customs, policies, and practices."  Compl. ¶17.  Indeed, one of those persons is Marloy Gonzalez, a Pennsauken Township resident and a member of GOA and CNJFO who currently has been waiting far in excess of the 30-day time period to obtain a Purchase Permit from Chief Olivo (more than two months).  *See* Declaration in Opposition of Marloy Gonzalez dated September 19, 2024 at ¶6.  And unlike Benton, Gonzalez's permit has yet to be issued.  *Id.*  Likewise, Jossue Rivera-Santiago, another Pennsauken Township

---

[4] Olivo's citation to *Almeida v. Conforti*, 2017 U.S. Dist. LEXIS 21817 (D.N.J. Feb. 14, 2017), does not move the ball, because that court was discussing the lingering need for "injunctive and declaratory relief … 'directing … Chief Danielson to approve [his] application'" after the plaintiff's permit had been issued.  *Id.* at \*14-15.  And importantly, the complaint in that case did not include a request for nominal damages.  *See* 16-3411 (D.N.J. June 13, 2016), ECF #1, Prayer for Relief.

6

resident and a member of GOA and CNJFO, recently waited for more than four months (142 days) to obtain a Purchase Permit from Chief Olivo. *See* Declaration in Opposition of Jossue Rivera-Santiago dated September 20, 2024 at ¶5.[5] Both Rivera-Santiago and Gonzalez have experienced delays similar to Benton in the past. Gonzalez Dec. at ¶¶4-7; Rivera-Santiago Dec. at ¶¶4-5.

Olivo's decision to grant Benton's (and Rivera-Santiago's) permits does nothing to remedy the ongoing infringement of *Gonzalez's* right to keep and bear arms, to say nothing of the rights of any of Plaintiffs' *other* members and supporters. Indeed, Plaintiffs have additional members and supporters who similarly have been, are being, and will be irreparably harmed by Chief Olivo's pattern of conduct to delay issuance of Purchase Permits (Compl. Ex. A ¶¶6, 12; Compl. Ex. B ¶¶4-5, 14-15). Plaintiffs are not required to present every one of them to Defendants in order to pursue relief against Olivo's unconstitutional actions.

Third, Plaintiffs' claims against Olivo are not moot because they are capable of repetition (indeed, they have repeated for some time, *see* Compl. ¶¶106-07) yet

---

[5] In this Circuit, a Court has "wide discretion to admit or exclude evidence…." *Gumbs v. International Harvester, Inc.,* 718 F.2d 88, 97 (3d Cir. 1983). If Olivo's description of his 12(b)(1) attack as "factual" is correct, and because he has presented additional facts (his subsequent issuance of Benton's permits), then this Court should consider Plaintiffs' supplemental declarations which show continuing delays by Olivo. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In resolving a "factual attack," courts can "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). On the other hand, if Olivo's challenge is "facial," then his assertions of subsequent events should be rejected.

evading review.  This is a case "where (1) the challenged action is in its duration too short to be fully litigated … and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Stepien v. Governor of N.J.*, 2023 U.S. App. LEXIS 8197, at *3-4 (3d Cir. Apr. 6, 2023).  Moreover, "[b]y ['evading review,'] the Supreme Court has meant evading Supreme Court review." *Del. Dep't of Nat. Res. & Env't Control v. EPA*, 746 Fed. App'x 131, 134 (3d Cir. 2018) (citation omitted).  New Jersey's statutory requirement that Purchase Permits be issued within 30 days, N.J.S.A. § 2C:58-3(f), means that even a significant delay beyond that window is "too short to [] fully litigate[]" a challenge to the regime that allows such delays.  Moreover, as described, Benton has a "reasonable expectation that the same" conduct will happen to him again when seeking to purchase another handgun – namely, that another Purchase Permit will be required (indeed, state law mandates it), and that Olivo will delay the process far in excess of what even state law allows.  *See* Compl. ¶¶106-07 (evidencing a pattern and practice of delay, including "approximately 70 days" and "approximately four months").  Both Rivera-Santiago and Gonzalez also have imminent plans to purchase additional handguns (Gonzalez Dec. at A at ¶16; Rivera-Santiago Dec. at ¶7), and Olivo offers no assurance their Purchase Permits will not be delayed (as they always have been).

Olivo's reliance on *Almeida v. Conforti*, 2017 U.S. Dist. LEXIS 21817 (D.N.J. Feb. 14, 2017), is unhelpful.  That case involved speculation as to what standard

would be applied "two years hence" *if* the plaintiff chose to renew his carry permit. In stark contrast here, Plaintiffs have repeatedly applied for Purchase Permits only to be repeatedly delayed (Compl. Ex. C, ECF #1-3, ¶¶4, 5, 8; Rivera-Santiago Dec. at ¶¶4-5; Gonzalez Dec. at ¶¶4-5); Gonzalez is currently delayed (*id*. at ¶6); and all intend to apply for additional Purchase Permits in the near future (Compl. Ex. C ¶9; Rivera-Santiago Dec. at ¶7; Gonzalez Dec. at ¶13).  It is hardly a leap of logic to surmise that Olivo's long pattern of delay will repeat itself – déjà vu all over again – absent this Court's intervention.

Moreover, the Third Circuit holds that "[a] plaintiff need not show that future injury is certain, only that there is 'more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability.'" *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 138 (3d Cir. 2024) (citation omitted).  In *Lara*, Pennsylvania had "a recent history of declaring multiple emergencies" (*id.*), which had the effect of banning 18-20-year-olds from carrying handguns for self-defense in public during a state of emergency.  Thus, the Third Circuit concluded that it was "reasonably likely that other 18-to-21-year-olds [sic], including members of the organization[s] … will be banned from carrying guns in public yet again." *Id.*  The Court further explained that, "[b]ecause [declared] emergencies may only last for twenty-one days, absent intervention from the General Assembly, there is not enough time to litigate a claim,"

and therefore the plaintiffs' claim was not moot. *Id.* Here, Olivo is five-for-five when it comes to imposing delays in issuing Benton's Purchase Permits, has delayed Rivera-Santiago significantly as well, has delayed and is currently delaying Gonzalez, and there is little question this "demonstrated probability" makes it "reasonably likely" the same delays will occur again.

Fourth, Olivo's motion erroneously assumes that "Plaintiffs' claims as to Olivo [a]re predicated [*only*] upon alleged delays" and, because Benton's permits have been issued, "there is no longer any effective relief that could be granted with respect to Olivo" and thus that "there is no longer an actual controversy." Olivo MTD at 16-17. On the contrary, each of Plaintiffs' claims is properly brought against Olivo. For example, Plaintiffs alleged that Chief Olivo's peculiar local practices further reduce the state's "one handgun per month" rationing to "one handgun every month plus 1 day ... reduc[ing] the number of handguns Mr. Benton can purchase annually to 11," not 12. Compl. ¶109. Olivo thus is properly a target of Plaintiffs' handgun rationing challenge, and his motion to dismiss contains no discussion on this front vis-à-vis Olivo's mootness arguments. *See* Olivo MTD at 19 (arguing only of Plaintiffs' distinct claim, Compl. ¶113, that Olivo's *delays* "limit Benton's ability to continuously buy one gun per month" does not give rise to standing). And with respect to Plaintiffs' challenges both to the one-gun-a-month rationing and the permit to purchase handguns, it is Chief Olivo who is responsible

for both implementing and enforcing New Jersey's statutory scheme. Indeed, "[a]s the Chief of Police in his jurisdiction, [Olivo] exercises, delegates, or supervises all the powers and duties of New Jersey's firearm permitting scheme." Compl. ¶19. In other words, Olivo is authorized to "issu[e] the permits at issue here" (*id.*) and also arrest for noncompliance. *See* Olivo MTD at 4 (explaining that "an individual caught possessing a handgun in public without a Carry Permit ... faces up to 10 years in prison."); *see also Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980) ("a particular official [i]s properly named as a defendant if the official 'by virtue of his office has some connection with the enforcement of the act.'").

In sum, each of Plaintiffs' challenges is properly brought against Olivo in addition to Platkin, and Olivo's voluntary decision to grant Benton's three permits after suit was filed[6] does not moot Plaintiffs' claims.

## III.    Plaintiffs Have Standing

"To establish standing, a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023). Olivo contests Plaintiffs' standing on every ground, arguing (i) that no Plaintiff suffered an "injury in fact," (ii) that there is no connection between

---

[6] It seems likely that Olivo granted Benton's permits only as part of an effort to avoid liability here, as Benton (a named plaintiff) waited only 133 days to receive his permit, while Rivera-Santiago's (heretofore unnamed) overlapping delay was 142 days. Rivera-Santiago Declaration at ¶5.

Plaintiffs' injury and Olivo's conduct, and (iii) that there is no way to redress any harm. But like with mootness, Olivo's arguments once again boil down to his assertion that that "Benton's applications hav[e] been approved...." Olivo MTD at 19. For the reasons above and the additional reasons below, these arguments fall flat.

### A.    Plaintiffs Have Suffered an Injury-in-Fact

Olivo claims that, "[b]eyond [Benton's] February Applications and June Application," his delays in processing Purchase Permits – which stymie Plaintiffs from acquiring handguns and reduce the annual total number of handguns able to be purchased in a year – is merely a "hypothetical possibility of future waiting...." Olivo MTD at 20 (asserting that "Benton does not have any currently pending applications"). Yet as already noted, Benton has *repeatedly* been delayed in acquiring Purchase Permits – not only the three that gave rise to the Complaint here, but previously as well. *See* Compl. ¶106 ("approximately 70 days"); ¶107 ("approximately four months"); Compl. Ex. C ¶8. GOA and CNJFO member Rivera-Santiago likewise experienced a similar delay (*see* Rivera-Santiago Declaration at ¶¶4-5), while Gonzalez is currently experiencing such a delay (*see* Gonzalez Declaration at ¶6), a harm that is "presently or actually occurring" (Olivo MTD at 21). Further, Benton explains that, were it not for New Jersey's statutory rationing and Olivo's further delays *and* rationing, he "would purchase handguns at

a time of my choosing, and certainly more than one handgun per month."[7]  Compl.

Ex. C. ¶12.  This is language describing concrete but/for plans, not merely a

"hypothetical possibility."  *See* Olivo MTD at 2 n.1 (Olivo assuming that all of

Benton's allegations are "true"); at 10 ("A court considering a facial challenge

assumes that the allegations in the complaint are true").

What is more, by discussing only "hypothetical ... future" purchases

"[b]eyond [Benton's] February Applications and June Application," Olivo seems to

concede that Benton has standing with respect to *those* delays.  Olivo MTD at 19-

20.  And importantly, courts "'assess standing as of the time a suit is filed.'"  *Purpura*

*v. Christie*, 687 F. App'x 208 (3d Cir. 2017) (citing *Clapper v. Amnesty Int'l USA*,

568 U.S. 398 (2013).  *See also Heinzl v. Cracker Barrel Old Country Stores, Inc.*,

2016 U.S. Dist. LEXIS 58153, at *52-53 (W.D. Pa. Jan. 27, 2016) (citation omitted)

("'Article III standing is determined as of the time a complaint is filed. Standing

does not have to be maintained throughout all stages of the litigation.'").  Thus, even

if Plaintiffs did not have standing now (and they certainly do), Olivo apparently

concedes that Benton had standing when this case was filed.  That is all that is

needed.

---

[7] To the extent that Olivo believes Benton lacks standing because it might be a month or two before he applies for another Purchase Permit, another judge in this district recently rejected such an argument.  *Koons v. Platkin*, 673 F. Supp. 3d 515, 557 (D.N.J. 2023) (collecting cases) ("in less than two years, [plaintiff] would have to renew his Carry Permit .... In this vein, courts have found similar or longer timeframes to be imminent enough for standing purposes.").

Next, Olivo claims that Plaintiffs "must have applied for (and not been granted) a permit," or have been "'able and ready'" to apply.  Olivo MTD at 19 (*citing Koons v. Platkin*, 673 F. Supp. 3d 515, 556-57 (D.N.J. May 16, 2023). Apparently, Olivo contends that Benton – who applied for *and received* permits – cannot have standing to challenge the lengthy delays he suffered obtaining them. But this is a nonstarter because, as Olivo concedes, in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court *expressly invited* challenges to permitting schemes that impose "lengthy wait times."  Olivo MTD at 20 (citing *Bruen* at 38 n.9) .  Nor would such a standard make any logical sense, as a licensing official could delay issuance of a permit by *any* amount of time – four months, a year, or five years – and avoid challenge simply on the theory that the applicant should expect to receive a permit *someday*.

Olivo relies on the Second Circuit's statement in *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), that a challenger must first apply for a permit before filing suit.  But in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) (vacated and remanded on other grounds by *Antonyuk v. James*, 144 S. Ct. 2709 (2024)), the Second Circuit more recently explained that its decisions in *Libertarian Party* and *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012), in no way impose a requirement to apply for a license before "challenging a component of the application process itself [when] argu[ing] that a portion of the application

14

*process* is unconstitutional." *Id.* at 309.  As *Antonyuk* explained, the plaintiffs asserted their "injury flows from the application itself, not from [their] asserted ineligibility for a license.  *Id*. (emphasis original).  Likewise, here, Plaintiffs challenge the *process* of requiring a Permit to Purchase a handgun on its face, regardless of their eligibility to receive such a permit.  Compl. ¶¶13, 101 (plaintiffs are law-abiding and not prohibited from receiving a permit), ¶139 (plaintiffs challenge "both facially and as applied").  Olivo cites no authority for the notion that Plaintiffs must apply for a permit in order to challenge the constitutionality of the permitting process itself.[8, 9]

### B.    Plaintiffs' Injury Is Traceable to Olivo

Olivo next makes the curious claim that Plaintiffs have "failed to show a causal connection between" their injuries and Olivo, on the theory that he "approved" Benton's applications 35 and 8 days "after completion of the required

---

[8] To the extent Olivo claims that Plaintiffs lack standing because it is constitutional to infringe Second Amendment rights for longer than four months (Olivo MTD at 20), Plaintiffs address that argument *infra*, Sec. V.

[9] As the Supreme Court held in the First Amendment context, "'an ordinance [that] makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon … requiring a permit or license which may be granted or withheld in the discretion of [an] official – is an unconstitutional censorship or prior restraint….' *Staub* v. *Baxley*, 355 U.S. 313, 322.  And our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969); *but see Kendrick v. Bruck*, 586 F. Supp. 3d 300, 308 (D.N.J. 2022) (rejecting adoption of First Amendment standing case law); *but see also Bruen* at 70 (Second Amendment "is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'").

investigation," demurring that "certain procedural tasks … must be completed before Olivo can even consider an application."  Olivo MTD at 21 (citing N.J.S.A. § 2C:58-3).  This is quite the claim, given that this statute explicitly requires that Olivo "*shall grant* the permit or the identification card … *within 30 days* from the date *of receipt* of the completed application...."  N.J.S.A. § 2C:58-3(f) (emphasis added).    Contrary to Olivo's apparent belief, there is no "procedural tasks" exemption to that 30-day requirement.  Making matters worse for Olivo, by his own admission he approved two of Benton's applications "*35 days after* the requisite investigation" (Olivo MTD at 21, emphasis added), meaning he had absolutely no reason (not even an illegitimate "procedural tasks" excuse) for delaying issuance past 30 days.  Finally, by focusing entirely on the *statutory* requirements, Olivo ignores that Plaintiffs bring a *constitutional* claim – that Olivo's delays in approving their Purchase Permits violate their rights.  Compl. ¶¶6, 13, 104-07; Prayer for Relief ¶4.  There is certainly a causal connection between Olivo's failure to issue Purchase Permits for four months and Benton's inability to exercise what Olivo concedes to be his "right to acquire firearms" during that period.  Olivo MTD at 26.  Especially when Olivo specifically notes that noncompliance with the permitting requirement would net Benton "up to 10 years in prison...."  *Id*. at 4.  Olivo's traceability argument thus fails even to clear the starting gate.

16

### C.    This Court Can Redress Plaintiffs' Injuries

Olivo next claims a lack of redressability, largely mirroring his mootness argument, claiming that, since he has granted Benton's permits, there is no "'waiting' injury" to remedy.  Olivo MTD at 22.  But again, Benton is not the only plaintiff here, and other members and supporters of GOA, GOF, and CNJFO – like Rivera-Santiago and Gonzalez – are *presently* being harmed by Olivo's delays. What is more, a finding from this Court that New Jersey's Purchase Permit is unconstitutional certainly will remedy all delays caused by Olivo's permitting obstinacy, as obtaining a permit from Olivo no longer will be an impediment to handgun ownership.[10]  Finally, although Olivo claims that Plaintiffs' claims "can be pursued without him as a party," Olivo forgets that Plaintiffs are masters of their complaint, and it is entirely "irrelevant" whether a case in theory *could* proceed without a particular defendant,[11] so long as the defendant is a proper party, which

---

[10] It should be no surprise that injuries related to the exercise of Second Amendment rights are "legally and judicially cognizable."  *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (concluding that New York's proper cause "licensing regime violates the Constitution"); *District of Columbia v. Heller*, 554 U.S. 570 (2008) (holding that the District of Columbia's prohibition on possessing usable handguns in the home violates the Constitution); *see also Lara* at 140 (enjoining "Commissioner from arresting law-abiding 18-to-20-year-olds who openly carry firearms during a state of emergency declared by the Commonwealth").

[11] *See OpenPittsburgh.Org v. Voye*, 563 F. Supp. 3d 399, 413 (W.D. Pa. 2021) (rejecting the defendants having "resorted to pointing fingers as an argument that liability rests with another entity.  This argument is irrelevant … the Court is *not* charged with determining 'the most suitable defendants,' but rather … 'whether the complaint has named defendants who meet the prerequisites to adjudication in a federal court.'") (citing *Finberg v. Sullivan*, 634 F.2d 50, 53 (3d Cir. 1980 which, in turn, relied on *Ex Parte Young*, 209 U.S. 123, 157 (1908)).

Olivo clearly is.[12]

## IV.    Plaintiffs' Claims Are Ripe

Again focusing on his decision to grant Benton's applications only after being sued, Olivo next recasts his mootness argument as an argument that Plaintiffs' claims are not ripe,[13] theorizing they "rest[] on 'contingent future events that may not occur as anticipated....'"[14]   Olivo MTD at 24 (citation omitted).   But again, additional members and supporters of GOA, GOF, and CNJFO have been and are presently being harmed by Olivo's delays.   Compl. ¶¶14-16; Compl. Ex. B ¶¶4-5, 14-15; Rivera-Santiago Declaration at ¶5; Gonzalez Declaration at ¶¶6, 16.   Plus, Benton announced his desire and plan to purchase additional firearms, stating he "would buy more than one handgun a month." Compl. ¶¶115-16; Compl. Ex. C ¶¶9, 12.  Even so – at a minimum – Benton's requests for declaratory relief and nominal

---

[12] As noted above (Sec. II, *supra*), Olivo is a proper defendant, not only due to his delays in issuing permits, but also because he has significant connection to enforcement of the challenged statutes. *See OpenPittsburgh.Org* at 415 ("even where officials' duties are purely ministerial, they cannot evade liability when they are charged with enforcing an allegedly unconstitutional law.").

[13] Ripeness asks "'whether a party has brought an action prematurely … and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citation omitted); *Almeida v. Conforti*, 2017 U.S. Dist. LEXIS 21817, at *22 (D.N.J. Feb. 14, 2017) (case not ripe when plaintiff's application was denied and he filed – but then withdrew – an appeal to the Superior Court which "might [have] grant[ed] his application and resolve[d] the issue without expenditure of federal judicial resources").

[14] Olivo claims courts should not wade into "abstract disagreements over administrative policies" by "agencies."  Olivo MTD at 22-23.  But the questions posed here are hardly abstract.  May a state require a person to obtain a permit from government officials to acquire a firearm?  May a local licensing official delay issuance of such a permit for more than four months?  And may the government ration the exercise of an enumerated right?

damages are not "contingent" on Olivo delaying future permit applications, but instead "rest[] on" real delays that already have occurred. *See* Compl. ¶111 ("Benton is precluded from exercising his Second Amendment rights until the Chief acts...."); ¶112 (Benton "has been entirely prohibited from acquiring handguns during" the Chief's delay in issuing permits and lost the "opportunity to purchase at least four (4) handguns"). The harm from these delays is not speculative, based on a "hypothetical set of facts" (Olivo MTD at 25); rather, Olivo admits they occurred (*id*. at 9).[15]

## V. Plaintiffs Have Plainly Alleged a Second and Fourteenth Amendment Claim

Olivo next claims that Plaintiffs have failed to state a constitutional claim, on the theory that they will lose on the merits.[16] Olivo MTD at 26-28 (opining that "any delay … Benton experienced … does not rise to the type of 'lengthy' delay that *Bruen*" referenced). Such a quintessential merits argument has no place in a Rule 12(b)(6) motion, and should be rejected without further consideration. Indeed, Olivo admits (i) that Plaintiffs have a "right to acquire firearms," (ii) that Plaintiffs have

---

[15] To the extent Olivo may believe that Plaintiffs are asking the Court to order him to grant or deny permit applications within the statutory 30 days (*i.e.*, to conform his conduct to state law), that is not the case. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). Rather, Plaintiffs challenge the constitutionality of pistol purchase permitting on its face. Compl. ¶139. Plaintiffs also challenge Olivo's four-month delay in issuing such permits (*id.* ¶107), a claim premised on the Second Amendment, not state law.

[16] Olivo's arguments are specious even on the merits, because his only citations are to cases that predate *Bruen*. Olivo MTD at 27.

alleged "four month … delays in processing … applications" to acquire firearms, and (iii) that the Supreme Court has invited "constitutional challenges" to licensing schemes that impose "lengthy wait times in processing license applications...." Olivo MTD at 7, 26-28.[17]  No more is necessary to survive a motion to dismiss.

As courts within this Circuit have observed, a Rule 12(b)(6) motion is no place to dispute whether a plaintiff "will ultimately prevail on the merits," or to "[r]esolv[e] any dispute of fact" ultimately weighing on the merits.  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Aetna, Inc. v. Open MRI & Imaging of Rochelle Park, P.A.*, 2022 U.S. Dist. LEXIS 212398, at *16 (D.N.J. Nov. 23, 2022).  Indeed, it is black-letter law, within this Circuit and without, that merits argumentation in a motion to dismiss is both "inappropriate" and "premature."  *See, e.g.*, *Aetna*, 2022 U.S. Dist. LEXIS 212398,  at *16; *Standard Furniture Mfg. Co. v. LF Prods. Pte. Ltd.*, 2017 U.S. Dist. LEXIS 174293, at *13 (C.D. Cal. June 13, 2017); *Davis v. Magna Int'l of Am., Inc.*, 2021 U.S. Dist. LEXIS 62106, at *19 (E.D. Mich. Mar. 31, 2021); *see also Manigault v. Astrue*, 2012 U.S. Dist. LEXIS 194708, at *6 (N.D. Ga. June 15, 2012); *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 2019 U.S. Dist. LEXIS 161339, at *27 (E.D. Va. Sept. 9, 2019).  This Court should decline Olivo's invitation to depart from such an uncontroversial rule.

---

[17] Although Olivo does not address them here, Plaintiffs' other Second Amendment challenges (Purchase Permit and rationing) are also sufficiently pled.

Finally, Olivo cites *Cowles v. City of Elizabeth*, 2014 U.S. Dist. LEXIS 48943 (D.N.J. Apr. 9, 2014), a pre-*Bruen* case, asserting that Plaintiffs' "liberty and property rights under the Fourteenth Amendment are not violated by the 'mere negligence' of a public employee." Olivo MTD at 28. But unlike the pro-se plaintiff in *Cowles* who admitted to experiencing a "significant learning curve" in attempting to craft "legally coherent" arguments,[18] Plaintiffs *never brought* a standalone Fourteenth Amendment claim pursuant to the Due Process Clause, alleging a liberty or property interest in the issuance of a permit. *See Cowles* at *5 (emphasis added) ("alleging a violation … under the Second Amendment and the Fourteenth Amendment, *and also alleging a violation of Cowles's due process rights under the Fourteenth Amendment*"); Amended Complaint at PageID 228, *Cowles v. City of Elizabeth*, No. 13-cv-3222, (D.N.J. Jan. 6, 2014), ECF #39 (invoking "Plaintiff's right not to be deprived of liberty without due process of law").

To the extent that the court in *Cowles* discussed the "'mere' negligence of a public employee" (at *8), it was in the context of Cowles' standalone Due Process claim. In stark contrast, the constitutional basis for Plaintiffs' sole count is the Second Amendment operative against Defendants through the Fourteenth Amendment, which together *guarantee and incorporate* against New Jersey and its

---

[18] Amended Complaint at PageID 189, *Cowles v. City of Elizabeth*, No. 13-cv-3222 (D.N.J. Jan. 6, 2014), ECF #39.

officials the "right to keep and bear arms." *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010); *Bruen* at 70.[19]  Practicing by headnote, Olivo thus seeks dismissal of a claim which Plaintiffs did not bring.

Olivo's further reliance on *Cowles'* citation to *Daniels v. Williams*, 474 U.S. 327, 331 (1986), falls flat, because *Daniels* was cited only within the context of the Due Process Clause. *Cowles* at *8.  In fact, *Daniels*, a hornbook Due Process Clause case, made clear that 42 U.S.C. § 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right," and thus a plaintiff must only "prove a violation of the underlying constitutional right" to succeed under Section 1983. *Daniels* at 330.  Although the Court noted that, "depending on the right, merely negligent conduct may not be enough to state a claim" (*id.*), the Court was – again – referencing the Due Process Clause, not the Second Amendment.

Olivo cites no authority – and Plaintiffs are aware of none – which creates a "mere negligence" defense to Second Amendment violations.[20]  *See* U.S. Const.

---

[19] Moreover, the *McDonald* Court never reached a majority as to just *how* the Fourteenth Amendment applies and enforces the Second Amendment against the states, with Justice Thomas's concurrence in the judgment relying on the Fourteenth Amendment Privileges or Immunities Clause. *See McDonald* at 748, 806.  Olivo therefore has no precedent on which to rely to even suggest that Plaintiffs' invocation of the Second Amendment through the Fourteenth Amendment somehow involves the Due Process Clause, or any "liberty" or "property" interests protected thereunder.  Certainly, Plaintiffs never mentioned "due process" in their pleadings. *See generally* Compl.

[20] Olivo's argument also presupposes that Plaintiffs' only proper claim against Olivo is for delays, yet Plaintiffs already have explained that Olivo is an appropriate defendant for all their claims.

amend. II ("shall not be infringed"). If there were such a defense for state actors, as Olivo apparently believes, then that would mean the Second Amendment is subject to different standards depending on which sovereign (federal or state) infringes the right. *But see Bruen* at 37 ("individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government"); *id*. at 70 (Second Amendment "is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.").

## CONCLUSION

This Court should deny Olivo's motion to dismiss. At the outset, Olivo purports to levy a "factual" attack under Rule 12(b)(1), despite failing to have filed any responsive pleading first. Accepting the Complaint's allegations as true under Olivo's otherwise "facial" attack and his subsequent reliance on Rule 12(b)(6), Plaintiffs have more than established mere 'plausibility' to preclude dismissal. None of Olivo's arguments insulates him from liability.

First, Olivo is wrong to claim mootness based upon the voluntary, belated issuance of only *one* Plaintiff's Purchase Permits. Such reasoning flatly ignores (i) Plaintiffs' request for nominal damages which the Third Circuit holds to be a black-letter bar against dismissal, (ii) the *other* of Plaintiffs' members and supporters who

---

Compl. ¶19.

continue to suffer permitting delays – not to mention their desire to obtain future permits, (iii) Olivo's local delay tactics which contravene the statute, and (iv) Olivo's general enforcement authority over all provisions of law which Plaintiffs challenge.  How Olivo's whack-a-mole issuance of individual permits does not constitute 'capability of repetition, yet evasion of review,' he does not explain.

Second, Olivo is wrong on standing.  Disputing Plaintiffs' injury-in-fact, Olivo claims that future permitting delays are merely hypothetical, ignoring his past practice and the *current* delays which members of the organizational Plaintiffs suffer.  In any case, Olivo's focus on *future* delays apparently concedes that standing accrued as to *prior* delays, which were ongoing at the time Plaintiffs filed suit. Moreover, Plaintiffs need not submit to a permitting process merely to challenge its unconstitutionality – but even so, members of the organizational Plaintiffs already have, and they continue to do so.  Olivo's traceability and redressability arguments are similarly unavailing.  Indeed, Olivo admits that his permit issuance times have exceeded the statute, and a finding of unconstitutionality certainly would preclude Olivo from delaying (and thereby infringing) Plaintiffs' rights any further.

Third, Olivo is wrong on ripeness, once again focusing on Plaintiff Benton only, to the exclusion of the *other* of Plaintiffs' members and supporters, and Benton's own future intentions to acquire more handguns.

Fourth and finally, Olivo presents a *merits* argument to suggest that Plaintiffs

have failed to state a claim under Rule 12(b)(6). As courts across the country routinely hold, such merits argumentation is both "inappropriate" and "premature." Olivo's Fourteenth Amendment argument fares no better, as he seeks dismissal of a Due Process claim which Plaintiffs never made. Olivo's Motion to Dismiss should be denied.

Dated: Lake Success, New York
September 23, 2024

Respectfully submitted,
HARFENIST KRAUT & PERLSTEIN, LLP


By:    _Steven J. Harfenist_

Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: SHarfenist@hkplaw.com


Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
E: stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice