Harfenist Kraut & Perlstein, LLP
Steven J. Harfenist, Esq. (Atty Id. No. 045671989)
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
*Attorney for Plaintiffs*

Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------X
CHRISTIAN BENTON, COALITION OF NEW JERSEY
FIREARM OWNERS, GUN OWNERS OF AMERICA, INC.,
and GUN OWNERS FOUNDATION,

|  |  |
|---|---|
| Plaintiffs, | **Civil Action No.:**<br>**24-CV-07098(CPO)(MJS)** |
| -against- | |
| MATTHEW PLATKIN, in his official capacity as<br>the Attorney General of New Jersey, and<br>CHIEF PHIL OLIVO, in his official capacity as<br>the Police Chief of Pennsauken Township, | Motion Date: October 7, 2024 |
| Defendants. | |

------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
MATTHEW PLATKIN'S PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT .................................................................................................... 1

ARGUMENT ..................................................................................................... 4

    I.    Standard of Review ................................................................................... 4

    II.    Plaintiffs Have Standing ........................................................................... 5

        A. Benton Has Suffered an Injury-in-Fact ............................................. 5

            1.    Plaintiffs Need Not Be Denied a Permit to Challenge New Jersey's Permitting Regime ................................................................... 5

            2.    Platkin Ignores Plaintiffs' Ongoing and Future Injuries, Along with Their Request for Retrospective Relief ................................ 13

        B. Plaintiffs' Injuries Are Both Traceable to Defendants and Redressable by this Court ......................................................................... 15

    III.    The Associational Plaintiffs Have Representational Standing ............................ 17

CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

Am. Civ. Rts. Union v. Martinez-Rivera
    166 F. Supp. 3d 779 (W.D. Tex. 2015) .................................................................. 19

Antonyuk v. Chiumento
    89 F.4th 271 (2d Cir. 2023) ....................................................................... *passim*

Antonyuk v. James
    144 S. Ct. 2709 (2024) ............................................................................................ 8

Babbitt v. UFW Nat'l Union
    442 U.S. 289 (1979) ................................................................................................ 7

Brokamp v. James
    66 F.4th 374 (2d Cir. 2023) .................................................................................... 8

City of Lakewood v. Plain Dealer Publ'g Co.
    486 U.S. 750 (1988) .............................................................................................. 11

Constitution Party v. Aichele
    757 F.3d 347 (3d Cir. 2014) ................................................................................... 4

Dearth v. Holder
    641 F.3d 499 (D.C. Cir. 2011) ........................................................................... 7, 8

Desiderio v. National Ass'n of Securities Dealers, Inc.
    191 F.3d 198 (2d Cir. 1999) ................................................................................... 8

Diamond S.J. Enter., Inc. v. City of San Jose
    100 F.4th 1059 (9th Cir. 2024) ............................................................................ 11

Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.
    10 F.4th 192 (3d Cir. 2021) .................................................................................. 13

Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors
    522 F.3d 796 (7th Cir. 2008) ................................................................................ 19

District of Columbia v. Heller
    554 U.S. 570 (2008) ........................................................................................ 12, 13

Dougherty v. Drew Univ.
    534 F. Supp. 3d 363 (D.N.J. 2021) ...................................................................... 17

Ex Parte Young
    209 U.S. 123 (1908) .............................................................................................. 16

Finberg v. Sullivan
    634 F.2d 50 (3d Cir. 1980) ................................................................................... 16

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.
    528 U.S. 167 (2000) ................................................................................................ 9

Hightower v. City of Boston
    693 F.3d 61 (1st Cir. 2012) .................................................................................... 7

Jackson v. City & County of San Francisco
    576 U.S. 1013 (2015) ............................................................................................ 13

Kendrick v. Bruck
    586 F. Supp. 3d 300 (D.N.J. 2022) ........................................................................ 9

Lane v. Holder
    703 F.3d 668 (4th Cir. 2012) ............................................................................... 12

*Libertarian Party of Erie Cnty. v. Cuomo*
   970 F.3d 106 (2d Cir. 2020)..................................................................... 8
*Marszalek v. Kelly*
   2021 U.S. Dist. LEXIS 107613 (N.D. Ill. June 9, 2021) ........................ 19
*Mortensen v. First Fed. Sav. & Loan Ass'n*
   549 F.2d 884 (3d Cir. 1977)................................................................. 4, 5
*N.J. Physicians, Inc. v. President of the U.S.*
   653 F.3d 234 (3d Cir. 2011)..................................................................... 17
*N.Y. State Rifle & Pistol Ass'n v. Bruen*
   597 U.S. 1 (2022)..................................................................................... 13
*NAACP v. Alabama ex rel. Patterson*
   357 U.S. 449 (1958)................................................................................. 20
*Nat'l Council of La Raza v. Cegavske*
   800 F.3d 1032 (9th Cir. 2015) ............................................................... 19
*OpenPittsburgh.Org v. Voye*
   563 F. Supp. 3d 399 (W.D. Pa. 2021) ................................................... 15
*Pa. Prison Soc'y v. Cortes*
   508 F.3d 156 (3d Cir. 2007)................................................................... 19
*Parker v. District of Columbia*
   478 F.3d 370 (D.C. Cir. 2007)............................................................. 6, 7
*Speech First, Inc. v. Shrum*
   92 F.4th 947 (10th Cir. 2024) ............................................................... 19
*Spokeo, Inc. v. Robbins*
   578 U.S. 330 (2016)................................................................................. 12
*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*
   600 U.S. 181  (2023)................................................................................ 18
*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009)........................................................................... 12, 19
*Super Tire Eng'g Co. v. McCorkle*
   416 U.S. 115 (1974)................................................................................. 15
*Texas v. BATFE*
   2024 U.S. Dist. LEXIS 103441 (N.D. Tex. June 11, 2024) .................. 19
*United States v. Decastro*
   682 F.3d 160 (2d Cir. 2012)..................................................................... 8
*Westfall v. Miller*
   77 F.3d 868 (5th Cir. 1996) .................................................................... 11

**Statutes**
18 U.S.C. § 923...................................................................................................... 3
N.J.S.A. § 2C:58 ............................................................................................... 1, 6

**Other Authorities**
P. Chiaramonte, "'No one helped her': NJ woman murdered by ex while awaiting gun permit,"
   Fox News (June 10, 2015) ...................................................................... 12

**Rules**

Rule 12(b)(1) ............................................................................................. *passim*

**Regulations**

N.J.A.C. § 13:54-1.9 ....................................................................................... 1

**Constitutional Provisions**

Second Amendment .................................................................................. *passim*

## STATEMENT

This case involves a challenge to New Jersey's onerous, unconstitutional, and ahistorical Permit to Purchase a Handgun ("PPH")[1] scheme, along with the state's so-called "one gun a month" law which rations the exercise of a constitutional right. The PPH regime, N.J.S.A. § 2C:58-3(a), requires, among other things, character references, a background check, payment of a $23 fee, payment of a $25 permit fee, payment of a fingerprinting fee, a N.J.S.A. § 2C:58-3(f) statutory waiting period of up to 30 days to issue the permit, a subsequent 2C:58-2(a)(5) statutory 7-day waiting period, followed by another federal National Instant Criminal Background Check (which often is not instant) at the point of sale and payment of another $16 fee.[2] New Jersey's "one gun a month" law arbitrarily limits would-be gun owners to acquisition of a single handgun per month.  *See* N.J.S.A. § 2C:58-3(i) and N.J.A.C. § 13:54-1.9.  Both of these schemes violate the Second Amendment, as does forcing Plaintiffs to wait upwards of six months to obtain an unconstitutional Purchase Permit.

Plaintiffs initially filed their Complaint for Declaratory and Injunctive Relief on June 18, 2024.  ECF #1.  After seeking two extensions of time to respond (ECF

---

[1] For consistency, Plaintiffs adopt the usage of the acronym "PPH," consistent with Platkin's Motion.  *See* Platkin MTD at 1.

[2] The New Jersey Governor's 2025 budget proposes to double the PPH application fee from $25 to $50, and proposes to double the fee for a Permit to Carry from $200 to $400.  *See* https://www.njspotlightnews.org/2024/05/nj-legal-gun-ownership-may-be-about-to-become-more-expensive.

#5, #8), Defendant Attorney General Matthew Platkin ("Platkin") filed a Motion to Dismiss on August 26, 2024.  ECF #20.

Instead of seeing New Jersey's Second Amendment infringements for what they are, Platkin instead couches them as well-intentioned "measures [that] ensure that people who are prohibited by law from possessing handguns—such as minors, criminals, domestic abusers, and those with mental illness—are not able to do so." *See* Brief in Support of Defendant Attorney General of New Jersey's Motion to Dismiss Plaintiffs' Complaint in Part Pursuant to Fed. R. Civ. P. 12(b)(1), ECF #20-1 ("Platkin MTD") at 1.  But Platkin conspicuously ignores that the federal NICS system *already* informs a New Jersey firearms dealer when the prospective buyer is a prohibited person.[3]  Platkin also claims that New Jersey's "one gun a month" law, aside from rationing the exercise of constitutional rights by law-abiding persons, somehow assists in preventing "straw purchasers from buying multiple handguns with the intention of transferring them to persons who cannot legally obtain handguns...."  *Id.*  But like above, this claim ignores (i) that federal law *already* prohibits straw purchases (*see* 18 U.S.C. § 932), (ii) that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473 *already* requires every transferee to certify (under penalty of perjury) that he is the actual buyer,[4] and (iii)

---

[3] *See* https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics/about-nics.

[4] *See* https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-

that firearm dealers *already* must report multiple sales of handguns to the ATF on a specialized form.[5]  18 U.S.C. § 923(g).

But in addition to sugar-coating the facts, Platkin's Motion to Dismiss also fails on the law.[6]  First, Platkin claims that Plaintiff Benton ("Benton") lacks standing to challenge the PPH process and its attendant delays because he never was denied a PPH.  In any case, Platkin posits that, because PPHs are eventually granted, the process amounts to a "minor inconvenience" immune from review.  Next, Platkin reads Plaintiffs' pleadings as only seeking prospective relief for prior harms, before disputing that Benton's harms related to the PPH requirement can be traced to those who enforce it, or redressed by a court order enjoining it entirely.  Finally, Platkin seeks dismissal against the organizational Plaintiffs, claiming Benton's lack of standing undermines their own, while also purporting to require the organizations to *name* – rather than simply *identify* – their members to the government.  For the following reasons, Platkin's Partial Motion to Dismiss should be denied.

---

atf-form-53009/download.
[5] *See* https://www.atf.gov/firearms/docs/form/report-multiple-sale-or-other-disposition-pistols-and-revolvers-atf-form-33104/download.
[6] Plaintiffs accept Platkin's recitation of facts in his section labeled "Statement of Facts and Procedural History."

# ARGUMENT

## I.    Standard of Review

In this Circuit, "[a] motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitution Party v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citation omitted). However, a court must "first determine ... whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Id.* at 357-58 (citation omitted).

Platkin does not clarify whether he is levying either a "facial" or "factual" attack on Plaintiffs' Complaint. If Platkin were making a "factual attack," that would be "an argument that there is no subject matter jurisdiction because the facts of the case – and [] the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction." *Id.* at 358. But as the Third Circuit explains, "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted," and thus a "12(b)(1) factual evaluation may occur ... from the time the answer has been served until after the trial has been completed." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 & n.17 (3d Cir. 1977). It thus seems that Platkin cannot lodge a "factual attack," because he "filed the attack before [he] filed any answer to the Complaint or otherwise presented competing facts," so his "motion [is] therefore, by definition, a facial

4

attack." *Constitution Party* at 358. And because Platkin does not present any "competing facts" with which to attack Plaintiffs' Complaint, his 12(b)(1) challenge appears to be properly identified as a "facial attack." *See* Platkin MTD at 11 ("Because the Complaint fails to plausibly allege that Plaintiffs satisfy these threshold constitutional requirements for their challenges … those claims must be dismissed."). As Platkin's Motion should be construed as a facial attack, a "court must consider the allegations of the complaint as true." *Mortensen* at 891.

## II.    Plaintiffs Have Standing

Platkin argues that Plaintiffs' challenges to (i) New Jersey's requirement that a would-be gun owner first receive a Permit to Purchase a Handgun ("PPH") and (ii) the delays Plaintiffs experienced in obtaining permits from Defendant Olivo, leaving intact only (iii) Plaintiffs' challenge to New Jersey's handgun rationing scheme. Platkin MTD at 11. For the reasons below, Platkin's arguments are unpersuasive, all of Plaintiffs' claims survive the pleading stage, and Platkin's Motion to Dismiss must be denied.

### A.    Benton Has Suffered an Injury-in-Fact

#### 1. Plaintiffs Need Not Be Denied a Permit to Challenge New Jersey's Permitting Regime

Platkin asserts that, because neither Benton nor any other Plaintiff in this case has alleged to have been *denied* a New Jersey PPH, no one has suffered an "injury that would confer standing for … facial challenges to the PPH requirement...."

Platkin MTD at 12.  But this is like saying that the only motorists who can mount a Fourth Amendment challenge to warrantless police searches of their vehicles are those whose trunks are found to contain drugs.  On the contrary, just as it is the warrantless search itself that is the violation, here Benton's Second Amendment rights are infringed every time he is required to obtain a state permit merely to acquire a handgun – whether or not he successfully obtains one.

The cases Platkin claims support his position in reality do anything but.  For starters, each of Platkin's first three cases involved a finding that the plaintiffs *had* standing.  For example, *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), involved a "pre-enforcement challenge" and whether the "District's general threat to prosecute violations of its gun laws" was sufficiently imminent. *Id.* at 376. In contrast, Platkin has not denied here that Plaintiffs face a credible threat of enforcement if they attempt to acquire a handgun without first obtaining a PPH.  Nor can Platkin make such an argument, as a PPH is a mandatory prerequisite to obtaining a handgun in New Jersey – whether through commercial or private sale, both of which must take place at a licensed dealer – where evidence of a granted PPH must be presented to the dealer in order to proceed.  N.J.S.A. § 2C:58-3(a)(1); Platkin MTD at 6.  What is more, the D.C. Circuit noted in *Parker* that its prior case denying standing "was in tension" with the Supreme Court's holding that, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably

affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"  *Id.* (citing *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)).  That is precisely the situation here.  Nor does *Parker*'s finding of standing, on the theory that "Heller has applied for and been denied a registration certificate to own a handgun," preclude standing here.  *Parker* at 376.  Unlike here, the plaintiffs in *Parker* did not challenge *licensure itself*, but merely sought the ability to apply for and be granted a permit.  *Id.* at 373-74.  *Parker* does nothing to move the ball for Platkin.

*Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012), is in accord.  There, the First Circuit found standing when a plaintiff's concealed carry license was revoked.  *Id.* at 70.  But the Court never said the opposite – that the plaintiff would not have had standing had she challenged imposition of the licensure requirement itself.  To the contrary, *Hightower* undercuts Platkin's argument, explaining that "both the existence of various firearms licenses for which Hightower could apply and the fact that Hightower has not applied for such licenses do impact the arguments Hightower can properly raise...."  *Id.* at 71; *see also* at 73 (noting that Hightower *did not* bring a facial challenge to "[l]icensing of the carrying of concealed weapons....").

*Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011), is no different.  There, the D.C. Circuit again found standing, rejecting the government's argument that "it

[had] not affirmatively den[ied] Dearth's application to purchase a firearm...." *Id.* at 502. And whereas Dearth challenged a "set of laws that undoubtedly prohibit him from purchasing a firearm" (*id.* at 503), here Plaintiffs challenge a "set of laws that undoubtedly prohibit [them] from purchasing a firearm" without first obtaining a government permit.

Yet Platkin asserts that, "to challenge a firearm permitting law, 'a person must either have applied for and been denied,'" or else it must be "'futile'" to apply. Platkin MTD at 13 (citing *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020)); *see also* Olivo MTD at 20. But in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) (vacated and remanded on other grounds by *Antonyuk v. James*, 144 S. Ct. 2709 (2024)), the Second Circuit more recently explained that its decisions in *Libertarian Party* and *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012), in no way impose a requirement to apply for a license before "challenging a component of the application process itself [when] argu[ing] that a portion of the application process is unconstitutional." *Id.* at 309. Rather, as *Antonyuk* explained, the plaintiffs there asserted their "injury flows *from the application itself*, not from ... asserted ineligibility for a license." *Id.* (emphasis original); *see also* at 311 (citing "*Brokamp v. James*, 66 F.4th 374, 387-89 (2d Cir. 2023) (no application or futility required when mental health counselor challenged licensing requirement as violation of First Amendment right to give counsel); *Desiderio v. National Ass'n of Securities*

*Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999) (would-be securities dealers' challenge to mandatory arbitration consent as condition to licensure)"). As the Second Circuit summarized, "so long as the interest at stake is cognizable (as [the] interest in carrying a firearm surely is), a plaintiff suffers an injury-in-fact if the defendant's allegedly unlawful conduct impairs that interest, even if it does so by deterring the plaintiff due to his individual, but reasonable, sensibilities." *Antonyuk* at 308 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000), where the Supreme Court did not require swimming in hazardous waste water in order to establish standing). Like in *Antonyuk*, Plaintiffs here challenge the PPH requirement on its face, irrespective of their eligibility to receive such a permit, because the PPH permitting process "impairs" their "interest" in even acquiring a firearm. *Antonyuk* at 308; Compl. ¶¶13, 101 (plaintiffs are law-abiding and not prohibited from receiving a permit), ¶139 (plaintiffs challenge "both facially and as applied").

Seeking to bridge that gap, Platkin relies on *Kendrick v. Bruck*, 586 F. Supp. 3d 300 (D.N.J. 2022), where another judge in this district concluded that "[g]enerally, a plaintiff must submit to a government policy in order to have standing to challenge that policy." *Id.* at 308. But, for the reasons just stated, to the extent that Judge Kugler relied on multiple Second Circuit cases for that conclusion, the Second Circuit has since clarified that plaintiffs need not seek a permit in order to

challenge an unconstitutional aspect *of the licensing process itself*. *See Antonyuk* at 311 (allowing challenge to New York's "disclosure requirements without first making the required disclosures"). Moreover, as Platkin is forced to admit, here Benton *has applied* for a PPH – several of them, in fact. Platkin MTD at 13; Compl. ¶¶102-07. Thus, Benton *has* suffered the harm – infringement of his Second Amendment rights – forced to obtain a permit merely to be allowed to engage in a state and federally regulated purchase (complete with another background check and recordkeeping) of a handgun. In other words, Benton has done *precisely* the thing that Judge Kugler concluded he must do – "submit[] to the government policy...." *Kendrick* at 308.

Refusing to admit Plaintiffs' clear standing, Platkin pivots again, this time demurring that Benton has "been *granted* his desired PPHs...." Platkin MTD at 13 (emphasis original). 'Nothing to see here,' Platkin surmises. This Court should reject this sort of 'haha, gotcha' argument. On the one hand, Platkin argues that no one may challenge New Jersey's permitting scheme without first submitting to its Second Amendment infringements. Platkin MTD at 13-14. On the other hand, anyone who acquiesces to those infringements and receives a license has no standing *because he received* a permit and thus "the PPH requirement has not prevented him from acquiring any firearms." *Id.* at 15. Adopting this sort of 'heads I win, tails you lose' reasoning would allow a legislature to attach any sort of onerous requirement

10

to the exercise of an enumerated right, and be fully immunized from challenge. If New Jersey made a cavity search a requirement of a firearm permit, Platkin would argue that one must first submit to the "infringement" – and then, if granted a permit subsequent to the exam, still could not file suit. That is not the law.[7] Indeed, the Second Circuit explicitly rejected New York's argument "that the only way a plaintiff can challenge an application process is to do exactly what the plaintiff claims that he may not be required to do. Such a rule contravenes common sense. An applicant who challenges an application itself is not required to first comply with the objected-to component before bringing suit." *Antonyuk* at 311.

Finally, Platkin argues that Benton's only allegation of injury is the "process-based burdens" incumbent on seeking a PPH. Platkin MTD at 16-18. According to Platkin, these purportedly "general allegations about the administrative burden of a permitting process" have not "prevent[ed] [Benton] from exercising the

---

[7] To the extent Platkin relies on *Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1065 (9th Cir. 2024), what the Ninth Circuit actually held was that, when a plaintiff "alleges that the [challenged scheme] limit[s] First Amendment activity," it "may proceed 'without the necessity of first applying for, and being denied, a license.'" *Id.* at 1065 (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988)). Moreover, Platkin admits that the Ninth Circuit found that obtaining a license eliminates standing to challenge the licensing process "*unless [the plaintiff] plans to apply for another license in the future*...." Platkin MTD at 14 (emphasis added). And Benton plans precisely that. Compl. Ex. C. ¶9. Platkin's other case, *Westfall v. Miller*, 77 F.3d 868 (5th Cir. 1996), dealt with the purchaser of a National Firearms Act weapon who, after failing to obtain the required "certification" from local law enforcement, refused to seek certification from additional "proposed certifying officials includ[ing] the head of the state police and certain judges." *Id.* at 870. Thus, the Fifth Circuit concluded that this "inaction has caused any injury he has suffered." *Id.* at 872. Notably, unlike here, it does not appear that Westfall challenged the constitutionality of the certification *process itself*.

constitutional right on which [his] claim is based." *Id.* at 17-18. But what Platkin calls a "process-based burden," Plaintiffs allege to be an "infringement" of their enumerated right to keep and bear arms. Compl. ¶94. Nor do Plaintiffs allege some mere "procedural right ... accorded by Congress" (*Summers* at 497),[8] but instead assert that New Jersey's permitting scheme delays and outright prevents them from acquiring constitutionally protected arms. Compl. ¶¶3, 6. To be sure, New Jersey's infringements injure Plaintiffs in real and concrete ways – delaying and denying them the ability even to acquire and thus preventing them from exercising their right of armed self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008) ("the inherent right of self-defense has been central to the Second Amendment right"). But even if that very real risk of injury to life and limb[9] were not so, the Supreme Court has made clear that "that nominal damages are appropriate when a plaintiff's constitutional rights have been infringed but he cannot show further injury...."[10] *Spokeo* at 346.

---

[8] *See* Platkin MTD at 16 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), and *Spokeo, Inc. v. Robbins*, 578 U.S. 330 (2016)).

[9] *See* P. Chiaramonte, "'No one helped her': NJ woman murdered by ex while awaiting gun permit," Fox News (June 10, 2015), https://www.foxnews.com/us/no-one-helped-her-nj-woman-murdered-by-ex-while-awaiting-gun-permit. While Platkin speculates that New Jersey's placebo PPH process might somehow keep prohibited persons from obtaining firearms (Platkin MTD at 1), Carol Bowne's death provides definitive proof that the PPH process harms the law abiding. But regardless, the Second Amendment is the very *product* of an interest balancing by the people," and its "enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller* at 635-36.

[10] Finally, Platkin relies on *Lane v. Holder*, 703 F.3d 668, 672-73 (4th Cir. 2012), to claim that a plaintiff may only have standing to challenge "an absolute deprivation" of the Second Amendment, and not – in the government's opinion – just a "minor inconvenience[]." Platkin MTD at 17. But

### 2. Platkin Ignores Plaintiffs' Ongoing and Future Injuries, Along with Their Request for Retrospective Relief

Attempting to recast Benton's claim as "seek[ing] *only* prospective relief," Platkin purports that Benton's past injuries are insufficient to confer standing. Platkin MTD at 19 (emphasis added).  But a plaintiff is the "master of the complaint," *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 204 (3d Cir. 2021), and Platkin cannot ignore Plaintiffs' request for "[n]ominal damages" – *retrospective* relief for the permitting process, permitting delays, and handgun rationing harms Plaintiffs already have suffered.  Compl., Prayer for Relief ¶5; *see also* Compl. ¶107 ("the last time Benton applied for a PPH, it took approximately four months to issue.").

But Platkin also claims that Benton simply "fails to allege that he faces a threat of harm from the statute going forward" because "Benton merely alleges that he applied for three PPHs" and "now … he has acquired those PPHs."  Platkin MTD at 19.  This again misrepresents Plaintiffs' pleadings.  As Benton already explained, "[s]ince I have applied for these Permits to Purchase, *I desire and intend to buy more than one handgun*.  But, given the state of New Jersey's law, I have to stagger my

---

neither *Heller* nor *Bruen* support such a proposition, as indeed "nothing in … in *Heller* suggested that a law must rise to the level of the absolute prohibition at issue in that case to constitute a 'substantial burden' on the core of the Second Amendment right."  *Jackson v. City & County of San Francisco*, 576 U.S. 1013, 1016 (2015) (Thomas, J., dissenting from denial of certiorari); *see also N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022) (explaining *Heller*'s standard applies to mere "regulation[s]," not just absolute prohibitions).

purchases of handguns across multiple months so as not to violate state law." Compl. Ex. C ¶9 (emphasis added). Benton has made clear that he will continue applying for PPHs and, each time he does so, he must submit to an unconstitutional permitting process and its attendant delays. *See* Platkin MTD at 7 (admitting as much). Even now, Benton cannot exercise his right to acquire a handgun without first seeking governmental permission.

In addition, Benton is not the only one represented by the Plaintiffs in this case who has been harmed – GOA and CNJFO member Jossue Rivera-Santiago waited 142 days to have his most recent permit issued, and recently submitted two more PPH applications, with no anticipation of receiving them anytime soon. *See* Declaration in Opposition of Jossue Rivera-Santiago dated September 20, 2024 at ¶¶5, 6. Additionally, GOA and CNJFO member Marloy Gonzalez previously has acquired four PPHs from Chief Olivo, always being delayed well over 100 days. *See* Declaration in Opposition of Marloy Gonzalez dated September 19, 2024 at ¶¶4, 5. Both Rivera-Santiago and Gonzalez explain that they will purchase additional handguns in the near future, that they fully expect to be delayed past 30 days should they file applications for PPHs, that they seek to purchase more than one handgun per month, and that they wish to do so without the onerous, taxing, time consuming, rationed, and unconstitutional infringement of the PPH process. Rivera-Santiago Declaration at ¶¶7, 8; Gonzalez Declaration ¶¶12-14. At bottom, the Supreme Court

has explained that standing lies where "governmental action directly affect[s], and continu[es] to affect, the behavior of citizens in our society." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126 (1974). That is clearly the case here.[11]

### B.    Plaintiffs' Injuries Are Both Traceable to Defendants and Redressable by This Court

Platkin notes that "the Attorney General did not process Benton's PPH applications" and thus the "alleged [delay] injuries are fairly traceable [to] Chief Olivo...." Platkin MTD at 20, 22. Of course, Plaintiffs' Complaint never alleged that Platkin delayed their PPH applications, but rather is quite clear that Olivo is the one responsible for delaying issuance of their permits beyond the statutory limit. Compl. ¶¶104-07, 111-12; *see also* ¶19 ("Chief Olivo is the individual tasked with implementing, reviewing, and issuing the permits at issue here"). But Platkin's observation is neither here nor there. As a Pennsylvania district court recently explained, such "pointing fingers" amongst defendants is utterly "irrelevant," because "the Court is not charged with determining 'the most suitable defendants,' but rather … 'whether the complaint has named defendants who meet the prerequisites to adjudication in a federal court.'" *OpenPittsburgh.Org v. Voye*, 563

---

[11] Platkin also appears to make a separate mootness argument, comprised of a mere two sentences asserting that, because Benton's prior PPH permits were granted, his injury "has become moot." Platkin MTD at 15. Because Platkin devotes no serious argument on this point, and because Plaintiffs fully address the claim of mootness in their response to Olivo's motion to dismiss, they do not repeat their arguments here. *See* Opposition to Olivo MTD, Sec. II.

F. Supp. 3d 399, 413 (W.D. Pa. 2021) (citing *Finberg v. Sullivan*, 634 F.2d 50, 53 (3d Cir. 1980), which, in turn, relied on *Ex Parte Young*, 209 U.S. 123, 157 (1908)). And because Olivo clearly delayed issuance of Plaintiffs' permits – in fact, Olivo admits as much (Olivo MTD at 9) – Plaintiffs' "delay" challenge is properly brought against Olivo. *See also* Platkin MTD at 21 (seemingly admitting that the statute "requir[es] that after application is complete, in-state applicants [are to] receive a response within 30 days").

Yet inexplicably, after deducing the obvious point that Plaintiffs' "delay" challenge is "fairly traceable to ... Chief Olivo," Platkin *seeks wholesale dismissal* of Plaintiffs' claim. *Id.* at 30 ("dismiss Plaintiffs' challenges"), at 11 ("those claims should be dismissed"); *cf.* Olivo MTD at 30 (seek[ing] only dismissal of "the Complaint ... *as to him*"). The Court should reject Platkin's *non sequitur* request to dismiss entire claims from Plaintiffs' Complaint, especially because he seems to concede that Plaintiffs' "delay" challenge is properly brought against Olivo. [12]

Platkin next argues that, "[t]o the extent Benton alludes to a potential challenge" to fingerprinting fees, "this fee also is not traceable to the Attorney General...." Platkin MTD at 22. But Plaintiffs do not challenge any fingerprinting fees that are part of the process in PPH and FID issuance. Rather, Plaintiffs

---

[12] Moreover, to the extent that *the statute* delays firearm acquisition by up to 30 days, Plaintiffs certainly can challenge *that* delay vis-à-vis Platkin.

challenge the requirement to obtain a PPH and, if no PPH can be required, no fingerprints can be collected in the first place.  To the extent that Plaintiffs' Complaint referenced such fees, it was to provide background about the operation of New Jersey's statutory scheme.  Thus, since Plaintiffs bring no separate challenge on the issue of fingerprinting or fees, there is nothing for the Court to dismiss.

## III.    The Associational Plaintiffs Have Representational Standing

Platkin claims that, because Benton lacks standing, "CNJFO and GOA cannot rely on Benton to establish standing" in a representative capacity.  Platkin MTD at 26 ("CNJFO and GOA cannot derive their associational standing from Benton.").  But for the reasons above, Benton does have standing, and the organizations' representational standing flows from him.[13]  Platkin next claims that CNJFO and GOA "do not allege that any [other] identified members have standing in their own right."  Platkin MTD at 26 (arguing that Plaintiffs identified no members who "have been denied a PPH" or "plan to imminently apply for a PPH").  But this is clearly not so.  First, GOA and CNJFO identified (even if they did not name) several specific members who have experienced harms from the challenged statutes.  *See* Compl. ¶¶121-23; Compl. Ex. A ¶15 (42 days; 45 days; six months); Compl. Ex. B ¶19 (six

---

[13] *See, e.g.*, *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 372 (D.N.J. 2021) ("the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *see also N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 239 (3d Cir. 2011) ("Only one of the three named plaintiffs must establish standing in order for a court to consider the merits of their challenge....").

months).  Moreover, Benton alleged not only a pattern of current and past harms associated with seeking PPHs, but also noted that he "desire[s] and intend[s] to purchase more than one handgun" and that, were the challenged statutes struck down, he "would purchase handguns at a time of [his] choosing, and certainly more than one handgun per month."  Compl. Ex. C. ¶¶8-12.

Moreover, as the organizational Plaintiffs further explained, they have additional members and supporters who have been, are being, and will be harmed by the challenged statutes.  As noted above, Rivera-Santiago was forced to wait 142 days to obtain his most recent PPH.  Rivera-Santiago Declaration at ¶5.  In addition, Gonzalez currently has been waiting more than two months already for a PPH, far in excess of the statutory 30 days for issuance.  Gonzalez Declaration at ¶6.  Both are CNJFO and GOA members, both have experienced similar lengthy waits in the past, and both desire to purchase handguns in the near future, in excess of one-per-month and without the unconstitutional PPH permit and rationing scheme.  Rivera-Santiago Declaration at ¶¶2, 4-7; Gonzalez Declaration at ¶¶2, 4-5.  In other words, the organizational Plaintiffs have identified (and indeed named) more than one of their members harmed by the challenged statutes.  There is no legal authority for Platkin's apparent desire that they identify, much less *name*, every one of their members.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 201 (2023) ("Where, as here, an organization has identified

18

members and represents them in good faith, our cases do not require further scrutiny into how the organization operates."); *see also id.* (identifying only four members).

Indeed, Platkin repeatedly conflates *identifying* members with *naming* them. *See* Platkin MTD at 27 (emphases added) (faulting Plaintiffs for failing to "identify any alleged members *by name* or include allegations sufficient to identify who those members are"); *see also* at 28 ("The Association Plaintiffs have not identified at least one member *by name* who has or would suffer harm."). But courts are in widespread agreement that these *different* words have *different* meanings, and the doctrine of representational standing cannot possibly require members of advocacy organizations to 'unmask' themselves to the government. *See, e.g.*, *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 163 (3d Cir. 2007) (requiring "specific facts" but not names); *Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949-50 (10th Cir. 2024); *Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, at *10-11 (N.D. Ill. June 9, 2021); *Am. Civ. Rts. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 804 (W.D. Tex. 2015) ("A plaintiff is not required to name names in a complaint in order to properly allege injury in fact to its members."); *see also Texas v. BATFE*, 2024 U.S. Dist. LEXIS 103441, at *19 (N.D. Tex. June 11, 2024) ("Nor has the Supreme Court adopted a 'naming requirement' … in the wake of *Summers*."). To hold otherwise

– and require disclosure of member lists to the government – is a constitutional nonstarter. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is" an "effective … restraint on freedom of association.").

Finally, Platkin repeats his "delay" traceability and fingerprinting fee arguments, but in representational standing form. Platkin MTD at 28-30. Focusing on the fact that "none of the Association Plaintiffs has alleged that the Attorney General caused any such delays in the issuance of their members' PPHs," Platkin claims that "failure dooms the Association Plaintiffs' claims." *Id.* at 28-29. But again, while Plaintiffs may not have a claim for permitting delays (in excess of the statute) *against Platkin*, Olivo clearly is properly a defendant to answer for that infringement, while both Olivo and Platkin are proper defendants for Plaintiffs' challenge to the PPH process itself. The fact that some of Plaintiffs' allegations pertain to only Olivo and not Platkin does not "doom" that claim.[14]

## CONCLUSION

This Court should deny Platkin's Motion to Dismiss. Platkin first disputes Benton's injury-in-fact, insisting that he must be denied a PPH in order to have standing to challenge the requirement that he undergo the permitting process *itself*.

---

[14] With respect to Platkin's defense of the fingerprinting fees, Platkin MTD at 30, Plaintiffs do not challenge fingerprinting independent of the PPH process. *See* Sec. II(B), *supra*.

This *non sequitur* argument simply ignores that the process is the punishment, irrespective of ultimately obtaining government permission to exercise an enumerated right. Platkin's remaining arguments fail for a faulty premise – that one cannot have standing to challenge the violation of a constitutional right unless the right is destroyed completely. No Second Amendment case supports this novel proposition.

Platkin's attempt to edit Plaintiffs' prayer for relief is similarly unavailing. By insisting that Benton only seeks prospective relief, Platkin entirely ignores Plaintiffs' request for nominal damages, Benton's desire to seek additional permits, and the ongoing delays suffered by other of Plaintiffs' members supporters. Then, taking issue with traceability and redressability, Platkin points fingers at Olivo for Plaintiffs' permitting delays. And for his part, Olivo claims that Plaintiffs' PPH and rationing claims are properly against Platkin. Olivo MTD at 7. Yet both ignore the claims for which they seem to concede *they* are proper defendants.

Finally, Platkin is wrong on representational standing. Platkin links the organizational Plaintiffs' standing to Benton's, claiming Plaintiffs failed to name other members. But because Benton has standing, so too do the organizations, and the analysis ends there. Even so, the law does not require Plaintiffs to expose the identities of their members to the government simply to access the courts.

Nevertheless, Plaintiffs have identified multiple other members with specificity (some by name), going far beyond what is necessary.

Platkin's Partial Motion to Dismiss should be denied.

Dated: Lake Success, New York
September 23, 2024

Respectfully submitted,
HARFENIST KRAUT & PERLSTEIN, LLP


By:        *Steven J. Harfenist*

Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: SHarfenist@hkplaw.com


Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
E: stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice