# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTIAN BENTON, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, and CHIEF PHIL OLIVO, in his official capacity as the Police Chief of Pennsauken Township,<br><br>Defendants. | Hon. Karen M. Williams, U.S.D.J.<br>Hon. Matthew J. Skahill, U.S.M.J.<br><br>DOCKET NO. 1:24-cv-7098<br><br>Civil Action<br>(electronically filed)<br><br>Motion Date: October 21, 2024 |

## REPLY BRIEF IN SUPPORT OF DEFENDANT ATTORNEY GENERAL OF NEW JERSEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN PART PURSUANT TO FED. R. CIV. P. 12(b)(1)

Daniel M. Vannella
*Assistant Attorney General*

Liza B. Fleming
Justine M. Longa
Giancarlo Piccinini
*Deputy Attorneys General*

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
Phone: (609) 789-8684
Email: Liza.Fleming@njoag.gov
*Attorney for Defendant Attorney General of New Jersey*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...............................................................................................................2

   I.   BENTON LACKS STANDING. ....................................................................2

       A.  Benton Lacks An Article III Injury To Challenge The PPH Statute..........2

       B.  Benton's Alleged Injury From The Township's Delay In Issuing His PPH Is Not Traceable To, Or Redressable By, The Attorney General.......9

   II.  ASSOCIATION PLAINTIFFS LACK STANDING.....................................11

       A.  The Association Plaintiffs Lack An Article III Injury To Challenge The PPH Statute. ................................................................................11

       B.  Any Claims By The Association Plaintiffs Based On Permit Issuance Delays Also Fail For Lack Of Traceability And Redressability. .............15

CONCLUSION ............................................................................................15

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Antonyuk v. Chiumento*,
  89 F.4th 271 (2d Cir. 2023), *cert. granted, judgment vacated sub nom. Antonyuk v. James*, 144 S. Ct. 2709 (2024) .................................................................. 6, 7, 8

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*,
  713 F.3d 1187 (9th Cir. 2013) ......................................................................13

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)..........................................................................13

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016)............................................................................2

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011) ....................................................................3, 5

*Do No Harm v. Pfizer Inc.*,
  96 F.4th 106 (2d Cir. 2024) ..........................................................................12

*Downey v. Pa. Dep't of Corr.*,
  968 F.3d 299 (3d Cir. 2020)............................................................................9

*Draper v. Healey*,
  827 F.3d 1 (1st Cir. 2016).............................................................................12

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)..........................................................................13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).........................................................................................9

*Hightower v. City of Boston*,
  693 F.3d 61 (1st Cir. 2012)................................................................... 3, 5, 6

*Kendrick v. Bruck*,
  586 F. Supp. 3d 300 (D.N.J. 2022) ........................................................... 2, 7, 8

*Libertarian Party of Erie Cnty. v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ............................................. 2, 3, 10

*Lutter v. JNESO*,
   86 F.4th 111 (3d Cir. 2023) ................................................................................10

*Maryland Shall Issue, Inc. v. Hogan*,
   971 F.3d 199 (4th Cir. 2020) .................................................................................3

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ...............................................................................................9

*Parker v. District of Columbia*,
   478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*,
   554 U.S. 570 (2008) ...........................................................................................3, 4

*Seegars v. Gonzales*,
   396 F.3d 1248 (D.C. Cir. 2005) .............................................................................4

*Wood v. Milyard*,
   566 U.S. 463 (2012) .............................................................................................11

**Statutes**

N.J. Stat. Ann. § 2C:58-3(a)(2) ...............................................................................14

N.J. Stat. Ann. § 2C:58-3(i) ......................................................................................8

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................2

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition confirms that they lack Article III standing to bring suit against the Attorney General in their challenge to New Jersey's Permit to Purchase a Handgun (PPH) statute and to any delay beyond the 30-day statutory period that they allegedly experienced in receiving their PPHs.

As for Plaintiff Christian Benton, courts consistently hold that individuals like Benton who have not been denied a permit under the state's firearms licensing regime lack standing to challenge its legality. Moreover, any injury he alleges is only a past injury, which is insufficient to confer standing for prospective relief. And as Benton concedes, any alleged harm he suffered from the delay exceeding the 30-day statutory period in his PPHs being approved was neither caused, nor would be redressable, by an injunction against the Attorney General.

The Association Plaintiffs—Coalition of New Jersey Firearm Owners ("CNJFO"), Gun Owners of America, Inc. ("GOA"), and Gun Owners Foundation ("GOF")—also lack standing based on that of their members. CNJFO and GOA still cannot establish associational standing to challenge the PPH requirement for the same reason that Benton lacks standing. Nor have the Association Plaintiffs sufficiently identified other members who have been denied a PPH or who plan to imminently apply for a PPH. They thus lack standing to seek prospective relief against the statute. And like Benton, the Association Plaintiffs cannot establish that

any alleged injury suffered by their members from the delay in issuing their PPHs is traceable to the Attorney General, or would be redressable by an order enjoining the Attorney General from enforcing the statute.

Plaintiffs' challenges to the PPH statute and any delay they allegedly experienced beyond the 30-day statutory period should therefore be dismissed for lack of standing.

## ARGUMENT

**I.     BENTON LACKS STANDING.[1]**

**A. Benton Lacks An Article III Injury To Challenge The PPH Statute.**

Nothing in Benton's Opposition remedies his failure to allege an injury that would confer standing for his facial challenges to the PPH requirement.

**1.** It is blackletter law that to have standing to challenge a permitting scheme, a plaintiff must generally apply for, and be denied, a permit. *See* AG Br. 12-18 (citing, *e.g.*, *Kendrick v. Bruck*, 586 F. Supp. 3d 300, 308-10 (D.N.J. 2022); *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020),

---

[1] Plaintiffs wrongly argue (at 4-5) that this Court may not resolve a factual Rule 12(b)(1) attack before an answer is filed. But doing so is only inappropriate when "genuinely disputed facts" underlying "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016). Here, the only aspect of the State's motion that raises a factual attack is that Benton's alleged injury is moot, since Benton has been *granted* his PPHs—a fact not contained in the Complaint. That fact neither goes to the merits of Plaintiffs' claim nor is it disputed. The Court can therefore decide this aspect of the motion.

*abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012); *Dearth v. Holder*, 641 F.3d 499, 502 (D.C. Cir. 2011); *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008)). Benton cites no applicable precedent to dispute this rule's application.

First, relying on *Parker*, 478 F.3d 370, Benton argues that he has alleged a cognizable injury because he faces "a credible threat of enforcement if [he] attempt[s] to acquire a handgun without first obtaining a PPH." Opp. 6. But *Parker* does not support Benton's theory that the existence of penalties for acting without a permit is an end-run around the requirement that a plaintiff must apply for and be denied a permit in order to have standing to challenge a permitting scheme. Just the opposite. In *Parker*, the court held that parties who sought to challenge D.C.'s gun registration laws *could not* establish Article III standing based on the general fear that they would be prosecuted for owning firearms in contravention of a permitting scheme absent allegations that they had been "singled out or uniquely targeted by the D.C. government for prosecution." 478 F.3d at 375; *see also Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020) ("generalized fear and concern" that the state will enforce a gun permitting regime does not "establish a credible threat of prosecution" sufficient to confer standing); *Seegars v. Gonzales*,

3

396 F.3d 1248, 1255 (D.C. Cir. 2005) (state's general interest in enforcing its gun laws is insufficient to confer standing on plaintiffs).

That rule makes sense. After all, if the mere existence of penalties for obtaining a handgun without a PPH were sufficient to confer standing, then even the basic rule that one must apply for a permit to have standing would be effectively a dead letter. Here, Benton has not alleged that he has been "singled out or uniquely targeted" by the State for prosecution and instead bases his theory of standing on the general fear that he would be prosecuted for owning firearms in contravention of the PPH requirement—a theory that *Parker* squarely rejects.

Indeed, the *Parker* court held that one plaintiff had standing because he had "applied for and been *denied* a registration certificate to own a handgun." 478 F.3d at 376 (emphasis added). Benton's attempt to distinguish *Parker* by arguing that "plaintiffs in *Parker* did not challenge *licensure itself*, but merely sought the ability to apply for and be granted a permit," Opp. 6-7, is misplaced. The plaintiff in *Parker* did indeed challenge D.C.'s handgun registration requirement (which limited registration to retired D.C. police officers), 478 F.3d at 373, just as Benton challenges New Jersey's PPH requirement. But, unlike Benton, the plaintiff in *Parker* had suffered a cognizable injury because he had applied for and was denied a registration certificate, *id.* at 376—something Benton has not alleged here.

Second, Benton's attempted citations to *Dearth* and *Hightower* to argue that he need not be denied a permit to have standing to challenge a permitting scheme, Opp. 7-8, fares no better, as these cases only illustrate why Benton lacks standing. In *Dearth*, the plaintiff challenged a statute that prevented a person who lives outside the United States from lawfully purchasing a firearm in the United States. 641 F.3d at 500. Because Dearth lived outside the United States and therefore did not meet the statutory U.S. residence requirement, the statute prevented him from lawfully obtaining a firearm. *Id.* at 501. Since the statute "denied [Death] the ability to purchase a firearm," he "thereby suffer[ed] an ongoing injury." *Id.* at 502. It did not matter that the government "did not affirmatively deny Dearth's application to purchase a firearm" because the "regulatory scheme" itself "preclude[ed] Dearth from truthfully completing the application." *Id.* Here, by contrast, the PPH statute does *not* prevent Benton from acquiring a firearm. Unlike Dearth, Benton has alleged no facts to show that he cannot meet one of the requirements of the PPH statute. Rather, the opposite is true—Benton has met all of the PPH requirements and has been *granted* a PPH on more than one occasion. *See* ECF 19-2, Olivo Cert. ¶ 16.

And in *Hightower*, the plaintiff had standing to bring claims as to the license at issue because "the *revocation* of Hightower's [Class A] license constitutes an injury that suffices to satisfy the minimum requirements of Article III standing." 693 F.3d at 70 (emphasis added). No revocation is alleged in this case. And to illustrate

5

the State's point, the court held that "Hightower lack[ed] standing to raise a claim as to a Class B license" because "she ha[d] never applied for such a license, been denied one, or had such a license revoked." *Id.* Thus, *Hightower* applies the well-settled rule that to have standing to challenge a licensing requirement, the plaintiff must have been denied or had their license revoked. Benton has alleged no such injury.

Third, Benton wrongly relies on *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), *cert. granted, judgment vacated sub nom. Antonyuk v. James*, 144 S. Ct. 2709 (2024). There, plaintiff Sloane challenged not the entirety of the licensing regime but specific aspects of it—the requirement that he disclose information about his family, his associates, and his social media on his application. *Id.* at 308. The Second Circuit held that Sloane had standing to challenge these disclosure requirements because they "deterred [him] from seeking—and thereby prevented [him] from obtaining—a concealed carry license." *Id.* "Sloane's injury stem[med] from his own unwillingness to comply with the challenged requirements," which he claimed required him to give up certain other constitutional protections to apply for a firearms permit. *Id.* Because "the interest at stake [wa]s cognizable (as Sloane's interest in carrying a firearm surely is), a plaintiff suffers an injury-in-fact if the defendant's allegedly unlawful conduct impairs that interest." *Id.* Thus, "Sloane ha[d] standing with respect to the three disclosure requirements because defendants' enforcement

of the (allegedly unlawful) requirements impair[ed] Sloane's interest in obtaining a license by deterring him from applying." *Id.* at 308-09.

Whereas Sloane adduced specific allegations that the disclosure of private information such as social media accounts deterred him from pursuing a cognizable constitutional interest, Benton has not. Instead, Benton only generally claims that he has suffered a cognizable injury "irrespective of [his] eligibility to receive such a permit, because the PPH permitting process 'impairs' [his] 'interest' in even acquiring a firearm." Opp. 9. But Benton applied for and has been granted PPHs, allowing him to obtain the handguns he seeks. Olivo Cert. ¶ 16. Thus, unlike the plaintiff in *Antonyuk*, Benton has not alleged that the PPH process "deterred [him] from seeking—and thereby prevented from obtaining—a concealed carry license" such that he cannot "exercise his Second Amendment rights." 89 F.4th at 308. Instead, Benton merely alleges that the PPH statute imposes process-based burdens that he should not have to bear in order to obtain a handgun. But, as the Attorney General has already explained, *see* AG Br. 16, process-based requirements absent any attendant constitutionally-cognizable harm are insufficient to establish an Article III injury. Thus, nothing in *Antonyuk* disturbs the standing rule—as explained by this Court's holding in *Kendrick*, 586 F. Supp. 3d at 308-10, and numerous decisions of other courts—that to have standing to challenge firearm permitting requirements, plaintiffs must have applied for and been denied a permit or plead that

7

doing so would be futile. Both *Antonyuk* and *Kendrick* recognize that to have a cognizable injury, the plaintiff must show "an invasion of a legally protected interest"—the interest in carrying a handgun. *See Antonyuk*, 89 F.4th at 308; *Kendrick*, 586 F. Supp. 3d at 308-09. Benton has not met his burden to allege the impairment of a constitutionally-cognizable interest, by neither pleading that he was denied a PPH, nor that the PPH process has prevented him from acquiring a handgun.

**2.** But even if Benton could plead a cognizable injury, any injury would be *past* injury, which is insufficient to confer standing to seek prospective relief. *See* AG Br. 18-19. Benton's attempts to circumvent this rule fail.

First, Benton argues that he has stated a future harm because he "intend[s] to buy more than one handgun" but must "stagger [his] purchases of handguns across multiple months so as not to violate state law." Opp. 13-14. But the existence of the PPH requirement does not cause Benton to have to stagger his purchases of handguns across multiple months. That is, the requirement to obtain a PPH before purchasing a handgun does not prevent Benton from filing successive PPH applications and purchasing a new handgun each time one of his PPH applications is granted. Rather, his alleged injury from having to "stagger [his] purchases" relates only to his separate claim challenging the "one gun a month" provision, N.J. Stat. Ann. § 2C:58-3(i), limiting him to the purchase of one gun per month—which is not the subject of this Motion.

8

Second, Benton contends that his past injuries confer standing because he requests nominal damages as "*retrospective* relief." Opp. 13 (emphasis in original). But that argument fails for a number of reasons. For one, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Thus, Benton's alleged past injuries do not confer standing for him to seek injunctive and declaratory relief against the PPH statute—both of which require "a real and immediate threat of repeated injury." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). For another, Benton cannot base standing against the Attorney General on his request for nominal damages because "Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020). In any event, as discussed *supra* at 2-8, Benton has failed to allege even a past constitutionally-cognizable injury to confer standing to seek nominal damages—he has not alleged how the PPH process has prevented him from obtaining handguns and in fact has been granted the PPHs for which he applied. Thus, Benton's claims against the PPH statute are barred by Article III.

### B. Benton's Alleged Injury From The Township's Delay In Issuing His PPH Is Not Traceable To, Or Redressable By, The Attorney General.

Benton's Opposition also confirms that any challenge based on the delay in the Pennsauken Township Police Department's processing of his PPHs must be

dismissed as to the Attorney General. And because Benton now expressly concedes that he is *not* challenging the fingerprinting fee, this Court need not decide whether Article III jurisdiction exists to consider that aspect of the PPH requirement.

First, Benton admits that he "never alleged that [the Attorney General] delayed [his] PPH applications" and that instead, "Olivo is the one responsible for delaying issuance of [his] permits beyond the statutory limit," but still appears to claim that this challenge should not be dismissed. Opp. 15-16. Because Benton expressly concedes that the Attorney General played no part in delaying his PPH applications and instead alleges that Chief Olivo is responsible for the delay, the only defendant to whom Benton's alleged injuries are fairly traceable is Chief Olivo—not the Attorney General. *See Lutter v. JNESO*, 86 F.4th 111, 128 (3d Cir. 2023) (plaintiff's injury was not traceable to the New Jersey officials because she had failed to "identify any action taken by these state officials to enforce that statute" and had "allege[d] that only Essex County and JNESO were responsible for the dues deductions"). An order against the Attorney General enjoining this delay therefore would not redress Benton's alleged injury. *See Libertarian Party*, 970 F.3d at 122 (holding district court properly dismissed claims against State where "the only defendants to whom their alleged injuries were fairly traceable were the judges who denied their respective applications," since "[n]one of the other defendants was alleged to have had any role in the licensing process or in the consideration of the

10

applications"). Thus, Benton lacks standing to assert claims against the Attorney General based on any alleged delay in processing his PPH applications.

Second, Benton expressly concedes that he does "not challenge any fingerprinting fees that are part of the process in PPH and FID issuance" and that any reference to the fees in the Complaint "was to provide background about the operation of New Jersey's statutory scheme." *See* Opp. 16-17. Benton has therefore waived any challenge to the fingerprinting fees associated with obtaining a PPH. *See, e.g.*, *Wood v. Milyard*, 566 U.S. 463, 474 (2012).

## II. ASSOCIATION PLAINTIFFS LACK STANDING.

### A. The Association Plaintiffs Lack An Article III Injury To Challenge The PPH Statute.

The Association Plaintiffs claim that CNJFO and GOA have standing based on Benton's standing and that the Association Plaintiffs otherwise have standing based on that of its members identified in their Complaint and in declarations that were filed for the first time with their Opposition. Opp. 17-20. Both theories are meritless. As an initial matter, CNJFO and GOA cannot rely on Benton to establish standing because, as explained *supra* Section I.A, Benton lacks Article III standing to challenge the PPH statute, and so CNJFO and GOA cannot derive their associational standing from Benton.

Moreover, the Association Plaintiffs have not sufficiently identified specific members who have suffered cognizable harm from the PPH statute. Rather,

11

Association Plaintiffs point to portions of their Complaint and declarations providing that a "GOA member" and "a number of CNJFO members" have experienced delays in receiving their PPHs, Compl. ¶¶ 121-23; that CNJFO "members" had to wait to receive their PPHs, Pyle Decl. ¶ 15; and that "[a]nother GOA member" waited two months before their PPH was issued, Pratt Decl. ¶ 19. But none of these allegations identify members who have been *denied* a PPH or who plan to imminently apply for and expect to be denied a PPH to establish standing to challenge the PPH statute. Rather, these allegations merely relate to Plaintiffs' claim that their PPHs were delayed beyond the statutory period, which Plaintiffs concede is not traceable to the Attorney General. *See supra* Section I.B. And as discussed in the Attorney General's Opening Brief (at 26-27), Plaintiffs' other general allegations fail to establish that the Association Plaintiffs' members "face 'a real and immediate threat of repeated injury'" to seek prospective relief. *Murthy*, 144 S. Ct. at 1986 (citation omitted).

These allegations are also insufficient because referring to "members" generally without identifying them or naming them by name cannot support associational standing. *See, e.g.*, *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 115 (2d Cir. 2024) (noting "an association cannot just *describe* the characteristics of specific members with cognizable injuries; it must identify at least one by name."); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J., sitting by designation) (holding "an affidavit provided by an association to establish standing is insufficient unless it

12

names an injured individual"); *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194-95 (9th Cir. 2013) (finding association lacked standing because it "does not identify any affected members by name nor has it submitted declarations by any of its members attesting to harm they have suffered or will suffer under [the challenged] program").

Apparently recognizing this deficiency, GOA and CNJFO attempt to remedy it by submitting with their Opposition two declarations of GOA and CNJFO members, Marloy Gonzalez and Jossue Rivera-Santiago. *See* ECF 22-1, Gonzalez Decl.; ECF 22-2, Rivera-Santiago Decl. Gonzalez and Rivera-Santiago allege they have had to wait in excess of the statutory time period for Chief Olivo to issue their PPHs, Gonzalez Decl. ¶¶ 4-7; Rivera-Santiago Decl. ¶¶ 4-6, and that they will continue to apply for PPH permits in the future, Gonzalez Decl. ¶¶ 13-14; Rivera-Santiago Decl. ¶¶ 7-8. These additional declarations fail to establish standing for the Association Plaintiffs' challenge to the PPH statute. For one, it is well-settled that plaintiffs cannot amend their complaint through declarations filed in opposition to a motion to dismiss, so this Court should disregard them. *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (courts "do not consider after-the-fact allegations in determining the sufficiency of [a] complaint"); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

13

dismiss." (citation omitted)). For another, these allegations still fail to show that the Association Plaintiffs' members "face 'a real and immediate threat of repeated injury'" to seek prospective relief. *Murthy*, 144 S. Ct. at 1986. Neither Gonzalez nor Santiago-Rivera has alleged they have been denied or are likely to be denied a PPH—or that the PPH requirement has otherwise prevented them from exercising their right to keep and bear arms. Instead, they claim that previous PPH applications they submitted took longer than 30 days to be granted, and Gonzalez alleges that two of his PPH applications have been pending for more than 30 days. Gonzalez Decl. ¶¶ 4-6; Rivera-Santiago Decl. ¶¶ 4-6. But these allegations merely relate to Plaintiffs' claim that their PPHs were delayed beyond the statutory period, which Plaintiffs concede is not traceable to the Attorney General.[2] *See supra* Section I.B. In any event, Gonzalez's pending PPH applications have since been granted, *see* ECF 26-1, Olivo Cert. ¶¶ 5-6, thereby mooting any Article III injury. Thus, because the Association Plaintiffs have failed to allege that any identifiable member has suffered a cognizable injury, they cannot satisfy associational standing.[3]

---

[2] Gonzalez also alleges he wanted to start a YouTube channel where he would receive free handguns to review but cannot do so because New Jersey limits the number of handguns he can acquire. *See* Gonzalez Decl. ¶¶ 10-11. But New Jersey law requires that firearms transfers occur through a licensed dealer, N.J. Stat. Ann. § 2C:58-3(a)(2), thus precluding Gonzalez from having free handguns sent to him.

[3] Plaintiffs have made no argument in their Opposition to support GOF's standing. GOF therefore lacks standing to challenge the PPH statute for the reasons set forth in the Attorney General's Opening Brief. *See* AG Br. 25-28.

### B. Any Claims By The Association Plaintiffs Based On Permit Issuance Delays Also Fail For Lack Of Traceability And Redressability.

For the same reasons that Benton's claims based on alleged delays in issuing PPHs lack Article III standing, the same failure dooms the Association Plaintiffs' claims. *See supra* Section I.B. Plaintiffs concede (at 15-16) they have not alleged that the delays experienced by their members were caused by the Attorney General or would be redressable by an order enjoining the Attorney General from enforcing the statute. And they concede (at 16-17) they are not challenging any fingerprinting fees that are part of the permitting process. Accordingly, for the same reasons set forth above, the Association Plaintiffs lack Article III standing to bring these claims against the Attorney General because they have failed to plead that their injuries are traceable to, or redressable by any court order against, the Attorney General.

### CONCLUSION

This Court should dismiss Plaintiffs' challenges to the PPH requirement and the delays in processing of their PPHs for lack of Article III standing.

                                      MATTHEW J. PLATKIN
                                      ATTORNEY GENERAL OF NEW JERSEY

        By:    /s/ Liza B. Fleming
                   Liza B. Fleming (No. 441912023)
                   Deputy Attorney General

DATE: October 15, 2024