MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendants Attorney General of New Jersey and Superintendent of New Jersey State Police*

By:    Daniel M. Vannella (015922007)
       Assistant Attorney General
       (609) 376-2776
       Daniel.Vannella@law.njoag.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTIAN BENTON, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, and CHIEF PHIL OLIVO, in his official capacity as the Police Chief of Pennsauken Township,<br><br>        Defendants. | Hon. Karen M. Williams, U.S.D.J.<br>Hon. Matthew J. Skahill, U.S.M.J.<br><br><br>DOCKET NO. 1:24-cv-7098<br><br><br>Civil Action<br><br><br>**DECLARATION OF COUNSEL** |

The undersigned, DANIEL M. VANNELLA, of full age, hereby declares as follows:

1.    I am an Assistant Attorney General of the State of New Jersey, Department of Law and Public Safety, Division of Law. In that capacity, I represent Defendants and am responsible for the handling of their defense of this matter. As such, I am fully familiar with the facts stated in this Declaration.

2.    Attached to this Declaration are true and accurate copies of the following:

**Exhibit A** – Complaint filed in the matter of *Christian Benton, Coalition of New Jersey Firearm Owners, Gun Owners of America, Inc., and Gun Owners Foundation v. Matthew Platkin, in his official capacity as the Attorney General of New Jersey, and Chief Phil Olivo, in his official capacity as the Police Chief of Pennsauken Township,* Civil Action No. 1:24-cv-07098-KMW-MJS.

**Exhibit B** – Complaint filed in the matter of *Matthew Struck, Daniel Francisco, and Firearms Policy Coalition, Inc. v. Matthew J. Platkin, in his official capacity as Attorney General of New Jersey, and Patrick J. Callahan, in his official capacity as Superintendent of the New Jersey State Police*, Civil Action No. 3:24-cv-09479-MAS-JTQ.

3.      I declare that the foregoing statements made by me are true. I am aware

that if any of the foregoing statements made by me are willfully false, I am subject

to punishment.

/s/ Daniel M. Vannella
Daniel M. Vannella
Assistant Attorney General

DATED:      November 4, 2024

# EXHIBIT A

Harfenist Kraut & Perlstein, LLP
Steven J. Harfenist, Esq. (Atty Id. No. 045671989)
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------X
CHRISTIAN BENTON, COALITION OF NEW JERSEY
FIREARM OWNERS, GUN OWNERS OF AMERICA, INC.,
and GUN OWNERS FOUNDATION,

                                      Civil Action No.: 24-cv-7098

                          Plaintiffs,

      -against-

MATTHEW PLATKIN, in his official capacity as
the Attorney General of New Jersey, and
CHIEF PHIL OLIVO, in his official capacity as
the Police Chief of Pennsauken Township,

                          Defendants.

------------------------------------------------------------X

## LOCAL CIVIL RULE 10.1 STATEMENT

The street and post office address of each named party is:

     CHRISTIAN BENTON
     6546 Irving Avenue
     Pennsauken, NJ 08109

     COALITION OF NEW JERSEY FIREARM OWNERS
     P.O. Box 768
     Sewell, NJ 08080

     GUN OWNERS OF AMERICA, INC.
     8001 Forbes Place
     Springfield, VA 22151

GUN OWNERS FOUNDATION
8001 Forbes Place
Springfield, VA 22151

MATTHEW PLATKIN
Office of the Attorney General of New Jersey
25 Market Street
Trenton, New Jersey 08611

PHIL OLIVO
Pennsauken Township Police Department
2400 Bethel Avenue
Pennsauken, NJ 08109

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, CHRISTIAN BENTON, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION (collectively "Plaintiffs"), by and through undersigned counsel, and allege as follows:

1. This case involves a challenge to New Jersey's onerous, unconstitutional, and ahistorical firearm permitting regime, along with the state's so-called "one gun a month" law.

2. In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 33 (2022), the Supreme Court unambiguously held that the Second Amendment "guarantees … a right to 'bear' arms in public for self-defense." In *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), the Court explained that this right "is exercised individually and belongs to all Americans." Further, the Supreme Court acknowledged that "handguns are the most popular weapon chosen by Americans for self-defense...." *Id.* at 629.

3. Rejecting those principles, New Jersey does not allow a person to so much as purchase a firearm without receipt of a government permission slip. During the pendency of this lengthy and arduous permitting process, New Jerseyans naturally are unable to "keep … arms,"

2

even within a private domicile or on private property, much less to "bear … in public for self-defense" firearms they have not yet been able to acquire.

4.     New Jersey's scheme applies to both handguns and long guns (*i.e.*, rifles and shotguns), and requires New Jerseyans to obtain different permits depending on the desired type of firearm.

5.     For instance, to acquire a handgun,[1] a person must obtain a 2C:58-3a Permit to Purchase a Handgun requiring, among other things, character references, a background check, payment of a $23 fee, payment of a $25 permit fee, payment of a fee for being fingerprinted, a 2C:58-3f statutory waiting period of up to 30 days to complete the process, another required 2C:58-2a(5) statutory 7-day waiting period, followed by another NICS check (which is not instant) at the point of sale and payment of another $16 fee.[2]

6.     Making matters worse, some New Jersey authorities do not issue these permits timely, further delaying (and thereby infringing) the applicant's Second Amendment rights. And, once issued, this permit only allows the applicant to purchase a *single* handgun, and generally expires 90 days after issuance.

7.     To acquire a long gun,[3] a person must obtain a 2C:58-3b Firearms Purchaser Identification Card, which requires its own background check, payment of a fee, a waiting period, and fingerprinting. This permit allows the applicant to purchase long guns without numerical limitation, and is valid for ten years.

---

[1] Except via inheritance. N.J.S.A. § 2C:58-3(j).
[2] In the New Jersey Governor's 2025 budget, the Governor intends on doubling the fee to apply for a Permit to Purchase a Handgun from $25 currently to $50. And the Governor intends to double the fee for a permit to carry from $200 currently to $400. *See* https://www.njspotlightnews.org/2024/05/nj-legal-gun-ownership-may-be-about-to-become-more-expensive.
[3] Except via inheritance. N.J.S.A. § 2C:58-3(j).

8.      To then exercise the right to carry a firearm ("bear arms") in public, an applicant must obtain a 2C:58-4 Permit to Carry a Handgun, which requires submitting an application attested to by no fewer than four "reputable persons" who have known the applicant for at least three years, paying a $200 application fee, receiving in-person firearm instruction, being fingerprinted, submitting to an interview by government officials, providing any extra information the licensing official demands, providing a list of (registry of) all firearms that the applicant wishes to carry, and of course, submitting to another background check.

9.      In other words, to exercise an enumerated right that belongs to "all Americans"[4] and that the states "shall not … infringe[],"[5] New Jerseyans nevertheless must submit to no fewer than three separate background checks and obtain three separate government permission slips to "keep" and "bear" arms: permission to purchase, permission to take possession, and permission to carry.  New Jersey treats no other enumerated right in this manner.

10.     Unsurprisingly, New Jersey's patently unconstitutional scheme represents an outlier among the 50 states.  The vast majority of states do not criminalize the "keep[ing]" or "bear[ing]" of arms – or their requisite acquisition – as a general matter.  Only approximately seven states (plus the District of Columbia) require a permit to acquire any firearm[6] and approximately five states require some type of permit to acquire handguns specifically.[7]  Only four states impose

---

[4] *Heller*, 554 U.S. at 581.

[5] U.S. Const. amends. II, XIV.

[6] *See* Cal. Penal Code § 31615(a)(1); Conn. Gen. Stat. § 29-37a(c) (long guns), § 29-33(b) (handguns); D.C. Code § 7-2505.02(c); Haw. Rev. Stat. § 134-2(a); 430 Ill. Comp. Stat. 65/2(a)(1); Mass. Gen. Laws ch. 140, § 131A; N.J.S.A. § 2C:58-3(a)(1) (handguns), § 2C:58-3(b)(1) (long guns); Wash. Rev. Code § 9.41.1132(1).

[7] *See* Md. Code Ann., Pub. Safety § 5-117, § 5-117.1(c); Minn. Stat. § 624.7131; Neb. Rev. Stat. § 69-2403; N.Y. Penal Law § 400.00 *et seq.;* R.I. Gen. Laws § 11-47-35(b); *see also* 11 Del. Code § 1448D (effective November 2025).  *But see* Complaint, *Neuberger v. Del. Dep't of Safety & Homeland Sec.*, No. 1:24-cv-00590-MN (D. Del. May 16, 2024) (pending challenge to Delaware's new permit to purchase handguns).

4

numerical limits on how much a person may exercise this enumerated right.[8]  Meanwhile, 40 states

do not require any permit at all in order for law-abiding persons to bear arms in public.[9]

11.     And even if a person applies for and receives multiple Permits to Purchase a

Handgun at once, New Jersey limits the applicant to a single purchase of one handgun per month.

This "one gun a month" limitation on the exercise of an enumerated right lacks any historical

tradition, infringes on New Jerseyans' Second Amendment rights, and is an outlier among the

states, as in the vast majority of states, there is no quantity limit on how many firearms "the people"

can purchase per month.[10]

12.     In short, New Jersey's purchase permitting and purchase rationing schemes violate

the Second and Fourteenth Amendments to the United States Constitution.

## PARTIES

13.     Plaintiff Christian Benton ("Benton") is a natural person, a citizen of the United

States and of the State of New Jersey, and resides in Pennsauken Township, Camden County, New

Jersey.  He is a member of Gun Owners of America and the Coalition of New Jersey Firearm

Owners.  He is a law-abiding person, eligible to purchase and possess firearms under both state

and federal law.  Mr. Benton applied for two Permits to Purchase a Handgun on February 27, 2024,

and another Permit to Purchase on June 10, 2024 to Police Chief Phil Olivo.  But although New

---

[8] CA (unconstitutional as of Mar. 11, 2024, as discussed *infra*), MD, NJ, VA.  *See* Cal. Penal Code § 27535; Md. Code Ann., Pub. Safety § 5-128(b); N.J.S.A. § 2C:58-3(i); Va. Code § 18.2-308.2:2(R).

[9] *Constitutional Carry/Unrestricted/Permitless Carry*, USCCA, https://tinyurl.com/28axkx44 (last visited May 7, 2024) (reporting 29 "constitutional carry" states); *What Is Open Carry and Which States Allow It?*, USCCA (Nov. 14, 2023), https://tinyurl.com/376kf79h (reporting an additional 11 states where open carry is legal without a license).

[10] Nor is there any limit on how often one may speak, attend religious services, or invoke the right to counsel.  And the Second Amendment "is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'"  *Bruen*, 597 U.S. at 70.

Jersey law clearly requires the issuance of those permits within 30 days, Mr. Benton has yet to receive either permit and the time period in which to issue Mr. Benton's third permit has not yet expired.

14. Plaintiff Coalition of New Jersey Firearm Owners ("CNJFO") is a nonprofit organization incorporated in New Jersey with an address at P.O. Box 768, Sewell, NJ 08080. As a 501(c)(3) organization formed in 2015, CNJFO's mission is to support and defend the Second Amendment through education and awareness. CNJFO advocates for lawful, safe, and responsible firearms ownership in New Jersey, including by regular reporting on the State's firearms laws. CNJFO has many members who reside across New Jersey. Many of CNJFO's members maintain Firearms Purchaser Identification Cards to regularly purchase long guns, and continuously apply for and acquire Permits to Purchase a Handgun, in order to be able to purchase handguns on an ongoing basis. CNJFO's members also maintain New Jersey Permits to Carry a Handgun, and routinely carry handguns in public for self-defense. CNJFO's members desire to acquire handguns without the one-per-month limitation and without the necessity to acquire a Permit to Purchase a Handgun for every single handgun they purchase, as New Jersey law currently requires. *See* Declaration of John C. Pyle, Exhibit A.

15. Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including residents of the District of New Jersey, many of whom lawfully seek to purchase firearms and who carry handguns on a daily basis

6

for self-defense.  Many of these gun owners, like the individual Plaintiffs, will be and are being irreparably harmed by Defendants' unconstitutional infringements upon the Second Amendment's guarantees.  *See* Declaration of Erich Pratt, Exhibit B.

16.     Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms.  *See* Declaration of Erich Pratt, Exhibit B.

17.     Together, GOA and GOF represent the interests of thousands of their members and supporters who are being irreparably harmed by Defendants' laws, customs, policies, and practices. Moreover, (a) GOA and GOF's affected members and supporters each would have standing to sue individually to challenge Defendants' laws, customs, policies, and practices; (b) the interests GOA and GOF seek to protect are germane to their organizational purposes; and (c) neither the claims asserted, nor the relief requested, require the participation of individual members and supporters in this lawsuit.  Indeed, the members and supporters of GOA and GOF overwhelmingly support litigation such as this, which protects and defends their constitutional rights.

18.     Defendant Matthew Platkin is sued in his official capacity as the Attorney General of the State of New Jersey.  As Attorney General, Defendant Platkin is the "chief law enforcement officer of" New Jersey and is responsible for "general supervision of criminal justice."  N.J.S.A. § 52:17B-98.  Under New Jersey law, the Attorney General has "general responsibility for the department's operations" and is responsible for formulation and adoption of rules and regulations,

and "general administration of the department, its officers and employees." N.J.S.A. § 52:17B-4. Defendant Platkin may be served at the Office of the Attorney General of New Jersey, 25 Market Street, Trenton, New Jersey 08611.

19. Defendant Police Chief Phil Olivo is the Police Chief of Pennsauken Township, New Jersey, and is sued in his official capacity. As the Chief of Police in his jurisdiction, he exercises, delegates, or supervises all the powers and duties of New Jersey's firearm permitting scheme. N.J.S.A. § 2C:58-3(d). As the Police Chief, Chief Olivo is the individual tasked with implementing, reviewing, and issuing the permits at issue here. Chief Olivo may be served at Pennsauken Township Police Department, 2400 Bethel Avenue, Pennsauken, New Jersey 08109.

## JURISDICTION AND VENUE

20. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988.

21. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### A.    The Second Amendment

22. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

23. In its landmark 2008 decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court rejected the nearly uniform opinions reached by the courts of appeals, which for years had claimed that the Second Amendment protects only a communal right of a state to maintain an organized militia. *Id.* at 581. Setting the record straight, the *Heller* Court explained that the Second Amendment recognizes, enumerates, and guarantees to *individuals* the preexisting

8

right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *Id.* at 592.

24.     Then, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court explained that the Second Amendment is fully applicable to the states through operation of the Fourteenth Amendment. *Id.* at 791.

25.     Next, in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Court reaffirmed its conclusion in *Heller* that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," and that this "Second Amendment right is fully applicable to the States." *Id.* at 411, 416.

26.     And finally, as the Supreme Court recently explained in *Bruen*, the Second and Fourteenth Amendments together guarantee individual Americans not only the right to "keep" firearms in their homes, but also the right to "bear arms," meaning "to carry a handgun for self-defense outside the home" free from infringement by either federal or state governments. *Bruen*, 597 U.S. at 10.

27.     In addition to clearly recognizing the right of "'law-abiding, responsible citizens' … to public carry" (*Bruen*, 597 U.S. at 38 n.9), *Bruen* rejected outright the methodology previously used within this Circuit and other circuits to judge Second Amendment challenges. *See Range v. AG United States*, 69 F.4th 96, 101 (3d Cir. 2023) (acknowledging abrogation of Third Circuit precedent and the two-step interest-balancing methodology).

28.     Prior to *Bruen*, the Third Circuit had adopted a two-part test for analyzing Second Amendment cases: "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. ... If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster

under that standard, it is constitutional.  If it fails, it is invalid." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *see also Bruen*, 597 U.S. at 19 n.4 (collecting and rejecting cases using two-part test).

29.     Rejecting this widespread atextual, "judge-empowering," interest-balancing approach, *Bruen* directed (again) the federal courts to first principles:  to assess the text of the Second Amendment, as informed by the historical tradition. *Id.* at 19, 22.

30.     First, the Supreme Court "decline[d] to adopt that two-part approach" used in this and other circuits, reiterating that, "[i]n keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17.

31.     Second, the Supreme Court held that, "[t]o justify [a] regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17.

32.     Third, in reviewing the historical evidence, the *Bruen* Court cabined review of relevant history to a narrow time period, because "not all history is created equal," focusing on the period around the ratification of the Second Amendment, and *perhaps* the Fourteenth Amendment, but only to the extent that it "mere[ly] confirm[s]" a Founding-era tradition. *Bruen*, 597 U.S. at 37.  Indeed, the Court noted that "post-ratification" interpretations "cannot overcome or alter that text," and "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights

was adopted in 1791." *Id.* at 36, 37; *see also id.* at 37-60 (discussing the lack of relevant historical prohibitions on concealed carry in public).

33.     In other words, according to the Second Amendment's text, and as elucidated by the Court in *Bruen*, if a member of "the people" wishes to "keep" or "bear" a protected "arm," then the ability to do so "shall not be infringed." It does not matter at all how important, significant, compelling, or overriding the government's justification for or interest in infringing the right. Nor does it matter whether a government restriction "minimally" versus "severely" burdens (infringes) the Second Amendment. There are no relevant statistical studies to be consulted. There are no sociological arguments to be considered. The ubiquitous problems of crime or the density of population do not affect the equation. The only appropriate inquiry then, according to *Bruen*, is what the "public understanding of the right to keep and bear arms" was during the ratification of the Second Amendment in 1791. *Bruen*, 597 U.S. at 36-38.

34.     The Third Circuit held that 1791 *alone* is the proper time period of review. *See Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 134 (3d Cir. 2024) ("to maintain consistency in our interpretation of constitutional provisions, we hold that the Second Amendment should be understood according to its public meaning in 1791.").

35.     In addition to providing the proper time focus for historical review, the Supreme Court has also instructed as to the scope of the protected persons, arms, and activities covered by the Second Amendment.

36.     First, *Heller* explained that, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. *Heller* cited to *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990), which held that "'[T]he people' … refers to a class of persons

who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."  *See also Heller*, 554 U.S. at 581 (Second Amendment "is exercised individually and belongs to all Americans.").

37.     Second, *Heller* turned to the "substance of the right: 'to keep and bear Arms.'" *Heller*, 554 U.S. at 581.  The Court explained that "'[k]eep arms'" was simply a common way of referring to possessing arms, for militiamen *and everyone else*."  *Id.* at 583.  Next, the Court instructed that the "natural meaning" of "bear arms" was "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person."  *Id.* at 584.  And "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'"  *Id.*  *Bruen* was more explicit, explaining that the "definition of 'bear' naturally encompasses public carry."  *Bruen*, 597 U.S. at 32.

38.     Third, with respect to the term "arms," the Court explained that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  *Heller*, 554 U.S. at 582.  Indeed, the "arms" protected by the Second Amendment include "weapons of offence, or armour of defence.... '[A]rms' [are] 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"  *Id.* at 581.

39.     In other words, the "right to keep and bear arms" presumptively applies to "all Americans," presumptively extends to all "bearable arms," and presumptively covers to all locations.  Anything limiting that expansive reach must comport with a broad and enduring historical tradition – demonstrating that certain persons, arms, or activities were never considered within the scope of the Second Amendment in the first place.

40.     And, while *Bruen* did not purport to examine or overturn the licensing regimes of "shall issue" states, which were not before the Court, it did contrast "shall issue" regimes with the New York discretionary licensing scheme at issue in that case.

41.     But contrast is all the Court did.  Claiming in concurrence that "shall-issue licensing regimes are constitutionally permissible" without any historical analysis, Justices Kavanaugh and Roberts opined that licensing requirements were constitutional so long as they did not invite "open-ended discretion."  *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring).  But this concurrence, by definition, was not a holding adopted by the Court.

42.     Nevertheless, the *Bruen* Court also acknowledged the inherent risk in *all* permitting schemes, noting that, "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9.

43.     But that does not mean that licensing the acquisition or public carry of a firearm is permissible, as most states do not require licensing to acquire a firearm, and again, most states are constitutional carry or otherwise allow open carry without a Permit to Carry.

44.     Because New Jersey law operates to entirely deprive "the people" of their Second Amendment rights for extended periods of time, this Court's intervention is necessary to make it clear to New Jersey that it is not free to thumb its nose at the text of the Second Amendment or the opinions of the Supreme Court, and that the Second Amendment is neither a "constitutional orphan" nor a "second-class right."  *Silvester v. Becerra*, 583 U.S. 1139, 1149 (2018) (Thomas, J., dissenting from denial of certiorari); *McDonald*, 561 U.S. at 780; *Bruen*, 597 U.S. at 70.

13

45.     In *Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023), *reh'g en banc granted*, 2024 U.S. App. LEXIS 766 (4th Cir. Jan. 11, 2024), a Fourth Circuit panel held unconstitutional Maryland's law that prohibited individuals from purchasing firearms for at least 30 days.

46.     As the panel stated, "no matter what Plaintiffs do, there will be a period of up to thirty days where their ability to get a handgun is completely out of their control.  In other words, though it does not permanently bar Plaintiffs from owning handguns, the challenged law deprives them of that ability until their application is approved, no matter what they do."  *Md. Shall Issue*, 86 F.4th at 1043-44.

47.     Finding that "[n]othing in the Amendment's text or *Bruen* says that it protects only against laws that *permanently* deprive people of the ability to keep and bear arms" (*Md. Shall Issue*, 86 F.4th at 1045), and that "Maryland has identified no other traditions that could serve as a historical analogue, nor has it presented any other evidence that the challenged law 'is consistent with this Nation's historical tradition of firearm regulation'" (*id.* at 1048), the Fourth Circuit held the waiting period unconstitutional.

48.     As discussed below, the New Jersey statutes at issue deprive (infringe) "the People" of their right to keep and bear arms for far longer than the 30 days the Fourth Circuit panel found unconstitutional.  As such, they are unlawful without further analysis based on the analysis contained in *Bruen* footnote 9.

49.     Alternatively, because the challenged New Jersey statutes govern persons, arms, and activities that are presumptively protected by the Second Amendment's text, New Jersey must show a broad and enduring historical tradition (circa 1791), delaying Americans' right to acquire and carry a firearm for self-defense.  Because New Jersey cannot make such a showing, the

14

challenged restrictions violate the Second Amendment, which provides that the right to keep and bear arms "shall not be infringed."

## B.     New Jersey's Firearm Permitting Regime

50.     New Jersey has one of the most hostile and onerous firearms regulatory regimes in the nation criminalizing, absent possession of the appropriate permit, almost all conduct relating to the constitutionally enumerated right to keep and bear arms.

51.     Indeed, New Jersey has flipped *Bruen*'s Second Amendment textual presumption of constitutional protection on its head, establishing a contrary *presumption of guilt* – such that, when a person possesses a firearm for which a permit is required (as is the case in most contexts), that person is presumed *not* to have the permit – and to have committed a crime – *until they prove otherwise*.  N.J.S.A. § 2C:39-2(b).

52.     To effectuate this presumption of criminality on all peaceable gun owners, New Jersey generally prohibits the mere possession of rifles, shotguns, and handguns.  N.J.S.A. §§ 2C:39-5(c), (b).  While possession of rifles and shotguns is a "crime of the third degree" punishable by 3-5 years' imprisonment and a fine of up to $15,000, N.J.S.A. §§ 2C:43-6(a)(3), 2C:43-3(b)(1), possession of handguns is even more strictly prohibited as a "crime of the second degree," punishable by 5-10 years' imprisonment and a fine of up to $150,000.  N.J.S.A. §§ 2C:43-6(a)(2), 2C:43-3(a)(2).  This, for engaging in conduct that the Second Amendment protects.

53.     Separately, New Jersey criminalizes the *public* carry of handguns, whether openly or concealed, as a general rule.  N.J.S.A. § 2C:58-4.5.  Violations of this separate prohibition are "crimes of the fourth degree" punishable by up to 18 months' imprisonment and a fine of up to $10,000.  N.J.S.A. §§ 2C:43-6(a)(4), 2C:43-3(b)(2).

54.     To make matters worse, violators of New Jersey's ban on simple possession are subject to mandatory imprisonment under the Graves Act.  N.J.S.A. § 2C:43-6(c).

55.     Firearm acquisition fares no better, as New Jersey prohibits as a general rule the threshold acquiring of rifles, shotguns, and handguns to "keep."  N.J.S.A. §§ 2C:58-3(b)(1), (a)(1).

56.     Against this hardline backdrop, and indeed *in its benevolence*, New Jersey establishes several limited exceptions to its general rules against firearms.

57.     For example, New Jersey lifts its flat ban on possession for "a person keeping or carrying [a firearm] about the person's place of business, residence, premises or other land owned or possessed by the person," and for traveling between these locations, provided the firearm is unloaded and kept out of reach in transit.  N.J.S.A. §§ 2C:39-6(e), (g).[11]  In these locations, a government permit is not required in order to possess.  *See id.* ("Nothing in subsections b., c., and d. of N.J.S.2C:39-5 shall be construed to prevent....").

58.     Outside these exceptions, New Jersey decriminalizes rifle and shotgun possession if an individual possesses a Firearms Purchaser Identification Card ("FPIC"), N.J.S.A. § 2C:39-5(c)(1), and decriminalizes the possession of a concealed handgun if an individual possesses a Permit to Carry a Handgun ("PCH").  N.J.S.A. § 2C:39-5(b)(1).[12]

59.     Likewise, New Jersey lifts its general prohibition on the public, concealed carry of handguns upon issuance of a PCH, or in certain enumerated locational exceptions.  N.J.S.A. § 2C:58-4.5(a).  In contrast, open carry of handguns is permitted – with or without a permit – only

---

[11] This statute also contains an exception so that people may hunt and target shoot.  N.J.S.A. §§ 2C:39-6(f)(1), (f)(2).

[12] However, this purported decriminalization is narrow, as possession remains subject to N.J.S.A. § 2C:39-5(c)(2) (no loaded long guns "[u]nless otherwise permitted by law") and N.J.S.A. § 2C:58-4.6 (no firearms in all manner of so-called "prohibited areas").

under the limited locational exceptions (*e.g.*, hunting, target shooting) enumerated in N.J.S.A. § 2C:39-6.

60. Next, New Jersey generally decriminalizes rifle and shotgun acquisition if an individual possesses an FPIC, N.J.S.A. § 2C:58-3(b)(1), and generally decriminalizes handgun acquisition if an individual possesses a Permit to Purchase a Handgun ("PPH"). N.J.S.A. § 2C:58-3(a)(1). However, acquisitions still must comply with New Jersey's statutory requirements, as discussed *infra*.

61. All told, New Jersey's scheme of firearm regulation is one of general prohibition, and limited exception.

62. Even new residents moving into the state with previously acquired firearms are subject to New Jersey's permitting requirements, which require new residents to apply for an FPIC, and register any and all handguns brought into the state. N.J.S.A. § 2C:58-3(o).

63. Accordingly, the only way to lawfully acquire a rifle, shotgun, or handgun in New Jersey without some form of invasive licensure is to *inherit* one. N.J.S.A. § 2C:58-3(j); N.J.A.C. § 13:54-1.13. In all other instances of firearm acquisition, both new and current residents must seek the appropriate permit or face criminal penalty. The same applies to possession and carry throughout most of the state.[13]

---

[13] *See* N.J.S.A. § 2C:39-5(b) ("Any person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same as provided in N.J.S.2C:58-4, is guilty of a crime of the second degree."); *see also* N.J.S.A. § 2C:39-5(c) ("Any person who knowingly has in his possession any rifle or shotgun without having first obtained a firearms purchaser identification card in accordance with the provisions of N.J.S.2C:58-3, is guilty of a crime of the third degree.").

## C.     FPIC Requirements to Acquire Rifles and Shotguns

64.     In New Jersey, in order to acquire a rifle or shotgun other than through inheritance, a person must hold a valid FPIC.  N.J.S.A. § 2C:58-3(b)(1).

65.     New Jersey issues FPICs electronically via its Firearms Application & Registration System ("FARS").[14]  N.J.S.A. § 2C:58-3(h).

66.     To apply for an FPIC, one must complete an application by providing their "name, residence, place of business, age, date of birth, occupation, sex, any aliases or other names previously used by the applicant, gender, and physical description, including distinguishing physical characteristics," the "names and addresses of two reputable citizens personally acquainted with the applicant" as character references, an attestation that the applicant is not prohibited from possessing firearms under state and federal law, and any "other information as the superintendent shall deem necessary."  N.J.S.A. § 2C:58-3(e).  Applicants also must provide a color photograph and fingerprints.[15]  N.J.S.A. § 2C:58-3(d).  Finally, applicants must complete "a course of instruction approved by the superintendent in the lawful and safe handling and storage of firearms."  N.J.S.A. § 2C:58-3(c).  At present, this instruction component is a clickable slideshow on the FARS website.[16]

67.     By statute, FPICs are issued on an ostensibly "shall-issue" basis, so long as a person is not "known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-

---

[14]     *Firearms Application & Registration System (FARS)*, <u>N.J. State Police</u>, <u>https://tinyurl.com/mrx7nr5b</u> (last visited May 2, 2024).
[15]     However, subsequent applications need not resupply fingerprints if already available.  N.J.S.A. § 2C:58-3(e).
[16]     *FARS*, *supra* note 14.

defense, that would pose a danger to self or others, or is subject to any of the disabilities set forth" in New Jersey law.  N.J.S.A. § 2C:58-3(c).

68.    Although several of New Jersey's state-level prohibitors resemble those under federal law, others are novel and open-ended, only compounding the already indeterminate "likely to engage in conduct" discretionary standard described above.  For example, New Jersey prohibits FPIC issuance to "any person who suffers from a physical defect or disease which would make it unsafe for that person to handle firearms," as well as "any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be *lacking the essential character of temperament necessary to be entrusted* with a firearm."  N.J.S.A. §§ 2C:58-3(c)(3), (c)(5) (emphasis added).

69.    Assuming an applicant does not fall under any of these prohibitors, an FPIC application incurs a fee of $50, N.J.S.A. § 2C:58-3(f), in addition to a $20 fee for a "criminal history record information" (known as an SBI-212A) check.[17]  Fingerprinting itself costs $45.73 at an electronic live scanning location contracted by the state.[18]   In total, an FPIC costs approximately $115.73.

70.    Upon submission of an application, a permitting authority shall perform a background check, including a mental health records check, N.J.A.C. § 13:54-1.4(d), and shall grant the application "within 30 days from the date of receipt of the completed application for residents of this State and within 45 days for nonresident applicants."  N.J.S.A. § 2C:58-3(f).

---

[17] *See Criminal History Record Request*, N.J. State Police, https://tinyurl.com/y6hpx7y3 (last visited May 2, 2024).
[18] *NJ Criminal History Records Information*, N.J. State Police, https://tinyurl.com/ydmnv7jz (last visited May 2, 2024).

71.     However, the statutory time period for issuance does not begin upon the *filing* of an application, but rather its *completion*.   In other words, pending responses from character references or contacted records custodians will cause delay.

72.     Upon issuance, an FPIC is valid for approximately 10 years before it must be renewed.   N.J.S.A. § 2C:58-3(f).

73.     In order to acquire a rifle or shotgun using an FPIC, New Jersey generally requires all such acquisitions to be funneled through a licensed dealer,[19] which must perform yet *another* background check on the acquirer.   N.J.S.A. §§ 2C:58-3(b)(2), (b)(3).

74.     Finally, in addition to the FPIC, a purchaser or transferee (*i.e.*, acquirer) of a rifle or shotgun must present to the dealer a so-called "Certificate of Eligibility"[20] which indicates present compliance with New Jersey's list of prohibited persons.   N.J.S.A. § 2C:58-3(b)(1).   This "Certificate of Eligibility" is in addition to the ATF Form 4473 that is required for transfers by federally licensed dealers.

**D.      Permit to Purchase a Handgun ("PPH")**

75.     With some notable exceptions, the requirements and procedures to obtain an FPIC and PPH are identical.   *See generally* N.J.S.A. § 2C:58-3.   Accordingly, Plaintiffs identify the distinguishing features of the PPH only.

76.     First, a PPH is temporary in nature.   Valid for only 90 days from the date of issuance, an unused PPH may be renewed for, at most, another 90 days, but only "for good cause." N.J.S.A. § 2C:58-3(f).

---

[19] *But see* N.J.S.A. § 2C:58-3(b)(2)(a) (enumerating transfers between immediate family members as one of a few limited exceptions to the general dealer-transfer rule).
[20] https://nj.gov/njsp/firearms/pdf/sp-634_20180914.pdf.

77.     Second, "[o]nly one handgun shall be purchased or delivered on each [PPH] and no more than one handgun shall be purchased within any 30-day period."  N.J.S.A. § 2C:58-3(i).  *See also* N.J.A.C. § 13:54-1.9. While handguns are subject to this 'one per month' statute, there is no such limitation on rifles and shotguns.  *Id.*  Accordingly, should one wish to purchase multiple handguns, one would have to apply for multiple PPHs on a staggered basis (*e.g.*, three permits at a time, redeeming one per month until the third expires at the end of 90 days).

78.     Third, New Jersey law enumerates three possible exemptions to the 'one per month' statute.  The superintendent has discretion to approve purchases of more than one handgun per month for PPH applicants purchasing from inheritances, applicants purchasing for a collection provided sufficient "need," and applicants purchasing for imminent competition use.  N.J.S.A. § 2C:58-3.4(a).  Self-defense, and exercise of the right to keep and bear arms, do not appear on that list.

79.     Fourth, the fee to obtain each PPH is in addition to the other background-related fees discussed *supra*.  N.J.S.A. § 2C:58-3(f).

80.     Fifth, a PPH applicant "shall also certify, with respect to each handgun listed on the form, whether the applicant is purchasing the handgun on the applicant's own behalf or, if not, that the purchase is being made on behalf of a third party to whom the applicant may lawfully transfer the handgun."  N.J.S.A. § 2C:58-3(e).

81.     And sixth, when a dealer electronically "executes" a PPH "E-Permit" to transfer a handgun to a buyer, the dealer must enter the handgun's make, model, caliber, and serial number

into New Jersey's FARS portal, thereby tying this information to the buyer and causing registration with the state.[21]

82.     Although a PPH is, by law, to be issued within 30 days of application (*see* N.J. Stat. § 2C:58-3(f)), some counties do not issue PPHs within this time period, instead treating New Jersey law as merely aspirational in nature.  But of course, if a New Jersey resident treated the requirement to obtain a PPH as a mere suggestion, they would go to jail.

83.     Further, there is another waiting period baked into New Jersey's law on purchasing a handgun.  N.J.S.A. § 2C:58-2(a)(5)(a) states that "[n]o handgun shall be delivered to any person unless: (a) Such person possesses and exhibits a valid permit to purchase a firearm and at least seven days have elapsed since the date of application for the permit...."  So even if the issuing authority *does* issue a PPH quickly, then New Jerseyans still must wait "at least seven days" from the date of their application for the permit in order to exercise their Second Amendment rights.

84.     Overall, PPHs are redundant and unnecessary because all handgun purchases in New Jersey must be conducted through a New Jersey-licensed dealer, and "the retail dealer shall complete a National Instant Criminal Background Check of the person acquiring the handgun." N.J.S.A. § 2C:58-3(a)(3).

85.     As such, New Jersey law requires background check after background check, unnecessarily and unlawfully adding layer upon layer to the exercise of an enumerated right.

86.     In other words, to the extent that New Jersey's purported interest in conducting a PPH background check is to ensure that individuals who purchase handguns are not prohibited persons, then this background check is already done at the point of sale by the federally licensed

---

[21] *See Retail Firearms Dealer – E-Permit Execution: One Permit*, N.J. State Police, https://tinyurl.com/ypumyrm4 (last visited May 7, 2024).

dealer, and renders the permit to purchase unnecessary prophylaxis-upon-prophylaxis, simply existing to delay the exercise of a right.

87.     Delays in the Second Amendment context have cost some in New Jersey their lives, as demonstrated by the tragic murder of Carol Bowne, who was delayed in receiving her "permit" for a firearm for 42 days.[22]  Had she been able to purchase a firearm to protect herself, this tragic outcome may have been different.

**E.     PCH Requirements to Publicly Carry a Concealed Handgun**

88.     Assuming one has obtained a PPH and subsequently purchased a handgun, a PCH remains necessary to actually "bear" that handgun in public for self-defense.

89.     N.J.S.A. § 2C:58-4 establishes an onerous PCH permitting process that, while lifting New Jersey's general prohibition on concealed carry in public, runs headlong into the litany of newly "prohibited areas" enumerated in New Jersey's 'Bruen response bill.'  *Cf.* N.J.S.A. § 2C:58-4.6, *with Bruen*, 597 U.S. at 31 ("expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly"), *and Koons v. Platkin*, 673 F. Supp. 3d 515, 670 (D.N.J. 2023) (ruling "much of" New Jersey's prohibited areas "plainly unconstitutional").

90.     What is more, a PCH permits *concealed carry only*.  Notably, inadvertent, "brief, incidental exposure of a handgun" from shifting position or clothing is "deemed a de minimis infraction."  N.J.S.A. § 2C:58-4(a).  Although N.J.S.A. § 2C:2-11 provides for dismissal of such de minimis infractions, the law does not provide a bar to prosecution.  Rather, a PCH holder remains liable for arrest and prosecution for entirely innocent activity such as a firearm "printing"

---

[22] *See* Perry Chiaramonte,  *'No One Helped Her': NJ Woman Murdered by Ex While Awaiting Gun Permit*, Fox News, https://tinyurl.com/5d5sc2wu (Jan. 12, 2017).

under a t-shirt, the wind blowing open a jacket, or otherwise inadvertently carrying openly for even a split second. Rather, N.J.S.A. § 2C:2-11 simply permits a judge to dismiss any such resulting charges, but only *after* the prosecutor is given "notice and an opportunity to be heard." N.J.S.A. § 2C:2-11(c). Prosecutors retain the right to appeal such dismissals. *Id.*

91. Similar to the FPIC and PPH, the PCH requires applicants to disclose their "full name, date of birth, sex, residence, occupation, place of business or employment, any aliases or other names previously used by the applicant, and physical description of the applicant, and any other information the superintendent may prescribe for the determination of the applicant's eligibility for a permit." N.J.S.A. § 2C:58-4(b). Applicants also must sign their applications under oath and be "endorsed by not less than *four reputable persons* who are not related by blood or by law to the applicant and have known the applicant for at least three years preceding the date of application, and who shall certify thereon that the applicant has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others." *Id.* (emphasis added). Further, these "reputable persons" must "provide relevant information supporting the certification, including the nature and extent of their relationship with the applicant and information concerning their knowledge of the applicant's use of drugs or alcohol." *Id.*

92. In addition, PCH applicants must pay a $200 application fee and spend more than a hundred dollars more[23] seeking state-approved training, which must "consist of an online course of instruction, in-person classroom instruction, and target training administered by a certified firearm instructor on a firing range approved by the superintendent and on the list of approved

---

[23] *See, e.g.*, Ironsights Academy, https://tinyurl.com/yc8eheud (last visited May 2, 2024) ($125); R.O.C., https://tinyurl.com/4eceut3f (last visited May 2, 2024) ($150+).

ranges published on the State Police website." N.J.S.A. §§ 2C:58-4(c), (g). And, because "all applicants" must be fingerprinted, whether for an initial permit or renewal, one can expect similar fingerprinting fees as discussed above.[24] N.J.S.A. § 2C:58-4(c).

93.     Next, the permitting authority must invasively "interview the applicant and the persons endorsing the application … and shall make inquiry concerning, and investigate to the extent warranted, whether the applicant is likely to engage in conduct that would result in harm to the applicant or others." N.J.S.A. § 2C:58-4(c).

94.     Alarmingly, the permitting authority also "may require such other information from the applicant or any other person, including but not limited to publicly available statements posted or published online by the applicant, as the chief police officer or superintendent deems reasonably necessary to conduct the review of the application." N.J.S.A. § 2C:58-4(c). In short, New Jersey's statutory scheme is a confusing amalgam of statutes and rules that infringe on the rights of New Jerseyans to "keep and bear Arms."

95.     Undermining any semblance of privacy that remains, the permitting authority also must "record a complete description of each handgun the applicant intends to carry." N.J.S.A. § 2C:58-4(c). In other words, universal registration.

96.     Essentially, each handgun that a New Jerseyan buys must be purchased on a PPH (which is reported to the state by the dealer), and then each handgun that a New Jerseyan intends to carry on his or her PCH must be specifically listed (registered) on that permit as well.

---

[24] *Applying for a Permit to Carry a Handgun*, <u>N.J. State Police</u>, https://tinyurl.com/yenbaa8z (last visited May 2, 2024).

97.    By statute, permitting authorities have 90 days, unilaterally extendable by another 30 days "for good cause shown," to approve or deny a PCH application.  N.J.S.A. § 2C:58-4(c). If this period lapses, applications are deemed approved.  *Id.*

98.    This deeming approved of applications that are not timely processed is cold comfort to citizens however, given that police are likely to arrest a concealed carrier who does not physically have a PCH on their person.

99.    All told, a PCH shall be issued "if, but only if" the applicant (1) "has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others and is not subject to any of the disabilities set forth in subsection c. of N.J.S.2C:58-3" (N.J.S.A. § 2C:58-4(d)(1)), (2) "is thoroughly familiar with the safe handling and use of handguns" (N.J.S.A. § 2C:58-4(d)(2)), (3) "has completed the training requirements established pursuant to subsection g. of this section, provided that any requirement for classroom instruction and target training shall not be required for a renewal applicant who completed the instruction and training when obtaining a permit to carry a handgun issued within the previous two years" (N.J.S.A. § 2C:58-4(d)(3)), and (4) "is in compliance with the liability insurance requirement" (N.J.S.A. § 2C:58-4(d)(4)).

100.    In summary, in order to simply carry a handgun for self-defense in New Jersey, one can expect to wait months and months, at a cost of approximately $500.

## F.    Plaintiff Christian Benton

101.    Plaintiff Christian Benton is an adult male citizen of the State of New Jersey, residing in Pennsauken Township, Camden County, New Jersey.  He is a citizen of the United States, is a law-abiding person, and has no disqualification under state or federal law which would

prohibit him from purchasing or possessing a firearm.  He also possesses a current and valid New Jersey Permit to Carry a Handgun.  *See* Declaration of Christian Benton, Exhibit C.

102.    Benton applied to the Pennsauken Township Police Department for two Permits to Purchase a Handgun on or about February 27, 2024.

103.    However, as of today's date, Benton has not received either of his PPHs.  This is well beyond the 30-day timeframe allowed by statute.

104.    Benton applied for another Permit to Purchase a Handgun on June 10, 2024.  The time allowed per the statute to issue this permit has not yet expired.  But, given the fact that Chief Olivo takes well over the 30 days allowed by the statute, Benton does not expect to receive this Permit to Purchase timely.

105.    Defendant Chief of Police Phil Olivo is the person responsible for issuing PPHs in Pennsauken Township, New Jersey.

106.    Prior to Benton's current PPH application, Benton has applied for and received other permits to purchase.  His first application took about 10 weeks (approximately 70 days) to receive, despite New Jersey law requiring the permits to purchase be issued in 30 days.

107.    However, the last time Benton applied for a PPH, it took approximately four months to issue.  In other words, Chief Olivo's actions continue to depart from the statutory requirement of 30 days.

108.    For instance, New Jersey unconstitutionally rations and infringes upon the Second Amendment with its "one gun a month" policy, and in a best-case scenario, one person is allowed to purchase up to 12 handguns per year.

109.    However, in Pennsauken, on information and belief, the Chief of Police, through another unconstitutional scheme, does not allow one handgun purchase every month, but one

handgun every month plus 1 day, this practice reduces the number of handguns Mr. Benton can purchase annually to 11.

110. But even that number seems to be aspirational only, because New Jersey law operates to further restrict the number of handguns a person is able to purchase in one year.

111. For instance, a PPH is supposed to take 30 days to issue. If Benton were to apply for two permits, which he has done, and which he currently has pending since February 2024, Benton cannot, by operation of law, purchase a handgun until the Chief approves his application. And because the Chief has not approved these permits to purchase timely, Benton is precluded from exercising his Second Amendment rights until the Chief acts – necessarily a violation of the Second Amendment.

112. Since Benton has been waiting for PPH permit issuance from February 27, 2024 to June 18, 2024 he has been entirely prohibited from acquiring handguns during that time. Thus he has missed out on the opportunity to purchase at least four (4) handguns during those months.

113. In other words, the only way a resident of Pennsauken Township can purchase even the statutory maximum number of handguns per year is to *constantly be applying* for PPHs, on a regular basis, *in anticipation* of desiring to purchase a handgun at any given time, even if routine purchases may not in fact occur. This absurd scenario would cost many hundreds of dollars, and require countless hours of paperwork on the part of a gun owner, merely to be allowed to acquire firearms at will.

114. Making matters worse, Benton's reason for applying for one of his permits to purchase is because he wants to carry a firearm his wife owns, on his Permit to Carry a Handgun. But because his wife's firearm (their communal property) is not registered to him, Benton must waste a PPH on a firearm which is already owned by his wife, in order merely to be allowed to list

the firearm on his Permit to Carry a Handgun before he is *permitted* to carry a firearm he and his wife already possess, on a Permit to Carry a Handgun he already possesses.

115.    But for New Jersey's PPH and "one gun a month" licensing and rationing schemes, Benton would buy additional handguns without first seeking a "permit," and he would buy more than one handgun a month.

116.    Mr. Benton desires to purchase handguns when he wants, at the time of his choosing, in the limit of his choosing, as the Second Amendment provides.

117.    Because Mr. Benton can neither "keep" nor "bear" arms that New Jersey prohibits him even from acquiring, the state's handgun rationing scheme violates and infringes the Second Amendment.

118.    Benton's Second Amendment rights have been and are currently being violated and infringed by virtue of his inability to acquire firearms without the approval of a government official.

## G.    Plaintiffs GOA, GOF, and CNJFO

119.    The organizational Plaintiffs have members and supporters that are harmed by New Jersey's unconstitutional Permit to Purchase a Handgun scheme and "one gun a month" rationing law.

120.    As explained in the Declaration of Erich Pratt, Exhibit B, GOA has spoken a member who "applied for two permits to purchase in February 2024" because they did not "have any firearms with which to protect themselves or their family," but "has been waiting over months, simply to purchase a handgun…" *Id*. at 17. This member "wanted to purchase more than one handgun a month, but … New Jersey law prohibited them from doing so." *Id*. at 18.

29

121.    Another GOA member explained that it "took over two (2) months before the permit was issued," and before that it "took approximately six (6) months" before they received another permit.  *Id.* at 19.

122.    Likewise, CNJFO has spoken "to a number of CNJFO members … who have applied for Permits to Purchase and have not received them within the statutory thirty (30) days."  *See* Declaration of John C. Pyle, Exhibit A at 14.  And CNFJO explains that "some of our members question why they can only purchase one handgun per month…"  *Id.*

123.    CNJFO spoke with one member who advised "they have been waiting over 42 days on three" Permits to Purchase a Handgun" and another member who waited "at least 45 days for a Permit to Purchase."  *Id.* at 15.  Another member waited "over six months" to receive their Permit to Purchase.  *Id.*  And another member states that they applied for a Permit to Purchase on "April 21, 2024 … [but] has not received" their Permit to Purchase yet.  *Id.* at 16.

124.    These examples of real and concrete harms to real persons are widely shared by the members and supporters of the organizational plaintiffs.

125.    The Second Amendment rights of these members and supporters have been and are currently being violated and infringed by virtue of their inability to acquire firearms without the approval of a government official and by virtue of their inability to acquire more than one handgun per month.

## COUNT I

### U.S. CONST. AMENDS. II, XIV
### RIGHT TO KEEP AND BEAR ARMS
### 42 U.S.C. § 1983 AGAINST DEFENDANTS

126.    The foregoing allegations are repeated and realleged as if fully set forth herein.

127.    New Jersey's layer upon layer of background checks, fees, fingerprinting, waiting periods, and government "permi[ssion]" to exercise an enumerated right violates Plaintiffs' Second Amendment rights that "shall not be infringed."

128.    While courts are forbidden from using means-end scrutiny to analyze Second Amendment challenges, the Supreme Court has previously held that "a prophylaxis-upon-prophylaxis approach … is a significant indicator that the regulation may not be necessary for the interest it seeks to protect."  *FEC v. Ted Cruz for S.*, 142 S. Ct. 1638, 1653 (2022).  New Jersey's firearm permitting and purchasing scheme is the same "prophylaxis-upon-prophylaxis" approach that does nothing but further delay and run up the costs of exercising an enumerated right.

129.    But that is a feature, not a bug, of the New Jersey permitting scheme, which is designed to make it difficult for Americans to exercise their Second Amendment rights.

130.    Plaintiffs are members of "the people" who desire to "keep" and "bear" a quintessential protected "arm" (a handgun).

131.    Under *Bruen*'s footnote 9, the Supreme Court specifically held that "any permitting scheme can be put toward abusive ends" and did not "rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."  *Bruen*, 597 U.S. at 38 n.9.

132.    Because New Jersey's PPH is a scheme that allows "lengthy wait times in processing" and fees that are "exorbitant," it fails to pass constitutional muster.

31

133.    Further, *Bruen* held that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."  *Bruen*, 597 U.S. at 17.

134.    Thus, the burden is on New Jersey to prove, based on Founding-era historical tradition, that its laws imposing significant fees, waiting periods, and other requirements somehow comport with the original public understanding of the Second Amendment.

135.    However, there is no historical analogue for requiring individuals to apply for a permit simply to acquire or "keep" a handgun, or to carry it in public, for that matter, and certainly no historical analogue for imposing months-long waiting periods, and layers upon layers of permitting, merely to be able to exercise an enumerated right.

136.    Thus, New Jersey's handgun purchasing scheme related to PPH violates the Second Amendment and conflicts with *Bruen*'s clear teachings.

137.    Further, as everyone who purchases a handgun in New Jersey must be subjected to a background check at the point of sale – a background check (FPIC) on top of a background check (PPH) on top of a background check (point of sale) – which does nothing but infringe on Plaintiffs' rights and further delay acquisition of protected arms.

138.    As such, Defendants' laws, customs, practices, and policies, reducing the Second Amendment's protection of the right to "keep and bear arms" to an inkblot, damage Plaintiffs in violation of 42 U.S.C. § 1983.

139.    By infringing the Second Amendment right to bear arms in public in these ways, the New Jersey laws and regulations discussed in the foregoing allegations violate the Second

Amendment, which apply to Defendants by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs, and are therefore invalid.

140.    Likewise, New Jersey's "one gun a month" law, N.J.S.A. § 2C:58-3(i) and N.J.A.C. § 13:54-1.9, operates to deny New Jerseyans the ability to purchase more than one handgun per month.

141.    Plaintiffs' desired conduct, the ability to purchase more than one handgun per month, is covered by the Second Amendment and is not a condition or qualification on the commercial sale of arms, as New Jersey still requires background checks at the point of sale.

142.    At least one federal court already has held precisely this sort of rationing law to be without historical analogue and therefore violative of the Second Amendment.  *See Nguyen v. Bonta*, 2024 U.S. Dist. LEXIS 45512 (S.D. Cal. Mar. 11, 2024) (granting a motion for summary judgment and holding that California's "one gun a month" law violated the Second Amendment and staying its decision pending further action by the Ninth Circuit); *see also Heller v. District of Columbia*, 801 F.3d 264, 280 (D.C. Cir. 2015) (ruling the District of Columbia's "one gun a month" law unconstitutional under abrogated, less-stringent interest balancing).

143.    Dispensing with California's reliance on certain dicta from *Heller*, the *Nguyen* court noted that "*Bruen* suggests that the proper question in evaluating whether a regulation falls within the commercial sales category is not the extent of interference with the Second Amendment right, but instead whether the regulation historically would have been tolerated." *Nguyen*, 2024 U.S. Dist. LEXIS 45512, at *17.

144.    Historically, there is no support for the proposition that a law limiting the Founders' purchase of firearms, or otherwise rationing the Second Amendment's guarantees, would have been tolerated.

145.    As the *Nguyen* court stated, "nothing in the text of the Second Amendment suggests that the Second Amendment right is limited to possession and acquisition of a single firearm, or that the acquisition of additional firearms is inherently subject to additional limitations – if anything, the usage of the term 'arms' in plural suggests the opposite." *Nguyen*, 2024 U.S. Dist. LEXIS 45512, at *22.

146.    And the plain text of the Second Amendment states plainly that the "right to keep and bear Arms, shall not be infringed," without limitation, and certainly without any limitation on timing or quantity.

147.    New Jersey's onerous handgun purchase permitting and rationing scheme is therefore unconstitutional under the plain text.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    An order declaring that the challenged sections of N.J.S.A. § 2C:58-3, including the SBI-212A fee, are unenforceable, unconstitutional, and violate the Second and Fourteenth Amendments to the United States Constitution;

2.    An order declaring that New Jersey's "one gun a month" law (N.J.S.A. § 2C:58-3(i) and N.J.A.C. § 13:54-1.9) is unenforceable, unconstitutional, and violates the Second and Fourteenth Amendments to the United States Constitution;

3.    An order permanently enjoining Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing all laws requiring permits to purchase handguns, or limiting handgun purchases to one per month;

4.     An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from unlawfully delaying the exercise of the Second Amendment right to "keep and bear Arms";

5.     Nominal damages;

6.     Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

7.     Such other further relief as is necessary to effectuate the Court's judgment or that the Court otherwise deems just and appropriate.


Dated:  Lake Success, New York
        June 18, 2024

                              Respectfully submitted,
                              HARFENIST KRAUT & PERLSTEIN, LLP


                       By:     *Steven J. Harfenist*
                              _____
                              Steven J. Harfenist
                              *Attorneys for Plaintiffs*
                              3000 Marcus Avenue, Suite 2E1
                              Lake Success, New York 11042
                              T: (516) 355-9600
                              F: (516) 355-9601
                              E: SHarfenist@hkplaw.com


                              Stephen D. Stamboulieh
                              MS Bar No. 102784
                              Stamboulieh Law, PLLC
                              P.O. Box 428
                              Olive Branch, MS  38654
                              T: (601) 852-3440
                              E: stephen@sdslaw.us
                                   * *Pro Hac Vice forthcoming*

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW STRUCK, DANIEL FRANCISCO, and FIREARMS POLICY COALITION, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, and PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,<br><br>    Defendants. | Civil Action No.<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Raymond M. DiGuiseppe
**The DiGuiseppe Law Firm, P.C.**
116 N. Howe Street, Suite A
Southport, NC 28461
(910) 713-8804
law.rmd@gmail.com
*Pro Hac Vice application forthcoming*

Bradley P. Lehman
**GELLERT SEITZ BUSENKELL & BROWN LLC**
1201 N. Orange Street, Suite 300
Wilmington, Delaware 19808
(302) 416-3344
blehman@gsbblaw.com

## LOCAL CIVIL RULE 10.1 STATEMENT

The street and/or post office addresses of the parties to this action are:

Matthew Struck
3 Elsworth Avenue
Morristown, NJ 07960

Daniel Francisco
7 Harrison Avenue
Englishtown, NJ 07726

Firearms Policy Coalition, Inc.
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149

Matthew J. Platkin
Acting Attorney General of New Jersey
Office of the Attorney General
RJ Hughes Justice Complex
Trenton, NJ 08625-0080

Patrick J. Callahan
Superintendent of the New Jersey State Police
P.O. Box 7068
West Trenton, NJ 08627

Plaintiffs, Matthew Struck, Daniel Francisco, and Firearms Policy Coalition, Inc. ("FPC," and, collectively, "Plaintiffs"), by and through their undersigned counsel, bring this complaint against Defendants and allege as follows:

## INTRODUCTION

1.      This case presents a simple question of law. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms"—*plural*—"which shall not be infringed." U.S. CONST. amend. II. The plain language of the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms" today. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 28 (2022). As the Supreme Court found in *Heller* and reiterated in *Bruen*, handguns "are indisputably in 'common use.' " *Bruen*, 597 U.S. at 47 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008)).

2.      Plaintiffs wish to engage in constitutionally protected conduct by acquiring more than one handgun in a 30-day period for lawful purposes. But N.J.S.A. § 2C:58-3(i), N.J.A.C. § 13:54-1.9, and Defendants' policies and enforcement practices (hereinafter, the "OGM Ban") prohibit and criminalizes this conduct.

3.      There is no question that the text of the Second Amendment covers the conduct the Plaintiffs wish to engage in and the arms they wish to acquire and possess. And "[w]hen the Second Amendment's plain text covers an individual's

conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

4.    Indeed, the test that the Supreme Court applied in *Heller* and *Bruen* "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 26. Under this test, the government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Id.*

5.    But New Jersey cannot carry its burden because there is no constitutionally relevant history that supports the OGM Ban. Other courts to consider laws similar to New Jersey's OGM Ban have found them to be unconstitutional. *See Nguyen v. Bonta*, 2024 U.S. Dist. LEXIS 45512 (S.D. Cal. Mar. 11, 2024) (granting a motion for summary judgment and holding that California's "one gun a month" law was unconstitutional); *see also Heller v. District of Columbia*, 801 F.3d 264, 280 (D.C. Cir. 2015) (finding the District of Columbia's "one gun a month" law unconstitutional in a pre-*Bruen* interest-balancing analysis).

6.    By enforcing its OGM Ban, Defendants are infringing upon the Plaintiffs' fundamental, constitutionally guaranteed right to keep and bear arms.

Thus, the Plaintiffs seek the appropriate remedies to declare New Jersey's OGM Ban unconstitutional and enjoin its enforcement.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New Jersey, of the rights, privileges, or immunities secured by the United States Constitution.

8.     Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2), as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## PARTIES

9.     Plaintiff Matthew Struck is a natural person, a resident of Morristown, Morris County, New Jersey, an adult over the age of 21, and a citizen of the State of New Jersey and the United States.

10.     Plaintiff Struck is a member of Plaintiff FPC.

11.     Plaintiff Daniel Francisco is a natural person, a resident of Englishtown, Monmouth County, New Jersey, an adult over the age of 21, and a citizen of the State of New Jersey and the United States.

12.     Plaintiff Francisco is a member of Plaintiff FPC.

13.     Plaintiff FPC is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms, and protect, defend, and advance the means by which individuals may exercise the right to carry, possess, and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside New Jersey.

14.     FPC represents its members—who include gun owners, prospective gun owners, licensed firearm retailers, and others—and brings this action on behalf of its New Jersey-resident members, including the named Plaintiffs herein, who seek to lawfully purchase more than one handgun in common use for lawful purposes within a 30-day period and would do so but for Defendants' enforcement of the OGM Ban.

15.     Defendant Matthew J. Platkin is the Acting Attorney General of New Jersey. In such capacity, Platkin is the head of the State's Office of the Attorney General and Department of Law and Public Safety, which includes the New Jersey

State Police, and holds statewide criminal jurisdiction to investigate and prosecute any indictable offense.

16. Defendant Platkin is therefore responsible for executing, delegating, or supervising the laws and regulations governing the possession of firearms and magazines and imposing criminal sanctions for violations of the same.

17. Defendant Platkin's official address is the RJ Hughes Justice Complex, 25 Market St., Trenton, NJ 08625-0080.

18. Defendant Platkin is being sued in his official capacity.

19. Defendant Patrick J. Callahan is the Superintendent of the New Jersey State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, Defendant Callahan exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing firearms.

20. Defendant Callahan's official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, West Trenton, NJ 08628.

21. Defendant Callahan is being sued in his official capacity.

## FACTUAL ALLEGATIONS

22. Plaintiff Struck is not prohibited from acquiring and possessing firearms under federal or state law, a fact known to Defendants.

23.     Plaintiff Struck is the holder of a firearm purchaser ID card, a fact also known to Defendants.

24.     Plaintiff Struck desires and intends to purchase two or more handguns in common use for lawful purposes from a licensed dealer within a 30-day period and would do so but for Defendants' enforcement of the OGM Ban.

25.     Plaintiff Francisco is likewise not prohibited from acquiring and possessing firearms under federal or state law, a fact known to Defendants.

26.     Plaintiff Francisco has an active license to carry a handgun issued by his New Jersey licensing authority, a fact known to Defendants.

27.     Like Plaintiff Struck, Plaintiff Francisco desires and intends to purchase two or more handguns in common use for lawful purposes from a licensed dealer within a 30-day period and would do so but for Defendants' enforcement of the OGM Ban.

28.     Defendants have enforced, are continuing to enforce, and are threatening to enforce their OGM Ban and related laws, policies, practices, and customs against Plaintiffs in violation of the right to keep and bear arms.

29.     The individual Plaintiffs' injuries are representative of those experienced by other FPC members in New Jersey.

30.     Defendants know or could ascertain the names of the individuals who have applied for more than one handgun purchase in a 30-day period but were denied those transactions based on the OGM Ban.

31.     Defendants' past and continuing enforcement of the OGM Ban has chilled and is continuing to chill the exercise of and has violated and is continuing to violate the constitutionally protected rights of Plaintiff Struck, Plaintiff Francisco, and Plaintiff FPC's similarly situated New Jersey members, causing injury and damage actionable under 42 U.S.C. § 1983.

## COUNT ONE

### 42 U.S.C. § 1983
### Violation of the Second and Fourteenth Amendments
### to the United States Constitution

32.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

33.     The Second and Fourteenth Amendments to the United States Constitution forbid governments from infringing on the right to keep and bear arms.

34.     There is an actual and present controversy between the parties.

35.     The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, possess, purchase, receive, transport, and lawfully use common firearms for all lawful purposes.

36. New Jersey's OGM Ban, and Defendants' enforcement thereof, prohibits Plaintiffs and similarly situated residents of the State of New Jersey from exercising their right to purchase more than one handgun within any 30-day period.

37. N.J.SA. § 2C:58-3(i) provides, in pertinent part: "Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period . . . ."

38. N.J.A.C. § 13:54-1.9 provides, in pertinent part: "Only one handgun may be purchased or delivered on each permit to purchase."

39. Individuals in New Jersey have a right to keep, bear, and use arms for all lawful purposes. That right includes but is not limited to buying, selling, and transferring firearms, including by purchasing more than one handgun in a 30-day period.

40. The Constitution contains no limitation on the frequency or number of arms that an individual may lawfully purchase or otherwise acquire—period, let alone in a 30-day period.

41. New Jersey's OGM Ban is not part of the Nation's historical tradition of firearms regulation.

42. The first OGM-type law in the Nation was not passed until 1975, and New Jersey's OGM Ban was not passed until 2009.

43.    42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of constitutionally protected rights under color of state law.

44.    Defendants, acting under color of state law at all relevant times, have deprived the fundamental constitutional rights of Plaintiffs and similarly situated persons in New Jersey through enforcement of the State's OGM Ban.

45.    Plaintiffs lack an adequate remedy at law for this violation of their rights.

46.    The public interest favors enjoining unconstitutional statutes, including the OGM Ban.

47.    Therefore, as a direct and proximate result of the Defendants' infringement of constitutionally protected rights, Plaintiffs and New Jersey-resident members of Plaintiff FPC have suffered an unlawful deprivation of their right to keep and bear arms, and they will continue to suffer such injury unless and until granted the relief they seek herein.

48.    Defendants, having acted under color of law, policy, custom, and/or practice in perpetrating this deprivation of the right to keep and bear arms, are liable under 42 U.S.C. § 1983 "in an action at law, suit in equity, or other proper proceeding for redress[.]"

49.     For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter the following relief in their favor and against Defendants:

a)      A declaratory judgment that New Jersey's OGM Ban and Defendants' enforcement thereof violates the right to keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution and is therefore unconstitutional and unenforceable;

b)      A permanent injunction prohibiting Defendants, and Defendants' respective employees, officers, agents, representatives, all those acting in concert or participation with them, and all who receive notice of the injunction, from enforcing New Jersey's OGM Ban;

c)      Attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

d)      Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: September 26, 2024

**GELLERT SEITZ BUSENKELL & BROWN LLC**

*/s/ Bradley P. Lehman*
Bradley P. Lehman (NJ No. 129762014)
1201 N. Orange Street, Suite 300
Wilmington, Delaware 19801
P: (302) 425-5800
E: blehman@gsbblaw.com

*Counsel for Plaintiffs*