Bradley P. Lehman (NJ #129762014)
Gellert Seitz Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: 302-416-3344
Email: blehman@gsbblaw.com

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Phone: 910-713-8804
Email: law.rmd@gmail.com
(Admitted *pro hac vice*)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTIAN BENTON, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION, | Hon. Karen M. Williams, U.S.D.J.<br>Hon. Matthew J. Skahill, U.S.M.J.<br><br>DOCKET NO. 1:24-cv-07098 |
| Plaintiffs,<br>v.<br><br>MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, and CHIEF PHIL OLIVO, in his official capacity as the Police Chief of Pennsauken Township,<br><br>Defendants. | |

| | |
|---|---|
| MATTHEW STRUCK, DANIEL FRANCISCO, and FIREARMS POLICY COALITION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW J. PLATKIN, in his official capacity as Attorney General of New Jersey, and PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,<br><br>Defendants. | Hon. Michael A. Shipp, U.S.D.J.<br>Hon. Justin T. Quinn, U.S.M.J.<br><br>DOCKET NO. 3:24-cv-09479<br><br>*Struck* Plaintiffs' Opposition to Motion to Consolidate |

# *STRUCK* PLAINTIFFS' OPPOSITION TO DEFENDANT ATTORNEY GENERAL'S MOTION TO CONSOLIDATE *STRUCK* AND *BENTON*

## **TABLE OF CONTENTS**

I.      **Legal Standards**……………………………………………………………….2

II.     **The Distinct and Comparatively Complex Nature of the *Benton* Case**…..5

III.   **The Simple Claim in *Struck* is Amenable to Straightforward Resolution.** ……………………………………………………………………………...9

IV.   **Conclusion**……………………………………………………………….13

**Certificate of Service**……………………………………………………….14

i

# TABLE OF AUTHORITIES

**Cases**

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1999)……………………….4, 5

*Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656 (D. Del. 1990)……………4

*Guild Associates, Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436 (S.D. Ohio 2015)……………………………………………………………………………4, 5, 12

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005)…………..3

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 158 F.R.D. 562 (S.D.N.Y.1994)……………………………………………………………………..2

*In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999)………………………………...2, 3

*Johnson v. Manhattan R. Co.*, 289 U.S. 479 (1933)……………………………...2, 3

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65 (D. N.J. 1993)…………………………………………………………………………2, 4, 12

*Mays v. Liberty Mut. Ins. Co.*, 35 F.R.D. 234 (E.D. Pa. 1964)……………………….3

*Peters v. Woodbury County, Iowa*, 291 F.R.D. 316 (N.D. Iowa 2013)………………5

*Sidari v. Orleans County*, 174 F.R.D. 275 (W.D.N.Y. 1996)………………………..4

*Turner v. Transportacion Maritima Mexicana S. A.*, 44 F.R.D. 412 (E. D. Pa. 1968)……………………………………………………………………………..3

**Rules**

Fed. R. Civ. P. 42……………………………………………………………………...3

**Opposition to Motion to Consolidate**

The *Struck* Plaintiffs hereby oppose the Attorney General's Motion to Consolidate, seeking to consolidate their case with the *Benton* case. Dkt. No. 29 ("MTC"). As parties who would be directly impacted by any consolidation with the *Benton* case, Plaintiffs here have a clear stake in the outcome of this motion. Based on the factors relevant to a consolidation analysis, Plaintiffs contend that the two matters must be kept separate and litigated independently to ensure proper adjudication and to avoid unduly prejudicing the individual rights and interests of the *Struck* Plaintiffs.

The Attorney General argues these cases should be consolidated because they "involve common questions of law and fact." MTC at 4. He claims that "the Benton and Struck plaintiffs raise virtually identical Second Amendment arguments challenging the OGM law." *Id.* at 5. Raising the specter of "discovery consist[ing] of reams of historical statutes and expert reports opining on a wide range of issues of historical dimension," the Attorney General says, consolidation "is thus appropriate because it obviates the need to conduct duplicative and burdensome fact discovery to produce the same evidence twice-over before two courts addressing the same dispositive legal issues." *Id.* at 5-6. He further contends that consolidation will "streamline and economize this litigation" because the cases share at least one defendant (the Attorney General), they are "currently pending in similar pretrial

1

postures," and trying them separately involves the risk of "potentially inconsistent" rulings because two judges would be "reviewing the same evidentiary submissions" and yet could reach different conclusions concerning the OGM law. *Id.* 6-7. All this adds up to a "high potential for downside risk" of "inefficiency and unnecessary costs" which "overwhelmingly favors consolidating *Benton* and *Struck*." *Id.* at 8.

The *Benton* Plaintiffs filed a response to the MTC, characterizing *Struck* as a "copycat case" and on that basis "concede that this case and the *Struck* case 'share common questions of both law and fact,' at least as it pertains to the common 'one gun a month' count." Pltf. Resp. to MTC at 1-2. For this reason, they "do not object to consolidation of the cases" so long as they serve as the "lead case" and each side is permitted to submit its own briefing and independent oral argument. *Id.* at 2.

I.  **Legal Standards**

"The purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.' " *In re TMI Litigation*, 193 F.3d 613, 723 (3d Cir. 1999) (quoting *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 158 F.R.D. 562, 571 (S.D.N.Y.1994)). "Consolidation, however, is only a matter of 'convenience and economy in administration.' " *Id.* at 724 (quoting *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 497 (1933)). "Consolidation 'does not merge the suits into a single cause, or change the rights of the parties, or make those

2

who are parties in one suit parties in another.' " *Id.* (quoting *Johnson*, 289 U.S. at 497); *accord In re Community Bank of Northern Virginia*, 418 F.3d 277, 298, n.12 (3d Cir. 2005). The Supreme Court has "caution[ed] that while consolidated cases may be treated as one lawsuit in order to conserve judicial resources, the procedure should not impose the heavy toll of a diminution of any party's rights." *Id.*

Therefore, "[t]he primary inquiry should be determining the effect of consolidation on the substantive rights of the parties in the consolidated cases." *TMI Litigation*, 193 F.3d at 723. Indeed, courts within the Third Circuit have recognized this for decades now: "The power of this Court to order a consolidation pursuant to Rule 42 of the Federal Rules is purely discretionary." *Turner v. Transportacion Maritima Mexicana S. A.*, 44 F.R.D. 412, 415 (E. D. Pa. 1968). "The power is generally exercised when it is clear that consolidation will serve policies such as judicial economy and expedition of litigation." *Id.* "However, these interests must always be balanced against the prejudice to any party which might result from conducting the trial in a consolidated proceeding." *Id.* All of the factors that may generally militate in favor of consolidation "of course are subject to the overriding limitation that such a consolidation will be reasonable and not prejudice the rights of any party." *Mays v. Liberty Mut. Ins. Co.*, 35 F.R.D. 234, 235 (E.D. Pa. 1964). "Where there is such prejudice consolidation is improper." *Turner*, 44 F.R.D. at 415.

3

Thus, consolidation that would materially delay the adjudication of a party's claims and/or result in confusion of the issues in each case would be improper. *See Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 82, n. 29 (D. N.J. 1993) (denying consolidation in part because it "would result in delay and in confusion of the relevant factual issues in each case"); *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 661 (D. Del. 1990) (finding the potential prejudice of consolidation "outweighs any benefits that may be attained" because "a significant delay will result in the trial of the trademark claims").

Courts in other circuits rightly exercise similar caution. As the Sixth Circuit has explained, "the decision to consolidate is one that must be made thoughtfully, with specific reference to the factors identified above." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1999). "Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage." *Id.* "Consolidation is not warranted merely because two separate plaintiffs allege distinct claims under the same general theory of law or statute." *Sidari v. Orleans County*, 174 F.R.D. 275, 281 (W.D.N.Y. 1996). "Where there are common issues of law or fact, courts must then balance the benefit of expedience and judicial resources against prejudice and jury confusion that may be caused by consolidation." *Guild Associates, Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436, 441 (S.D. Ohio 2015). The essential question is whether the potential benefits of consolidation would outweigh " 'the

4

specific risks of prejudice and possible confusion.' " *Peters v. Woodbury County, Iowa*, 291 F.R.D. 316, 319 (N.D. Iowa 2013) (quoting *Cantrell*, 999 F.2d at 1011). The party seeking consolidation bears the burden here. *Id.*

"Factors that may cause prejudice and jury confusion [warranting denial of consolidation] include complex legal theories and factual proof." *Guild Associates*, 309 F.RD. at 441. And doubts about whether consolidation would unduly prejudice a party should be resolved in favor of preserving the separate nature of the cases. *Id.* (noting "the Court is compelled to err on the side of caution and refrain from allowing these actions to be consolidated for trial in light of the possible prejudice and jury confusion" due to the "factually and legally complex" nature of the issues).

## II. The Distinct and Comparatively Complex Nature of the *Benton* Case

With the sole exception of the Attorney General, who is a defendant in each case, the parties are different from one case to the next: the individual plaintiffs are different, the institutional plaintiffs are different, and the *Benton* case is brought against the chief of police in the township of the individual plaintiff, whereas the *Struck* case is brought against the superintendent of the New Jersey Division of State Police who exercises statewide enforcement authority of New Jersey's laws and regulations governing firearms under the oversight of the Attorney General.[1]

---

[1] In *Benton*, the plaintiffs are Christian Benton, Coalition of New Jersey Firearm Owners, Gun Owners of America, Inc., and Gun Owners Foundation, and the defendants are Matthew Platkin, in his official capacity as the Attorney General

5

Quite unlike the narrowly focused claim in the *Struck* case challenging New Jersey's OGM law, the *Benton* case is a broadside constitutional attack on the entire state permitting scheme as it relates to both handguns and long guns, including:

- The existence of a permitting scheme itself (i.e., the need for a permit to purchase, acquire, possess, or carry a firearm openly or concealed in public), Benton Comp. at ¶¶ 4, 52, 53, 54, 55, 63, 64, 90, 127;

- The background checks, requirements for the release of personal identifying information, and degree of investigation into the applicant's otherwise personal and private affairs, *id.* at ¶¶ 7, 70, 74, 85, 91, 93, 94, 127, 137;

- The nature and degree of discretion afforded the permitting officials charged with determining an applicant's eligibility to obtain the necessary permits, *id.* at ¶¶ 8, 40-42, 67, 91, 92, 127;

- The statutory waiting periods, delays in processing the necessary permits at the state and local levels, and delays in issuing the necessary permits at the state and local levels, *id.* at ¶¶ 5-6, 44, 71, 82, 83, 100, 127, 128, 132;

- The periods for which the necessary permits are valid, *id.* at ¶¶ 6, 7, 76, 127;

---

of New Jersey, and Chief Phil Olivo, in his official capacity as the Police Chief of Pennausken Township. In *Struck*, the plaintiffs are Matthew Struck, Daniel Francisco, and Firearms Policy Coalition, Inc., and the defendants are Matthew Platkin, in his official capacity as the Attorney General of New Jersey, and Patrick Callahan, in his official capacity as Superintendent of the New Jersey State Police.

- The "prohibited areas" limiting the right to carry in public to certain places even with the necessary permits, *id.* at ¶ 89; and

- The "universal registration" requirements, *id.* at ¶ 95.[2]

These "layers upon layers" of laws, regulations, and policies—of which the OGM law is one—are what the *Benton* Plaintiffs challenge collectively in framing and asserting their Second Amendment claim. *See id.* at ¶ 139 (emphasis added) ("By infringing on the Second Amendment right to bear arms *in these ways*, the New Jersey laws and regulations discussed in the foregoing allegations violation the Second Amendment[.]"); *id.* at ¶ 140 (asserting the OGM law "likewise" "operates to deny New Jerseyans the ability to purchase more than one handgun per month").

The *Benton* Plaintiffs' challenge to the OGM law comprises a comparatively small portion of their Complaint. Of the 147 total paragraphs, comparatively few concern the OGM law at all, Benton Comp. at ¶¶ 1, 10, 11, 77, 78, 108–09, 111–13, 115, 119, 120, 122, 125, 140–47. And of the references to the OGM law, most are tethered either to the overarching attack against the permitting scheme as a whole or to concerns about the application of local policies. *See e.g., id.* at ¶ 1 (targeting the "permitting scheme, "along with" the OGM law); *id.* at ¶ 77 (tying the OGM law to

---

[2]   Although their complaint also repeatedly attacks the various fees of the permitting scheme as unconstitutionally excessive and unreasonable, the plaintiffs have since stated they are not specifically challenging the fees. Dkt. No. 22 (Benton Plaintiffs' Opposition to Attorney General's Motion to Dismiss) at 16–17.

the general concern about the Permit to Purchase a Handgun ("PPH") requirements, complaining in this context that "should one wish to purchase multiple handguns, one would have to apply for multiple PPFs on a staggered basis (e.g., three permits at a time, redeeming one per month until the third expires at the end of 90 days"); *id.* at ¶ 113 (same); *id.* at ¶ 125 (same); *id.* at ¶ 109 (complaining that local practices at the Pennsauken Township Police Department have the effect of extending the one-gun-per-month limitation to one month plus 1 day, "which reduces the number of handguns that Mr. Benton can purchase annually to 11"); *id.* at ¶¶ 111-112 (complaining that the delays in the processing or issuance of PPHs at the local level necessarily "restrict the number of handguns a person is able to purchase in one year"); *id.* at ¶ 112 (complaining that, due to local delays, Benton "has missed out on the opportunity to purchase at least four (4) handguns" from February to June of 2024); *id.* at ¶ 119 (alleging harm to the plaintiffs based on the delays in the processing and issuance of PPHs in combination with the OGM law).

The circumstances unique and specific to the *Benton* plaintiffs have led to collateral litigation there: Defendant Olivo has filed a motion to dismiss on mootness grounds, because the individual plaintiffs have since received the permits at issue, Dkt. No. 19, and Defendant Platkin has filed a motion to dismiss for lack of standing for essentially the same reason, Dkt. No. 20. In opposition to these motions, Plaintiffs underscore that they are relying on the "thousands" of similarly situated

8

individual members who have not yet obtained the permits necessary to acquire, possess, and carry firearms in public, including members specifically being denied such permits by Defendant Olivo. Dkt. No. 21 at 6-7; Dkt. No. 22 at 14. They also underscore how their claims concern Defendant Olivo's "peculiar local practices" that reduce the number of handguns one may purchase below the statutorily allowed figure of 12, Dkt No. 22 at 10, as well as his other "local delay tactics that contravene" state law, Dkt. No. 21 at 23–24. And they go on to illustrate the problem by citing specific factual circumstances of delays that their members have experienced at the hands of Defendant Olivo. *Id.* at 12; Dkt. No. 22 at 14, 17–18.

As is plain, the *Benton* case involves an array of complex issues specific to the individual circumstances of the plaintiffs and the individual actions or omissions of the local police chief who oversees the permitting process where Benton resides.

### III. The Simple Claim in *Struck* is Amenable to Straightforward Resolution.

Far from being any sort of "copycat" case, the *Struck* narrowly focuses on the OGM law alone, and the interests of the individual plaintiffs and the similarly situated members of Plaintiff FPC in being able to "lawfully purchase more than one handgun in common use for lawful purposes within a 30-day period." Struck Comp. at ¶ 14. To that targeted end, Plaintiffs focus their Second Amendment claim solely on N.J.S.A. § 2C:58-3(i), N.J.A.C. § 13:54-19, and the policies and practices specifically enabling enforcement of this purchase limitation. *Id.* at ¶¶ 2, 14, 24, 27,

9

31, 36, 37, 38. The basis of the claim is the simple, yet fundamental point that the acquisition activity is undoubtedly covered under the plain text of the Second Amendment and no historical tradition exists for any such quantity-over-time restrictions on the commercial acquisition of handguns by law-abiding citizens. *Id.* at ¶¶ 40–42. The case presents a purely legal, straightforward question neither tied to nor dependent on any of the numerous fact-specific issues raised by the allegations in the *Benton* complaint: *i.e.,* whether, as to the OGM law alone, the conduct at issue—simply acquiring more than one handgun within a 30-day period—is covered under the plain text of the Second Amendment and, if so, whether any relevantly similar historical analogue exists to justify the restriction imposed by the OGM law.

As asserted in their Complaint, the *Struck* Plaintiffs maintain that the answer to this question is abundantly clear, without any extensive discovery into the history of firearms regulations or otherwise, and surely without any discovery regarding the circumstances specific to the *Benton* plaintiffs or the local practices of Defendant Olivo. Indeed, summary judgment can and should be entered in their favor without any further process, and the *Struck* plaintiffs intend to so move this Court in a motion for summary judgment that details why such judgment should be entered now.

The adjudication of this claim should not be delayed or bogged down behind the battery of collateral issues in dispute in *Benton*. Should the Defendants' motions to dismiss be denied and the plaintiffs proceed with their challenges to the web of

statutory provisions, regulations, and local practices related to the permitting regime writ large, the scope of the discovery will extend far beyond anything that needs to be addressed or resolved for purposes of the essential legal question presented in *Struck*: the parties in the *Benton* case would delve into the "peculiar local practices" and "local delay tactics" of Defendant Olivo's operations in Benton's township, as well as the individual circumstances of the specific members of the organizational plaintiffs on which the *Benton* Plaintiffs expressly rely to preserve standing and avoid mootness as to their myriad permitting regime challenges. Particularly if the *Benton* case is deemed the "lead case" as they request, the *Struck* plaintiffs would be stuck in idle mode with their claim simply left to languish behind a bunch of discovery concerning facts completely unrelated and irrelevant to their case.

Moreover, even if the Defendants' motions to dismiss are granted as to the aspects of the claim going to the permitting regime, time and resources will similarly be needlessly consumed before the claim in *Struck* will be adjudicated. Adjudication of the claim will run behind discovery related to the same basic topics totally irrelevant to the *Struck* case and its straightforward legal challenge to the OGM law. As noted, even the dimension of the *Benton* case that specifically concerns the OGM law is interwoven with the *Benton* plaintiffs' allegations concerning the permitting regime writ large. Indeed, their asserted harms all revolve closely around the specific circumstances of individual plaintiffs and members of the institutional plaintiffs in

11

the processing, issuance, or receipt of the necessary permits, as well as the local practices of the Pennsauken Township Police Department. Benton Comp. at ¶¶ 102–07, 112, 119–20, 122–23. Further, even their argument on the historical prong is tied up with their overarching challenge to the permitting scheme at large, as they focus on the existence or non-existence of historical precedent for a requirement that individuals obtain a permit to acquire, keep, or carry a handgun in public and that imposes "months-long waiting periods, and layers upon layers of permitting." *Id.* at ¶ 135. As with their other fact and case specific allegations, this allegation invites, if not requires, discovery into the particular practices of local permitting officials concerning the timing of their processing and issuance of the various permits.

None of this is necessary to the adjudication of the much narrower claim in *Struck*, clearly focusing on the OGM law and requiring no collateral litigation or discovery into the particular circumstances of the individual plaintiffs, members of the institutional plaintiffs, or the practices of local permitting officials—and surely not requiring any discovery as to any of the plaintiffs in *Benton*. While the undue prejudice to the *Struck* Plaintiffs is clear and warrants denial of the Attorney General's motion, *Liberty Lincoln*, 149 F.R.D. at 82, n. 29, any doubt should be resolved in favor of retaining the independent character of the cases to ensure proper adjudication of their individual claims, *Guild Associates*, 309 F.RD. at 441.

## IV.  Conclusion

For these reasons, the *Struck* Plaintiffs respectfully request that the Attorney General's motion to consolidate be denied.

                                        Respectfully submitted,

Dated: November 18, 2024      */s/ Bradley P. Lehman*
                                        Bradley P. Lehman
                                        Gellert Seitz Busenkell & Brown, LLC
                                        1201 N. Orange Street, Suite 300
                                        Wilmington, DE 19801
                                        Phone: 302-416-3344
                                        Email: blehman@gsbblaw.com

## CERTIFICATE OF SERVICE

The undersigned, Bradley P. Lehman, hereby certifies that, on November 18, 2024, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the District of New Jersey. All counsel of record counsel will accordingly receive a copy this document via the CM/ECF system:

Daniel M. Vannella
Assistant Attorney General
*Attorney for Defendants Attorney General of New Jersey and Superintendent of New Jersey State Police*

Steven Jay Harfenist
Harfenist Kraut & Perlstein, LLP
*Attorney for Plaintiffs Christian Benton, Coalition of New Jersey Firearm Owners, Gun Owners of America, Inc., and Gun Owners Foundation*

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
*Attorney for Plaintiffs Christian Benton, Coalition of New Jersey Firearm Owners, Gun Owners of America, Inc., and Gun Owners Foundation (pro hac vice)*

Michael Joseph Miles
Arlette Leyba
Brown & Connery, LLP
*Attorney for Defendant Chief Phil Olivo, in his official capacity as the Police Chief of Pennsauken Township*

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 North Howe Street, Suite A
Southport, North Carolina 28461
*Attorney for Plaintiffs Matthew Struck, Daniel Francisco, and Firearms Policy Coalition, Inc. (pro hac vice)*

I have also provided one courtesy copy of this document to the chambers of the Honorable Michael A. Shipp, U.S.D.J., as well as one courtesy copy of the same to the Clerk of Court, in accordance with L. Civ. R. 42.1.

I declare under the penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated: November 18, 2024

/s/ Bradley P. Lehman
Bradley P. Lehman
Gellert Seitz Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: 302-416-3344
Email: blehman@gsbblaw.com